## DEED OF TRUST

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THIS DEED OF TRUST ("Security Instrument") is made as of September 29, 2022. The Grantor is **JMK5 Arena LLC**, a Texas limited liability company, whose address is 308 West Parkwood Avenue, Suite 104A, Friendswood, Texas 77546 ("Borrower"). The trustee is **Clifford D. Harmon**, whose address is 14860 Montfort Drive, Suite 111, Dallas, Texas 75254. The beneficiary is **Jet Lending, LLC**, whose address is 1419 FM 1960 East, Houston, Texas 77073 ("Lender").

Borrower owes Lender the principal sum of U.S. $17,000,000.00. This debt is evidenced by Borrower's promissory note (as the same may be amended or modified from time to time, the "Note") dated the same date as this Security Instrument. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note; and (d) the payment and performance of all other obligations of Borrower to Lender, now existing or hereafter arising. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described real property located in Galveston County, Texas:

Being a tract or parcel containing 40.004 acres (1,742,574 square feet) of land situated in the William K. Wilson League, Abstract Number 208, Galveston County, Texas; being out of a called 88.293 acre tract of land conveyed to JMK5 Arena, LLC as described in deed recorded under Galveston County Clerk's File (G.C.C.F.) Number 2022018608; said 40.004 acre tract of land being more particularly described as follows (bearings are grid and oriented to the Texas State Plane Coordinate System, South Central Zone Number 4204, US Survey Feet, NAD83(NA2011); distances are surface and may be converted to grid using a combined scale factor of 0.999863);

BEGINNING at a 5/8-inch iron rod with cap stamped "WINDROSE SURVEYING" found on the westerly R.O.W. line of F.M. 2004 (120 feet wide) and for the southeast corner of said 88.293 acre tract and the herein described tract;

THENCE, South 87deg15'38" West, departing said westerly R.O.W. line and along a common line of a called 20.9884 acre tract of land conveyed to the City of La Marque as described by deed recorded under G.C.C.F. Number 9142963 and the herein described tract, a distance of 829.85 feet to a 5/8-inch iron rod with cap stamped "BOUNDARY ONE-RPLS 5489" set marking the most southerly corner of said 88.293 acre tract and the herein described tract;

THENCE, North 02deg44'22" West, continuing along a common line of said 20.9884 acre tract and the herein described tract, at 170.00 feet passing a 5/8-inch iron rod with cap stamped "BOUNDARY ONE-RPLS 5489" set marking an interior common corner of said 20.9884 acre tract and said 88.293 acre tract, continuing over and across said 88.293 acre tract for a total distance of 200.00 feet to an angle point;

THENCE, continuing over and across said 88.293 acre tract, the following courses and distances:

EXHIBIT "2"

South 87deg15'38" West, 292.19 feet to an angle point;

North 02deg45'03" West, 1,384.78 feet to an angle point and for the most westerly corner of the herein described tract;

North 87deg18'16" East, 465.87 feet to an angle point;

North 02deg41'44" West, 19.00 feet to an angle point;

North 87deg18'16" East, 669.72 feet to the aforesaid westerly R.O.W. line of F.M. 2004 and for the most northerly corner of the herein described tract;

THENCE, South 02deg15'52" East, along said westerly R.O.W. line, a distance of 1,602.96 feet to the POINT OF BEGINNING and containing 40.004 acres (1,742,574 square feet) of land, more or less, which currently has the address of 1000 FM 2004, La Marque, Texas 77568

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend the title to the Property against all persons claiming or to claim against the same, or any part thereof.

Borrower and Lender covenant and agree as follows:

1.      **Payment of Principal and Interest; Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any late charges or other amounts due under the Note or any other indebtedness secured hereby.

2.      **Funds for Taxes and Insurance.** Borrower shall pay when due all ad valorem property taxes assessed against the Property, and shall further pay when due all premiums for the Hazard Insurance required to be maintained under Paragraph 5. These payments shall be made directly by Borrower to the appropriate taxing authorities and insurance company unless Lender shall notify Borrower in writing that Lender requires these payments to be made to Lender. If Lender makes such a written demand then Borrower shall pay to Lender on the day the monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments of any kind which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood and/or windstorm insurance premiums, if required by Lender. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount sufficient to permit Lender to apply the Funds to pay each Escrow Item in full when it becomes due and payable before the assessment of penalties or interest by the entity which is the recipient to the related Escrow Item, plus a reserve equal to 1/6 of the total of all Escrow Items. The amount of Funds shall be estimated by Lender on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

EXHIBIT "2"

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. If Lender collects funds, Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Notwithstanding anything in this paragraph to the contrary, if this Deed of Trust does not create a first lien against the Property, Lender shall only have the right to require Borrower to make escrow payments to Lender for taxes and insurance to the extent that prior lien holders do not have or exercise such rights under prior liens against the Property.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any funds held by Lender. If Lender shall acquire or sell the Property under paragraph 19, Lender, prior to the acquisition or sale of the Property shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3.      **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied first to any amounts payable under paragraph 2; second, to interest due; third, to principal due; fourth, to any late charges due under the Note; and fifth, to any other amounts owed by Borrower to Lender.

4.      **Charges, Taxes, and Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments, upon request by Lender.

5.      **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including windstorms, floods or flooding, for which Lender reasonably requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender reasonably requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

Borrower shall furnish Lender with the original of each such initial policy coincident with the execution of this Deed of Trust and the original of each renewal policy not less than fifteen (15) days prior to the

EXHIBIT "2"

expiration of the initial, or each immediately preceding renewal, policy, and at the same time, Borrower shall furnish Lender with receipts or other evidence that the premiums on each and all such insurance policies have been paid for at least one (1) year; provided that nothing herein shall be construed to require Lender to renew or extend the Note beyond its original maturity date.

All insurance policies and renewals shall be reasonably acceptable to Lender and shall include a standard mortgage clause. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6.      **Preservation, Maintenance and Protection of Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate as provided in paragraph 16, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7.      **Protection of Lender's Rights in the Property; Lien Priority.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding -- including one brought by Borrower or any guarantor in relation to the loan evidenced by the Note -- that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, condemnation or forfeiture or to enforce laws or regulations) or Lender's collection or enforcement actions related to the Note or this Security Instrument, then Lender may do and pay for (or incur the obligation to pay for) whatever is reasonably necessary to protect the value of the Property, Lender's rights in the Property,

EXHIBIT "2"

and/or Lender's collection or enforcement actions related to the Note or this Security Instrument. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees (or incurring the obligation to pay such fees) and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so. Any amounts disbursed by Lender under this paragraph 7 (whether or not actually paid as of any particular date) shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date incurred by Lender at the rate applicable from time to time under the Note and shall be payable, with interest, upon demand, or if no demand is sooner made, upon the earliest of the maturity date of the Note, the date the Note is paid in full, or the date of foreclosure against the Property.

Notwithstanding anything herein to the contrary, Borrower represents and warrants that this Security Instrument creates a first and prior lien against the Property.

**8.      Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property and any time and from time to time.

**9.      Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemner offers to make an award or settle claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**10.      Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**11.      Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Grantor, subject to the provisions of paragraph 15. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

EXHIBIT "2"

**12.   Loan Charges.** Interest on the debt secured by this deed of trust will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded.  On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded.  This provision overrides any conflicting provisions in this and all other instruments concerning the debt.

**13.   Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the address for Borrower which appears on the first page of this Security Instrument, or any other address Borrower designates by notice to Lender.  Any notice to Lender may be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14.   GOVERNING LAW; SEVERABILITY.  THIS SECURITY INSTRUMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE JURISDICTION IN WHICH THE PROPERTY IS LOCATED.  IN THE EVENT THAT ANY PROVISION OR CLAUSE OF THIS SECURITY INSTRUMENT OR THE NOTE CONFLICTS WITH APPLICABLE LAW, SUCH CONFLICT SHALL NOT AFFECT OTHER PROVISIONS OF THIS SECURITY INSTRUMENT OR THE NOTE WHICH CAN BE GIVEN EFFECT WITHOUT THE CONFLICTING PROVISION.  TO THIS END, THE PROVISIONS OF THIS SECURITY INSTRUMENT AND THE NOTE ARE DECLARED TO BE SEVERABLE.**

**15.   Transfer or Incumbrance of the Property.  Except as provided herein, if all or any part of the Property or any interest in it is sold (including under a contract for deed), transferred, leased with a purchase option, or leased for a period longer than 3 years, all without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  However, this option may not be exercised by Lender if exercise is prohibited by applicable law as of the date of this Security Instrument.**

**16.   Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of:  (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower is a natural person and:  (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all reasonable expenses incurred in enforcing this Security Instrument, including but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property, and Borrower's obligations to pay the sums secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under paragraph 15.

**17.   Sale of Note; Change of Loan Service.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower.

**18.   Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law.

EXHIBIT "2"

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 18, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 18, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

19. **Acceleration; Remedies.** If required under applicable law, Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument. Any such required notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than any period required by applicable law, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. If Lender exercises this option, Lender shall send Borrower notice of acceleration. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 19, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale, and may bid a credit against the indebtedness owed by Borrower to Lender under the Note or this Security Instrument.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this paragraph 19, Borrower or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

If the Property is sold pursuant to this paragraph 19, and to the extent permitted by applicable law, rent shall be due and payable by Borrower to Lender at the per diem rate of 1/15th of the most recent

Transaction No.: HVAP16545  GF#FTH-77F-FAH22009730
Closed as of  September 29, 2022
Page 20 of 60 Pages

EXHIBIT "2"

monthly payment due under the Note (or, if the most recently due payment was the final Note payment, the penultimate payment due under the Note). Such rent shall begin on the day of the foreclosure sale and continue through and including the day that Borrower surrenders possession of the Property to the foreclosure sale purchaser, whether voluntarily or involuntarily. Such rent shall be payable on the Friday of each week in which it accrues at such purchaser's address as shown in the trustee's deed or substitute trustee's deed which conveys title to the Property to such purchaser. Rent is for use and retention of the Property by Borrower from the foreclosure sale until surrender of the Property by Borrower, and does not create a right of tenancy for any period of time. It is the intent of Borrower and Lender that the failure of Borrower to pay rent as aforesaid shall constitute an additional ground for an eviction action against Borrower by the foreclosure sale purchaser.

If Borrower appeals any judgment issued in favor of the foreclosure sale purchaser against Borrower by a Justice Court, Borrower agrees that the amount of the appeal bond shall be no less than two months rent calculated as provided above, and if Borrower appeals any judgment rendered by a County Court at Law or a Court of Appeals, the amount of the supersedeas bond shall be no less than one month rent calculated as provided above for each month that an appeal is pending, the first such payment to be paid no later than the date provided by law as the last day to post a supersedeas bond to avoid issuance of a writ of possession, with a like amount to be posted on the first business day of each month thereafter until judgment is rendered by the court in which the appeal is then pending.

20. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower by delivery to Borrower of an executed release in recordable form. Borrower shall pay any recordation costs.

21. **Substitute Trustee.** Lender, at its option and without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

22. **Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities acquired by Lender by assignment or that are released by the holder thereof upon payment.

23. **Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

24. **Borrower's Authorization of Disclosure of Financial Information and Notice of Default and Foreclosure.** Borrower hereby authorizes the holder of any mortgage, deed of trust or other encumbrance with a lien that has a priority over this Deed of Trust to disclose any financial information requested in writing by the above-named Lender regarding Borrower's loan. Such information may include but shall not be limited to the following information: current loan balance; loan status; delinquency notices; tax and insurance receipts; accrued late charges; copies of claims or notification made under title insurance policies; hazard insurance policies and flood insurance policies; and any other information deemed necessary in its sole discretion by Lender.

In addition, the holder of any mortgage, deed of trust or other encumbrances with a lien that has a priority over this Deed of Trust is hereby authorized to notify the Lender, at the Lender's address or any other address provided by Lender, of any default or foreclosure action regarding the Property.

EXHIBIT "2"

To the extent the Lender may elect to do so, from time to time, the undersigned hereby authorizes it to cure wholly or in part any default or failure of performance under the terms of the prior Note and Deed of Trust. Any amount expended by Lender for this purpose shall be secured hereby.

The undersigned hereby indemnifies and agrees to hold harmless any person acting in reliance upon this provision from any and all liability and causes of action arising from actions taken pursuant to this provision, including, but not limited to, all reasonable attorney fees, costs and expenses incurred. This provision cannot be amended, revoked, superseded, or canceled prior to payment in full of the subordinate debt without the express written consent of the Lender. This provision of the Security Instrument may be used from time to time, and shall inure to the benefit of the Lender, its successors and assigns.

25.     **Security Agreement; Financing Statement.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust.

**Security Agreement.** This instrument shall constitute a fixture financing statement to the extent any of the Property constitutes fixtures or other personal property, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code, as amended from time to time, of the state in which the Property is located ("UCC"). Borrower further hereby grants to Lender a security interest in (a) all fixtures located on the Property, (b) all equipment owned by Borrower and located on the Property in connection with its operation, (c) all building materials located on the Property or purchased with the proceeds of the loan evidenced by the Note, and (d) all contract rights and general intangibles related to or arising from the Property. To the extent permitted by applicable law, this document may be filed or recorded as a UCC Financing Statement. Borrower hereby expressly consents to Lender filing/recording a UCC Financing Statement in any other form with any filing/recording office designated under applicable law for filing/recording of UCC security interests.

**Security Interest.** Upon request by Lender, Borrower shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Borrower, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Borrower shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Borrower shall assemble the Personal Property in a manner and at a place reasonably convenient to Borrower and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.

**Addresses.** The mailing addresses of Borrower (debtor) and Lender (secured party), from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code), are stated on the first page of this Deed of Trust.

ADDITIONAL OBLIGATIONS SECURED

In addition to the obligations described above which are secured by this Security Instrument, all obligations of Borrower to Lender, now existing or hereafter arising, shall also be secured hereby. Any default under any such obligation shall also constitute a default hereunder. Notwithstanding anything to the contrary contained herein, (i) Lender shall not be obligated to release the liens created hereby unless and until all such obligations are paid in full; and (ii) Lender, at its sole option, may release the liens created hereby

EXHIBIT "2"

without such obligations being paid in full; provided, that no release of the liens created hereby shall be deemed to be evidence that the obligations secured hereby are paid.

## CROSS DEFAULT

Any default under the terms of any loan agreement, promissory note, lease, conditional sale contract or other agreement, document or instrument evidencing, governing or securing any indebtedness owing by Borrower or any Affiliate of Borrower to Lender or any Affiliate of Lender shall, at Lender's option, constitute a default under this Security Instrument. As used herein, "Affiliate" means, with respect to any Person, any other Person that is directly or indirectly Controlling, Controlled by or under common Control with, such Person. In addition to the foregoing, "Affiliate" specifically includes any trust for which Borrower or any Affiliate of Borrower is a beneficiary. As used herein, "Control" and derivative terms means the possession, directly or indirectly, and acting either alone or together with others, of the power or authority to direct or cause the direction of the management, material policies, material business decisions or the affairs of a Person, whether through the ownership of equity securities or interests, by contract or other means. As used herein, "Person" means any natural person, business, corporation, company, association, limited liability company, partnership, limited partnership, limited liability partnership, joint venture, business enterprise, trust, or other legal entity.

## WAIVER OF RIGHTS REGARDING DEFICIENCIES

To the maximum extent permitted by applicable law, Borrower hereby waives and disclaims (a) the application of Sections 51.003 and 51.004 of the Texas Property Code to any deficiency sought by Lender with respect to the Note or this Security Instrument following a foreclosure against the Property by or at the request of Lender; (b) any rights it may have under Sections 51.003 or 51.004 of the Texas Property Code or otherwise to challenge any deficiency which may result from the difference in the amount of the obligations secured hereby and the amount of a winning bid by Lender at a foreclosure sale of the Property, or any portion thereof; and (c) any other rights which Borrower may otherwise have under Sections 51.003 or 51.004 of the Texas Property Code. Without limiting the generality of the foregoing, Borrower expressly waives any defense which Borrower may have to legal action by Lender based upon any alleged value of the Property at the date of foreclosure, and any requirement that Lender show a deficiency between the value of the Property at foreclosure and the amount of Lender's bid in order to recover Lender's claimed deficiency from Borrower. Any guarantor of any indebtedness secured hereby waives the application of Section 51.005 of the Texas Property Code to the same extent that Borrower waives the application of Sections 51.003 and 51.004 above. The waivers contained in this paragraph shall inure to the benefit of any assignee of Lender.

## ASSIGNMENT OF RENTS AND LEASES

An assignment of rents is hereby given under the terms of Chapter 64 of the Texas Property Code ("TARA"). Except to the extent that TARA requires otherwise, the following provisions shall govern the assignment of rents:

Borrower hereby assigns and transfers unto Lender all leases and rental contracts which have been and which may hereafter be executed covering all or any part of the Property, together with all rentals and income accruing therefrom (collectively, "Leases"); provided that, (i) Borrower reserves the right to manage the Leases unless and until Lender notifies Borrower in writing that Lender is assuming such management; and (ii) upon full and final payment of the Note, as the same may be amended, modified, or extended from time to time, the ownership of the Leases shall revert to Borrower. Unless and until Lender notifies

EXHIBIT "2"

Borrower that Lender is assuming management of the Leases, Borrower is hereby authorized to exercise all rights of the lessor under the terms of any Lease, including the right to collect and receive all rents and income accruing from the Property and to give good and sufficient receipts for the same. All money so collected shall be applied, to the payment of taxes assessed against the Property, to the payment of premiums on insurance policies covering the Property, and to the payment of amounts which come due under the Note, with any amounts remaining being retained by Borrower as Borrower's sole compensation for managing the Leases.

Borrower warrants, represents and agrees that:

1. All existing Leases are valid and in full force and effect according to their terms; that no change, modification or amendment thereof has been made which has not been disclosed in writing; that no prior unreleased assignment thereof has been made and that no assignment of any of the rental and income from the Property has been made; and that no financing statement covering any Lease of any portion of the Property is on file in any public office;

2. Except in the ordinary course of its business, Borrower shall not, without the prior written consent of Lender, make or agree to any change, modification or amendment in or termination of any Lease covering any portion of the Property, shall not exercise any option contained in any Lease or take action to forfeit the same, and shall not collect or accept payment of any rental for more than one month in advance, except as may be required to be paid in advance by the express terms of such Lease;

3. Borrower shall (a) perform all of the obligations and duties of the lessor under all Leases; (b) promptly inform Lender in writing of notice received from any lessee with respect to any obligation under a Lease or of any default or claimed default by any party to a Lease; (c) keep accurate books, records and accounts with respect to the Leases and make them available to Lender at its request for examination and inspection; and (d) indemnify and hold Lender harmless from any claims, penalties, or fines which may be brought or assessed against Lender arising out of the Leases or Borrower's acts or omissions with regard to the Leases.

4. Notwithstanding anything herein to the contrary, this assignment of Leases is of rights only, and Borrower shall retain all obligations of a landlord under the Leases and under applicable law.

Without in any way limiting Lender's rights hereunder, if Lender assumes management of the Leases, Lender shall have the additional right and authority, but shall not be obligated to:

1. Make and enter into agreements with lessees and tenants under Leases, increase or reduce rentals or otherwise change the terms of any Lease; enter into new leases or rental contracts, in the name of Borrower or otherwise, on such terms and conditions as Lender may, in its sole discretion, deem advisable;

2. Sue for the collection of unpaid rents and other income under any Lease, for cancellation or forfeiture of any Lease in default, for possession of the portion of the Property covered by a Lease in default, and otherwise exercise any and all rights and remedies of the lessor under any such Lease, all without liability of any kind to Borrower.

Borrower agrees that the collection of any such rentals and income by Lender shall in no way relieve Borrower from any of the obligations imposed upon Borrower by the Note and this Security Instrument, and shall not constitute a waiver of Lender's right to accelerate the maturity of said indebtedness nor of Lender's right to proceed with enforcement of this Security Instrument, in the event default is made in the payment

Transaction No : HVAP16545  GF#FTH-77F-FAH22009730
Closed as of September 29, 2022
Page 24 of 60 Pages

EXHIBIT "2"

of the Note or any part thereof or in the event of the breach of any of the covenants contained in this Security Instrument. Neither the acceptance of this assignment by the Lender nor any act of Lender hereunder shall be construed as a waiver of the priority of the lien of this Security Instrument as to any Lease or contract made subsequent to the date of this Security Instrument.

This assignment shall be binding upon and shall inure to the benefit of the legal representatives, heirs, successors and assigns, respectively, of the Borrower and Lender, and shall terminate and become null and void upon full and final payment of the Note.

**REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder ("Holder") of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action against the Property. Borrower grants its consent to any Holder to disclose to Lender any and all information which Holder may have concerning Borrower's obligations to such Holder.

**RENEWAL AND EXTENSION**

This Deed of Trust is in renewal and extension of, but not extinguishment of that certain Deed of Trust, dated _____, 2022 filed of record under Clerks File No. _____ in the Real Property Records of Galveston County, Texas.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument.

Executed as of September 29, 2022.

JMK5 Arena LLC,
a Texas limited liability company

By: _____

Printed Name: JEROME KARAM

Title: Managing Member

Transaction No.: HVAP16545  GF#FTH-77F-FAH22009730
Closed as of September 29, 2022
Page 25 of 60 Pages

EXHIBIT "2"

STATE OF TEXAS §
§
COUNTY OF GALVESTON §

On this day, personally appeared ___Jerome Karam___, Managing Member of JMK5 Arena LLC, a Texas limited liability company, known to me to be the person described in and who executed the foregoing instrument, and acknowledged that such person executed the same as such person's free act and deed and in the capacity therein stated.

Dated: ___October 5, 2022___.



Notary Public, State of Texas

Victoria Leigh Lambert
Exp. 3/3/2026
ID No. 133624041

**WHEN RECORDED MAIL TO:**

b1Bank, a State Chartered Bank
4949 Fairmont Parkway, 1st Floor
Pasadena, Texas 77505
Attention: Cathrine Vallejos

**PREPARED BY:**

Harmon Law Firm, P.C.
14860 Montfort Drive, Suite 111
Dallas, Texas 75254

EXHIBIT "2"

# FILED AND RECORDED

Instrument Number:        *2022064137*

Recording Fee: 74.00

Number Of Pages:        14

Filing and Recording Date: 10/11/2022 1:21PM

I hereby certify that this instrument was FILED on the date and time stamped hereon and RECORDED in the OFFICIAL PUBLIC RECORDS of Galveston County, Texas.



**Dwight D. Sullivan**, County Clerk
Galveston County, Texas

NOTICE: It is a crime to intentionally or knowingly file a fraudulent court record or instrument with the clerk.

**DO NOT DESTROY** - *Warning, this document is part of the Official Public Record.*

EXHIBIT "2"