United States Bankruptcy Court
Southern District of Texas

**ENTERED**

March 26, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Chapter 7** |
| **ILS INCOME FUND I LP,** *and* | § | |
| **ILS GROWTH FUND I LP,** | § | **Case No. 25-37277 (EVR)** |
| | § | |
| Debtors. | § | **(Jointly Administered)** |

**ORDER GRANTING THE MINT NATIONAL BANK'S _EXPEDITED_ MOTION
FOR RELIEF FROM THE AUTOMATIC STAY OF ACT AGAINST PROPERTY**
[Relates to Docket # 99]

Came on to be heard The MINT National Bank's Expedited Motion for Relief from the

Automatic Stay of Act Against Property, and the Court having reviewed the file; having reviewed

the motion; having considered responses and objections, if any; and having reviewed any evidence

offered and admitted, believes the motion is well taken and should in all things be granted. The

Court finds it has jurisdiction over the subject matter made the basis of the motion and that venue

is proper. It is therefore,

ORDERED that the automatic stay pursuant to 11 U.S.C. § 362 is terminated against the

Property described in the Deed of Trust, attached hereto as Exhibit 1, for all purposes as to The

MINT National Bank. It is further,

ORDERED that The Mint National Bank is permitted to exercise its state law rights and

remedies against the Property in accordance with state law. It is further,

ORDERED that the 14-day stay period pursuant to Bankruptcy Rule 4001(a)(4) is hereby

waived and this order shall become effective immediately upon entry.

**Signed: March 26, 2026**

_____
Eduardo V. Rodriguez
Chief United States Bankruptcy Judge

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

**DEED OF TRUST**

**NOTICE TO FUTURE CREDITORS**

**THIS DEED OF TRUST CONTAINS PROHIBITIONS AGAINST BORROWING TO PAY AD VALOREM TAXES ASSESSED AGAINST THE PROPERTY OR THE ASSIGNMENT OF A TAX LIEN TO A THIRD PARTY.  ANY PARTY, EXCEPT A TAXING AUTHORITY, CLAIMING ANY RIGHTS UNDER A TAX LIEN ARE EXPRESSLY SUBORDINATE TO THE LIENS CREATED OR DESCRIBED IN THIS DEED OF TRUST**

**Terms**

Date:          March 17         , 2023

Grantor:     JMK5 MARINA LLC, a Texas limited liability company

Grantor's Mailing Address:    2010 San Miguel, Friendswood, Texas 77546

Trustee:     DAVID A. BUBIER

Trustee's Mailing Address:    1213 Kingwood Drive, Kingwood, Texas 77339

Lender/Beneficiary:   THE MINT NATIONAL BANK

Lender's/Beneficiary's Mailing Address:    1213 Kingwood Drive, Kingwood, Texas 77339

Note:

    Date:   Of even date herewith

    Original principal amount:    $5,700,000.00

    Borrower:    JMK5 MARINA LLC, a Texas limited liability company

    Lender:    THE MINT NATIONAL BANK

    Maturity date: As provided in the Note

EXHIBIT 1

Property (including any improvements):

See Exhibit "A", which is attached hereto and incorporated herein for all purposes.

Other Exceptions to Conveyance and Warranty:

See Exhibit "B", which is attached hereto and incorporated herein for all purposes.

For value received and to secure payment of the Note, Grantor conveys the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the Property, subject to the Other Exceptions to Conveyance and Warranty. On payment of the Note and all other amounts secured by this Deed of Trust, this Deed of Trust will have no further effect, and Lender will release it at Grantor's expense.

Clauses and Covenants

**A.   Grantor's Obligations**

Grantor agrees to

1.    keep the Property in good repair and condition;

2.    pay all taxes and assessments on the Property before delinquency (including any and all condominium owners' association dues or related fees);

3.    defend title to the Property subject to the Other Exceptions to Conveyance and Warranty and preserve the lien's priority as it is established in this Deed of Trust;

4.    maintain, in a form acceptable to Lender, an insurance policy that

   a.    covers all improvements for their full insurable value as determined when the policy is issued and renewed, unless Lender approves a smaller amount in writing;

   b.    contains an 100 percent coinsurance clause;

   c.    provides fire and extended coverage, including windstorm coverage;

   d.    protects Lender with a standard mortgage clause;

   e.    provides flood insurance at any time the Property is in a flood hazard area;

   f.    contains such other coverage as Lender may reasonably require; and

   g.    lists Lender as loss payee and mortgagee on the insurance policy;

5.    comply at all times with the requirements of the 100 percent coinsurance clause;

6.    deliver the insurance policy to Lender at closing of the loan and deliver renewals to Lender at least fifteen days before expiration;

7.    obey all laws, ordinances, and restrictive covenants applicable to the Property;

8.    keep any buildings occupied as required by the insurance policy;

9.    if the lien of this Deed of Trust is not a first lien, pay or cause to be paid all prior lien notes and abide by or cause to be abided by all prior lien instruments; and

10.    Other than lien granted in this Deed of Trust. Grantor shall not encumber the property without prior written consent of the Lender.

11.    The Grantor shall be obligated to provide, or cause to be provided, as the case may be, an annual rent roll for any property owned by Borrower, and the following financial reports, and any other similar information reasonably required, to Lender each year on the following dates:

    a.    Within ten (10) days after filing, and no later than June 30th, a copy of the Borrower's federal income tax return, including all schedules, exhibits, extensions. and related documents.

    b.    Within ten (10) days after filing, and no later than June 30th, a copy of each Guarantor's federal income tax return. including all schedules, exhibits, extensions, and related documents.

    c.    Within thirty (30) days of the anniversary of the prior statement date, annual financial statements of each Guarantor who is an individual.

    d.    Borrower Rent Rolls. As soon as available but within 30 days after each calendar quarter, a copy of Borrower's rent roll. beginning with the quarter ended March 31, 2023.

**B.    Lender's Rights**

1.    Lender may appoint in writing a substitute trustee, succeeding to all rights and responsibilities of Trustee.

2.    If the proceeds of the Note are used to pay any debt secured by prior liens. Lender is subrogated to all the rights and liens of the holders of any debt so paid.

3.    Lender may apply any proceeds received under the insurance policy either to reduce the Note or to repair or replace damaged or destroyed improvements covered by the policy. If the Property is Grantor's primary residence and Lender reasonably determines that repairs to the improvements are economically feasible, Lender will make the insurance proceeds available to Grantor for repairs.

4.  Notwithstanding note terms to the contrary, and unless applicable law prohibits, all payments received by Lender from Grantor under the Note or this Deed of Trust may, at Lender's discretion, be applied first to amounts payable under this Deed of Trust and then to amounts due and payable to Lender under the Note, to be applied to late charges, principal, or interest in the order Lender in its discretion determines.

5.  If Grantor fails to perform any of Grantor's obligations, Lender may perform those obligations and be reimbursed by Grantor on demand for any amounts so paid, including attorney's fees, plus interest on those amounts from the dates of payment at the rate stated in the Note for matured, unpaid amounts. The amount to be reimbursed will be secured by this Deed of Trust.

6.  If there is a default on the Note or if Grantor fails to perform any of Grantor's obligations and the default continues after any required notice of the default and the time allowed to cure, or upon the death of any Guarantor of Grantor, Lender may

    a.  declare the unpaid principal balance and earned interest on the Note immediately due;

    b.  direct Trustee to foreclose this lien, in which case Lender or Lender's agent will cause notice of the foreclosure sale to be given as provided by the Texas Property Code as then in effect; and

    c.  purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Note.

7.  Lender may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

8.  If Grantor transfers any part of the Property without Lender's prior written consent, Lender may declare the debt secured by this Deed of Trust immediately payable and invoke any remedies provided in this Deed of Trust for default.

9.  If Grantor is not an individual, any change in ownership or operational control of Grantor shall constitute an event of default hereunder. Control means the direct or indirect power to direct or cause direction of the management and policies of an entity, whether through ownership or voting securities, by contract or otherwise. Upon change of control, Lender may declare the debt secured by this Deed of Trust immediately payable and invoke any remedies provided in this Deed of Trust for default. Furthermore, if Grantor sells, disposes, transfers or conveys all or substantially all of Grantor's assets or sells any assets outside the normal course of business, Lender may declare the debt secured by this Deed of Trust immediately payable and invoke any remedies provided in this Deed of Trust for default.

10. Prohibition on Transfer of Tax Lien (Texas Tax Code §32.06). Grantor shall not authorize any person or entity to pay current or delinquent ad valorem taxes due or to become due

on the Property if such person or entity is entitled to receive a transfer of tax lien (e.g. under Section 32.06 of the Texas Tax Code, as it may be amended or modified). In the event any transfer of a tax lien is executed by a tax collector pursuant to Section 32.06 of the Texas Tax Code (as it may be amended or modified), or otherwise, with respect to the Property, Grantor shall, within ten (10) days of the date written notice is sent from Lender to Grantor, fully and finally pay the transferee of said tax lien the entirety of all principal, interest and expenses (whether or not then due and payable, or to become due and payable) owing to said transferee with respect to said transferred tax lien, and deliver proof, satisfactory in form and substance to Lender, of such payment, along with a signed and notarized release of said tax lien executed by said transferee. Grantor shall not defer the collection of taxes on the Property, in the event deferral of such taxes is permitted under applicable law. If Grantor fails to pay any taxes and assessments (including interest, penalties, costs and expenses) against the Property, enter into a tax lien loan to any person or entity, allow any person or entity to receive a transfer of an ad valorem tax lien, or otherwise defer the payment of taxes or assessments, Lender may in Lender's sole discretion, in addition to Lender's other rights as provided herein, elect to advance and pay the same at Grantor's expense. Any tax lien transfer shall nonetheless be an event of default hereunder.

## C.     Trustee's Rights and Duties

If directed by Lender to foreclose this lien, Trustee will

1.     either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then in effect;

2.     sell and convey all or part of the Property "AS IS" to the highest bidder for cash with a general warranty binding Grantor, subject to the Prior Lien and to the Other Exceptions to Conveyance and Warranty and without representation or warranty, express or implied, by Trustee;

3.     from the proceeds of the sale, pay, in this order

   a.     expenses of foreclosure, including a reasonable commission to Trustee;

   b.     to Lender, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;

   c.     any amounts required by law to be paid before payment to Grantor; and

   d.     to Grantor, any balance; and

4.     be indemnified by Lender against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this Deed of Trust, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

**D.     General Provisions**

1.     If any of the Property is sold under this Deed of Trust, Grantor must immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor will become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2.     Recitals in any trustee's deed conveying the Property will be presumed to be true.

3.     Proceeding under this Deed of Trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4.     This lien will remain superior to liens later created even if the time of payment of all or part of the Note is extended or part of the Property is released.

5.     If any portion of the Note cannot be lawfully secured by this Deed of Trust, payments will be applied first to discharge that portion.

6.     Grantor assigns to Lender all amounts payable to or received by Grantor from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the Property. After deducting any expenses incurred, including attorney's fees and court and other costs, Lender will either release any remaining amounts to Grantor or apply such amounts to reduce the Note. Lender will not be liable for failure to collect or to exercise diligence in collecting any such amounts. Grantor will immediately give Lender notice of any actual or threatened proceedings for condemnation of all or part of the Property.

7.     Grantor assigns to Lender absolutely, not only as collateral, all present and future rent, lease payments and other income and receipts from the Property. Grantor warrants the validity and enforceability of the assignment. Grantor may as Lender's licensee collect rent and other income and receipts as long as Grantor is not in default under the Note or this Deed of Trust. Grantor will apply all rent and other income and receipts to payment of the Note and performance of this Deed of Trust, but if the rent and other income and receipts exceed the amount due under the Note and Deed of Trust, Grantor may retain the excess. If Grantor defaults in payment of the Note or performance of this Deed of Trust, Lender may terminate Grantor's license to collect rent and other income and then as Grantor's agent may rent the Property and collect all rent and other income and receipts. Lender neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the Property. Lender may exercise Lender's rights and remedies under this paragraph without taking possession of the Property. Lender will apply all rent and other income and receipts collected under this paragraph first to expenses incurred in exercising Lender's rights and remedies and then to Grantor's obligations under the Note and this Deed of Trust in the order determined by Lender. Lender is not required to act under this paragraph, and acting under this paragraph does not waive any of Lender's other rights or remedies. If Grantor becomes a voluntary or involuntary debtor in bankruptcy, Lender's filing a proof of claim in bankruptcy will be deemed equivalent to the appointment of a receiver under

Texas law. Grantor warrants that all such leases shall comply with all state and federal legal requirements, including the Stark law and the Anti-Kickback Statute.

8. Interest on the debt secured by this Deed of Trust will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the debt.

9. In no event may this Deed of Trust secure payment of any debt that may not lawfully be secured by a lien on real estate or create a lien otherwise prohibited by law.

10. When the context requires, singular nouns and pronouns include the plural.

11. The term *Note* includes all extensions and renewals of the Note and all amounts secured by this Deed of Trust.

12. This Deed of Trust binds, benefits, and may be enforced by the successors in interest of all parties.

13. If Grantor and Borrower are not the same person, the term *Grantor* includes Borrower.

14. Grantor and each surety, endorser, and guarantor of the Note waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

15. Grantor agrees to pay reasonable attorney's fees, trustee's fees, and court and other costs of enforcing Lender's rights under this Deed of Trust if this Deed of Trust is placed in the hands of an attorney for enforcement.

16. If any provision of this Deed of Trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

17. This Deed of Trust, to the extent permitted by law, also secures payment of all other present and future debts, obligations, and liabilities owed to Lender by Grantor, directly or as a partner, venturer, or member of any partnership, joint venture, association, or other group, regardless of how the other debts, obligations, and liabilities are incurred and regardless of whether they are evidenced by a note, open account, overdraft, endorsement, surety agreement, guarantee, or other document.

18. Grantor also grants to Lender a first lien security interest in all sums on deposit with Lender and hereby grants Lender a right of set off thereon.

19.   Grantor agrees to execute, acknowledge, and deliver to Lender any document requested by Lender, at Lender's request from time to time, to (a) correct any defect, error, omission, or ambiguity in this Deed of Trust or in any other document executed in connection with the Note or this Deed of Trust; (b) comply with Grantor's obligations under this Deed of Trust and other documents; (c) subject to and perfect the liens and security interests of this Deed of Trust and other documents any property intended to be covered thereby; and (d) protect, perfect, or preserve the liens and the security interests of this Deed of Trust and other documents against third persons or make any recordings, file any notices, or obtain any consents requested by Lender in connection therewith. Grantor agrees to pay all costs of the foregoing.

20.   In addition to creating a deed-of-trust lien on all the real and other property described above, Grantor also grants to Lender a security interest in all of the above-described personal property pursuant to and to the extent permitted by the Texas Uniform Commercial Code. In the event of a foreclosure sale under this Deed of Trust, Grantor agrees that all the Property may be sold as a whole at Lender's option and that the Property need not be present at the place of sale. This Deed of Trust shall be effective as a financing statement filed as a fixture filing with respect to all items of the Property described herein that are or are to become fixtures on the Property.

21.   Grantor warrants to Lender and agrees that the proceeds of the Note will be used primarily for business or commercial purposes and not primarily for personal, family, or household purposes.

22.   WAIVER OF JURY TRIAL. GRANTOR HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS DEED OF TRUST (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER LEGAL THEORY). GRANTOR CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER. GRANTOR ACKNOWLEDGES THAT LENDER HAS BEEN INDUCED TO ENTER INTO THE LOAN DOCUMENTS (AS DEFINED HEREIN) BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS JURY TRIAL WAIVER SECTION.

23. GRANTOR HEREBY WAIVES ALL RIGHTS, REMEDIES, CLAIMS AND DEFENSES (OTHER THAN THE FULL PAYMENT OF THE INDEBTEDNESS SECURED BY THIS DEED OF TRUST IN ACCORDANCE WITH THE TERMS HEREIN AND IN THE LOAN DOCUMENTS) THAT THE GRANTOR MAY OR MIGHT HAVE AS TO GRANTOR'S RESPECTIVE UNDERTAKINGS, LIABILITIES AND OBLIGATIONS UNDER THE LOAN DOCUMENTS AND THIS DEED OF TRUST, INCLUDING BUT NOT LIMITED TO, SECTIONS 51.003, 51.004 AND 51.005 OF THE TEXAS PROPERTY CODE, TO THE EXTENT THE SAME PERTAIN OR MAY PERTAIN TO ANY ENFORCEMENT OF THIS DEED OF TRUST AND/OR THE LOAN DOCUMENTS. "LOAN DOCUMENTS" MEANS THE NOTE, THIS DEED OF TRUST, AND ANY OTHER DOCUMENT EXECUTED BY GRANTOR OR ANY GUARANTOR(S) FOR THE BENEFIT OF LENDER EVIDENCING OR SECURING THE NOTE.

24. WAIVER OF CONSUMER RIGHTS. GRANTOR WAIVES GRANTOR'S RIGHTS UNDER THE DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT, SECTION 17.41 ET SEQ., BUSINESS & COMMERCE CODE, A LAW THAT GIVES CONSUMERS SPECIAL RIGHTS AND PROTECTIONS. AFTER CONSULTATION WITH AN ATTORNEY OF GRANTOR'S OWN SELECTION, GRANTOR VOLUNTARILY CONSENTS TO THIS WAIVER.

JMK5 MARINA LLC,
a Texas limited liability company

By: _____

Jerome M. Karam, Manager

STATE OF TEXAS      §
                                §
COUNTY OF Galveston      §

    This instrument was acknowledged before me this **17** day of **March**_____, 2023, by Jerome M. Karam, Manager of JMK5 MARINA LLC, a Texas limited liability company, on behalf of said entity.



ALLISON RACHEL RIVERS
Notary ID #131194848
My Commission Expires
July 23, 2025

_____
Notary Public, State of Texas

AFTER RECORDING RETURN TO:
David Bubier
The MINT National Bank
1213 Kingwood Drive
Kingwood, TX 77339

## EXHIBIT A

**TRACT 1:**

UNRESTRICTED RESERVE "D", OF MARINA DEL SOL, A SUBDIVISION IN GALVESTON COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 18, PAGE 160, IN THE OFFICE OF THE COUNTY CLERK OF GALVESTON COUNTY, TEXAS.

**TRACT 2:**

Being a tract or parcel containing 14.639 acres (637,681 square feet) of land situated in the Michael Muldoon Two League Grant, Abstract Number 18, Galveston County, Texas; being all of that certain tract of land (Tract 2) and a portion of that certain tract of land (Tract 1) conveyed to JMK5 Marina, LLC as described by deed recorded under Galveston County Clerk's File (G.C.C.F.) Number 2022025374; being out of and a part of Restricted Reserve "A-1", MARINA ON THE LAKE SUBDIVISION, a subdivision plat of record at Plat Record 18, Map Number(s) 77-78, Galveston County Map Records (G.C.M.R.); being all of Restricted Reserve "E", MARINA DEL SOL, a subdivision plat of record at Plat Record 18, Map Number 160, G.C.M.R.; said 14.639 acre tract of land being more particularly described as follows (bearings are grid and oriented to the Texas State Plane Coordinate System, South Central Zone Number 4204, US Survey Feet, NAD83(NA2011);

COMMENCING at a 5/8-inch iron rod found on the southerly right-of-way (R.O.W.) line of Twin Oaks Boulevard (90 feet wide) and marking the most westerly corner of said Restricted Reserve "D" and the herein described tract;

THENCE, North 71°49'15" East, along said southerly R.O.W. line, a distance of 9.92 feet to a point of curvature for a curve to the left, from which a 1/2-inch iron rod found bears North 28°32' West, 0.54 feet;

THENCE, Northeasterly, an arc distance of 172.76 feet along said southerly R.O.W. line and curve to the left, having a radius of 323.01 feet, a central angle of 30°38'38", and a chord which bears North 56°29'56" East, 170.71 feet to a 3/8-inch iron rod found marking a point of tangency;

THENCE, North 41°10'36" East, continuing along said southerly R.O.W. line, a distance of 26.57 feet to a 3/8-inch iron rod found marking the most northerly corner of said Unrestricted Reserve "D" and a point of curvature for a curve to the right, said iron rod also for the POINT OF BEGINNING of the herein described tract;

THENCE, Northeasterly, an arc distance of 81.44 feet along said southerly R.O.W. line and a curve to the right, having a radius of 123.99 feet, a central angle of 37°37'56", and a chord which bears North 59°59'34" East, 79.98 feet to an "X" cut in concrete found marking a point of tangency;

THENCE, North 78°48'06" East, continuing along said southerly R.O.W. line, a distance of 34.35 feet to a 5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set marking the most westerly corner of Lot 1, Block 1, MARINA DEL SOL and for the most northerly corner of the herein described tract;

THENCE, South 18°47'54" East, departing said southerly R.O.W. line, a distance of 232.22 feet to a 5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set marking the most southerly corner of Lot 1, Block 1, MARINA DEL SOL and for an interior corner of the herein described tract;

THENCE, North 72°17'42" East, along the southerly lines of Lots 1-8, Block 1, MARINA DEL SOL, a distance of 677.25 feet to a 5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set marking an angle point;

THENCE, South 33°34'46" East, along the westerly lines of Lots 9-12, Block 1, MARINA DEL SOL, a distance of 320.00 feet to a 1/2-inch iron rod found marking the most southerly corner of said Lot 12 and an angle point;

THENCE, North 83°14'14" East, along the southerly lines of Lot 12 and Restricted Reserve "A", MARINA DEL SOL, a distance of 84.00 feet to a 5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set marking an angle point;

THENCE, South 77°11'15" East, continuing along a southerly line of said Restricted Reserve "A", a distance of 36.60 feet to a 1/2-inch iron rod found marking an angle point;

THENCE, North 77°34'46" East, continuing along a southerly line of said Restricted Reserve "A", a distance of 41.66 feet to an "X" cut in concrete found marking an angle point;

THENCE, North 64°05'30" East, continuing along a southerly line of said Restricted Reserve "A", a distance of 30.97 feet to a 5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set marking the most easterly corner of the herein described tract;

THENCE, South 00°04'18" West, continuing along a southerly line of said Restricted Reserve "A", a distance of 9.25 feet to an angle point;

THENCE, South 00°04'12" West, over and across Clear Lake, a distance of 284.68 feet to the most northerly corner of Lot 6, Block 1, LOOKOUT POINT AT MARINA DEL SOL, a subdivision plat of record at Plat Record 18, Map Number 1083, G.C.M.R.;

THENCE, South 02°33'19" West, along a northerly line of said Lot 6, a distance of 13.65 feet to a 5/8-inch iron rod found marking an angle point;

THENCE, North 74°49'47" West, along a northerly line of said Lot 6, a distance of 19.85 feet to an angle point;

THENCE, South 82°03'13" West, along a northerly line of said Lots 5 and 6, a distance of 129.61 feet to a 1/2-inch iron rod found marking an angle point;

THENCE, South 68°11'21" West, along a northerly line of said Lot 5, a distance of 50.94 feet to a 5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set marking an angle point;

THENCE, South 07°38'46" West, along a westerly line of said Lot 5, a distance of 48.03 feet to a 5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set marking the most northerly common corner of Lots 4 and 5;

THENCE, South 72°17'42" West, along the northerly lines of Lots 1-4, LOOKOUT POINT AT MARINA DEL SOL, a distance of 220.68 feet to a 5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set marking the most northerly corner of the aforesaid Restricted Reserve "E", MARINA DEL SOL;

THENCE, South 17°18'10" East, along the common line of said Lot 1 and Restricted Reserve "E", a distance of 193.23 feet to a 5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set on the northerly R.O.W. line of Marina Way (60 feet wide);

THENCE, South 72°41'50" West, along said northerly R.O.W. line, a distance of 65.00 feet to a 5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set marking the southerly common corner of said Restricted Reserve "E" and Lot 1, Block 1, REPLAT OF MARINA ON THE LAKE SUBDIVISION RESERVE "I", a subdivision plat of record at Plat Number 2016010487, G.C.M.R.

THENCE, North 17°18'10" West, departing said northerly R.O.W. line, at 176.01 feet passing the easterly common corner of said Lot 1 and Restricted Reserve "A", REPLAT OF MARINA ON THE LAKE SUBDIVISION RESERVE "I", continuing in all for a total distance of 192.77 feet to a 5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set marking an angle point;

THENCE, South 72°17'42" West, along a northerly line of said Restricted Reserve "A", a distance of 478.85 feet to a 5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set marking an angle point;

THENCE, North 27°39'39" West, continuing along a northerly line of said Restricted Reserve "A", a distance of 31.39 feet to a 5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set marking an angle point;

THENCE, South 62°07'15" West, continuing along a northerly line of said Restricted Reserve "A", a distance of 52.34 feet to a 5/8-inch iron rod found marking an angle point;

THENCE, South 34°05'33" West, continuing along a northerly line of said Restricted Reserve "A", a distance of 63.46 feet to a 5/8-inch iron rod found marking an angle point;

THENCE, South 11°49'14" West, at 41.30 feet passing the common corner of said Restricted Reserve "A" and Lot 15, Block 2, REPLAT OF MARINA ON THE LAKE SUBDIVISION RESERVE "I", continuing in all for a total distance of 89.00 feet to a 5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set marking an angle point;

THENCE, South 45°08'14" West, along a northerly line of said Lot 15, a distance of 37.43 feet to a 1/2-inch iron rod found marking the most westerly corner of said Lot 15;

THENCE, North 18°49'14" West, a distance of 358.57 feet to a 5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set marking the most westerly southwest corner of Unrestricted Reserve "C", MARINA DEL SOL;

THENCE, North 81°20'54" East, along a southerly line of said Unrestricted Reserve "C", a distance of 33.29 feet to a 5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set marking an angle point;

THENCE, South 54°53'46" East, along a southerly line of said Unrestricted Reserve "C", a distance of 35.00 feet to a 5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set marking the westerly common corner of said Unrestricted Reserve "C" and Restricted Reserve "B", MARINA DEL SOL;

THENCE, South 20°26'46" East, along the westerly line of said Restricted Reserve "B", a distance of 105.95 feet to a 3/8-inch iron rod found marking the most southerly corner of said Restricted Reserve "B";

THENCE, North 80°02'14" East, along the southerly line of said Restricted Reserve "B", a distance of 121.31 feet to a 5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set marking the southeast corner of said Restricted Reserve "B";

THENCE, North 11°47'16" West, along an easterly line of said Restricted Reserve "B", a distance of 64.98 feet to a 5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set marking an angle point;

THENCE, North 21°04'44" East, a distance of 79.55 feet to a 5/8-inch iron rod with plastic cap stamped "BOUNDARY ONE-RPLS 5489" set marking the easterly common corner of said Unrestricted Reserve "C" and Restricted Reserve "B";

THENCE, North 18°47'54" West, at 438.11 feet passing an "X" cut in concrete found marking the easterly common corner of Unrestricted Reserve "C" and Restricted Reserve "D", MARINA DEL SOL, continuing in all for a total distance of 633.11 feet to an "X" cut in concrete found marking a point of curvature for a curve to the left;

THENCE, Westerly, an arc distance of 52.22 feet along said curve to the left, having a radius of 25.00 feet, a central angle of 119°40'50", and a chord which bears North 78°45'07" West, 43.23 feet to the POINT OF BEGINNING and containing 14.639 acres (637,681 square feet) of land.

**SAVE AND EXCEPT** that certain 1.126 acres (49,043 square feet) of land being more particularly described as follows:

Being a tract or parcel containing 1.126 acres (49,043 square feet) of land situated in the Michael Muldoon Two League Grant, Abstract Number 18, Galveston County, Texas; being out of and a part of that certain tract of land (Tract 2) conveyed to JMK5 Marina LLC as described by deed recorded under Galveston County Clerk's File (G.C.C.F.) Number 2022025374; being out of and a part of Restricted Reserve "A-1", MARINA ON THE LAKE SUBDIVISION, a subdivision plat of record at

Plat Record 18, Map Number(s) 77-78, Galveston County Map Records (G.C.M.R.); said 1.126 acre tract of land being more particularly described as follows (bearings are grid and oriented to the Texas State Plane Coordinate System, South Central Zone Number 4204, US Survey Feet, NAD83(NA2011);

COMMENCING at a 5/8-inch iron rod found on the southerly right-of-way (R.O.W.) line of Twin Oaks Boulevard (90 feet wide) and marking the most westerly corner of Restricted Reserve "D", MARINA DEL SOL, a subdivision plat of record at Plat Record 18, Map Number 160, G.C.M.R.;

THENCE, North 71°49'15" East, along said southerly R.O.W. line, a distance of 9.92 feet to a point of curvature for a curve to the left, from which a 1/2-inch iron rod found bears North 28°32' West, 0.54 feet;

THENCE, Northeasterly, an arc distance of 172.76 feet along said southerly R.O.W. line and curve to the left, having a radius of 323.01 feet, a central angle of 30°38'38", and a chord which bears North 56°29'56" East, 170.71 feet to a 3/8-inch iron rod found marking a point of tangency;

THENCE, North 41°10'36" East, continuing along said southerly R.O.W. line, a distance of 26.57 feet to a 3/8-inch iron rod found marking the most northerly corner of said Restricted Reserve "D" and a point of curvature for a curve to the right, said iron rod also for the POINT OF BEGINNING of the herein described tract;

THENCE, Northeasterly, an arc distance of 81.44 feet along said southerly R.O.W. line and a curve to the right, having a radius of 123.99 feet, a central angle of 37°37'56", and a chord which bears North 59°59'34" East, 79.98 feet to an "X" cut in concrete found marking a point of tangency;

THENCE, North 78°48'06" East, continuing along said southerly R.O.W. line, a distance of 24.18 feet to the most northerly corner of the herein described tract;

THENCE, South 18°47'54" East, departing said southerly R.O.W. line and over and across said Restricted Reserve "A-1", MARINA ON THE LAKE SUBDIVISION, a distance of 667.10 feet to an angle point;

THENCE, North 71°12'06" East, continuing over and across said Restricted Reserve "A-1", a distance of 15.04 feet to an angle point;

THENCE, South 18°47'54" East, continuing over and across said Restricted Reserve "A-1", a distance of 52.00 feet to the most easterly corner of the herein described tract;

THENCE, South 72°11'45" West, continuing over and across said Restricted Reserve "A-1", a distance of 121.74 feet to the northeasterly line of Restricted Reserve "B", MARINA DEL SOL and for the most southerly corner of the herein described tract;

THENCE, North 21°04'44" East, along said northeasterly line, a distance of 65.01 feet to the easterly common corner of said Restricted Reserve "B" and Unrestricted Reserve "C", MARINA DEL SOL and for an angle point;

THENCE, North 18°47'54" West, at 438.11 feet passing the easterly common corner of said Unrestricted Reserve "C" and Restricted Reserve "D", MARINA DEL SOL, continuing in all for a total distance of 633.11 feet to an "X" cut in concrete found marking a point of curvature for a curve to the left;

THENCE, Westerly, an arc distance of 52.22 feet along said curve to the left, having a radius of 25.00 feet, a central angle of 119°40'50", and a chord which bears North 78°45'07" West, 43.23 feet to the POINT OF BEGINNING and containing 1.126 acres (49,043 square feet) and yielding a NET acreage of 13.513 acres (588,638 square feet) of land. This description is based on a Land Title Survey of 15.630 Acres (2 Tracts) prepared by Boundary One, LLC, dated April 4, 2022. Project Number 6767-2202-619V.

---

## EXHIBIT B
### Other Exceptions to Conveyance and Warranty

All valid easements, restrictions, covenants, mineral and royalty reservations and maintenance charges, if any, applicable to and enforceable against the Premises, which have been duly recorded in the real estate records of the county where the property is located, prior to the date of the recording of this Deed of Trust and not otherwise subordinated to this Deed of Trust.

# FILED AND RECORDED

Instrument Number:        *2023013175*

Recording Fee: 82.00

Number Of Pages:        16

Filing and Recording Date: 03/24/2023 9:34AM

I hereby certify that this instrument was FILED on the date and time stamped hereon and RECORDED in the OFFICIAL PUBLIC RECORDS of Galveston County, Texas.



Dwight D. Sullivan, County Clerk
Galveston County, Texas

NOTICE: It is a crime to intentionally or knowingly file a fraudulent court record or instrument with the clerk.

**DO NOT DESTROY** - *Warning, this document is part of the Official Public Record.*