**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 7** |
| | § | |
| **ILS Income Fund I LP,** *and* | § | **Case No. 25-37277 (EVR)** |
| **ILS Growth Fund I LP,** | § | |
| | § | |
| **Debtors.** | § | **(Jointly Administered)** |
| | § | |

**TRUSTEE'S MOTION (I) AUTHORIZING THE SALE OF CERTAIN ASSETS**
**FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS**
**AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(B) AND (F);**
**(II) AUTHORIZING AND APPROVING ASSET PURCHASE AGREEMENT;**
**AND (III) GRANTING RELATED RELIEF**

**This Motion seeks an order that may adversely affect you. If you oppose the Motion, you should immediately contact the moving party to resolve the dispute. If you and the Moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the Court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

**To the Honorable Eduardo V. Rodriguez,**
**Chief United States Bankruptcy Judge:**

Ronald J. Sommers, Chapter 7 Trustee (the "***Trustee***") for the bankruptcy estates of ILS Income Fund I LP and ILS Growth Fund I LP (together, the "***Estates***"), files this *Motion (I) Authorizing the Sale of Certain Assets Free and Clear of All Liens, Claims, Interests and Encumbrances Pursuant to 11 U.S.C. §§ 363(b) and (f); (II) Authorizing and Approving Asset Purchase Agreement; and (III) Granting Other Related Relief* (the "***Motion***"), and shows:

332700392v1

**Summary of Relief Requested**

1.      The Trustee requests authority to sell all of the Estates' right, title and interest in the Acquired Assets (defined below), along with the interest any Co-Owners (as defined below) who may hold ownership interests in certain of the Acquired Assets, free and clear of any and all liens, claims, interests and other encumbrances pursuant to 11 U.S.C. § 363(f) to Impex DGW Capital, LLC (the "*Buyer*") for a total purchase price of **Twenty-Seven Million Eight Hundred Sixty-Six Thousand and No/100 Dollars ($27,866,000.00),** subject to certain adjustments (the "*Purchase Price*").  The sale may, at the Buyer's election, be bifurcated into two closings.  After payment of the respective Co-Owners' interest and satisfaction of collateral assignments as set forth in more detail below, the Trustee estimates that the proposed sale will result in the payment of a total of approximately **$15,316,150.00** in funds to the Estates ($3,141,143.17 to the ILS Income Estate and $12,175,006.91 to the ILS Growth Estate).[1]  The terms of the proposed sale are set forth in the *Amended and Restated Agreement Regarding Purchase of Notes and Liens* (the "*Asset Purchase Agreement*") between the Trustee and the Buyer.  The Acquired Assets will be sold on an "AS-IS, WHERE-IS, WITH-ALL-FAULTS" basis, with no representation or warranty of any kind, express or implied.  Further, the Trustee seeks approval to pay at closing certain creditors holding valid senior secured claims against certain of the Acquired Assets and, as set forth in more detail below, the proportionate share of the sale price to any Co-Owners of any of the Acquired Assets whose interests are included in the proposed sale.

2.      The Asset Purchase Agreement is attached hereto as **Exhibit 1**.

3.      Alternatively, pursuant to his fiduciary duty to the ILS Income Estate and the ILS Growth Estate, the Trustee will accept the highest and best offer for the Acquired Assets in the aggregate that is timely received.

---

[1]  The Trustee's calculation assumes the sale will close by July 31, 2026.  To the extent the sale occurs after July 31,

2

4.      The conveyance of each Note (defined below) and Lien (defined below) included in the Acquired Assets will be by *Assignment of Note and Lien* in substantially similar form as attached hereto as **Exhibit 1-C** (the "*Assignment*").

5.      The Acquired Assets include a substantial portion of the Estates' JMK5 Loan Portfolio (defined below).  The JMK5 Loan Portfolio consists of certain notes, liens, guarantees and other related loan documents held by the Estates that relate to loans made to ten (10) special purpose entities, all of which are secured by commercial real property owned by these special purpose entities.  The loans that make up the Acquired Assets constitute, as a group, the primary and most valuable non-litigation assets of the Estates.

6.      The proposed sale is the result of significant efforts by the Trustee to implement a liquidation strategy with the goal of preserving and maximizing the value of the Estates' assets.  The proposed sale is the result of a significant months-long good faith negotiation process between the Trustee and the Buyer.

7.      The purpose of this Motion is to facilitate the orderly liquidation of these valuable assets of the Estates.

### Jurisdiction and Venue

8.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This Court may hear and determine this Motion under the standing order of reference issued by the United States District Court for the Southern District of Texas under 28 U.S.C. § 157. Consideration of this Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) and (O).  As such, this Court may enter a final order on this matter under 28 U.S.C. § 157(b)(1).

9.      Venue of this proceeding is proper in this district under 28 U.S.C. §§ 1408 and 1409.

---

2026 the amounts may vary due to the accrued interest and other fees.

3

**Background**

10.     On December 1, 2025 (the "***Petition Date***"), ILS Income Fund I LP ("***ILS Income***") and ILS Growth Fund I LP ("***ILS Growth***", and together with ILS Income, the "***Debtors***") each filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, thereby initiating bankruptcy cases under Case Nos. 25-37277 and 25-37281, respectively (the "***Chapter 7 Cases***"), and creating the Estates.

11.     Ronald J. Sommers was appointed the chapter 7 trustee of the Estates.

12.     The Chapter 7 Cases are jointly administered under Case No. 25-37277 pursuant to this Court's order entered on December 15, 2025.  [Docket No. 7].

13.     Prepetition, the Debtors operated as investment funds that primarily invested in promissory notes secured by liens on commercial real property.  Many of the promissory notes were also supported by personal guarantees.  The Debtors' Schedules identify approximately twenty (20) different commercial and residential real properties on which either one or both Debtors hold liens. [*See e.g.,* Docket No. 8, p.15–34].  Of those properties, ten (10) are owned by separate special purpose entities that are owned by Jerome Karam, a developer (collectively, the "***JMK5 Entities***"). The JMK5 Entities are the borrowers under various notes held in whole or in part by one or both of the Debtors.  Each of these notes is secured by the commercial real property owned by the respective JMK5 Entity.  These notes, together with the security agreements, mortgages, guarantees, and other loan documents, constitute the "***JMK5 Loan Portfolio.***"

14.     The Debtors hold varying interests in the loans that make up the JMK5 Loan Portfolio.  As to many loans, one of the Debtors holds complete ownership interest.  For others, one of the Debtors shares a percentage of the ownership of the loan with the other Debtor or a third party.  And the loans do not all have the same lien priority—each of the properties owned by the

4

332700392v1

JMK5 Entities has multiple liens against it. Additionally, some of the notes in the JMK5 Loan Portfolio have been collaterally assigned as security for loans made prepetition to one of the Debtors.

15.     The ten JMK5 Entities and the commercial real property owned by each are identified below:

| Owner/Borrower | Property Address |
|---|---|
| JMK5 Alvin, LLC | 000 Texas State Hwy 35, Alvin, TX 77511 (the "*Alvin Property*") |
| JMK5 Arena, LLC | 5721 FM 2004, La Marque, TX 77568 (the "*Arena Property*") |
| JMK5 Falstaff Hotel, LLC | 402 33rd Street, Galveston, TX 77550 (the "*Falstaff Property*") |
| JMK5 Gemini A, LLC | 600-A Gemini St., Houston, TX 77058 (the "*Gemini A Property*") |
| JMK5 Gemini B, LLC | 600-B Gemini St., Houston, TX 77058 (the "*Gemini B Property*") |
| JMK5 Gemini D, LLC | 600-D Gemini St., Houston, TX 77058 (the "*Gemini D Property*") |
| JMK5 Marina, LLC | 1203 Twin Oaks Blvd., Kemah, TX 77565 (the "*Marina Property*") |
| JMK5 Racing, LLC | 1000 Emmett Lowery Expressway, Texas City, TX 77591 (the "*Racing Property*") |
| JMK5 Shreveport, LLC | 6007 Financial Plaza, Shreveport, LA 71129 (the "*Shreveport Property*") |
| JMK5 Sand Springs, LLC | 1200 East Charles Page, Sand Springs, OK 74063 (the "*Sand Springs Property*") |

16.     The Alvin Property, the Arena Property, the Falstaff Property, the Gemini A Property, the Gemini B Property, the Gemini D Property, the Marina Property, the Racing Property, the Shreveport Property and the Sand Springs Property are collectively referred to herein as the "*Properties*". The Gemini A Property, the Gemini B Property, and the Gemini D Property are collectively referred to herein as the "*Gemini Properties*." The remainder of the Properties are referred to collectively as the "*Non-Gemini Properties*."

17.     On information and belief, all of the JMK5 Entities are owned by Jerome Karam ("*Mr. Karam*"). Mr. Karam personally guaranteed each of the loans in the JMK5 Loan Portfolio.

18.     Shortly after the Chapter 7 Cases were filed, the Trustee employed a valuation services company, Integra Realty Resources Inc. ("*Integra*"), as his appraiser to, among other things, prepare and provide valuation reports on all twenty properties on which the Debtors hold liens. [*See* Docket Nos. 53 and 69]. Integra determined the appraised value of the Properties to be:

5

| Property | Appraised Value |
|---|---|
| Alvin Property | $3,380,000.00 |
| Arena Property | $7,400,000.00 |
| Falstaff Property | $780,000.00 |
| Gemini A Property | $8,230,000.00 |
| Gemini B Property | $4,320,000.00 |
| Gemini D Property | $3,300,000.00 |
| Marina Property | $5,520,000.00 |
| Racing Property | $9,000,000.00 |
| Shreveport Property | $740,000.00 |
| Sand Springs Property | $2,730,000.00 |

19.     The Trustee also employed a number of title companies to determine the priority of the various liens the Estates hold against each of the Properties.  Based on the services provided by Integra, the title companies, and his counsel, the Trustee was able to investigate and formulate an understanding of the value and extent of the Estates' commercial mortgage assets.

20.     In the spring of 2026, the Trustee was contacted by the Buyer regarding a potential sale of the Estates' interests in the JMK5 Loan Portfolio.  After significant back-and-forth negotiations, the Trustee, subject to Bankruptcy Court approval, has agreed to sell a substantial portion of the JMK5 Loan Portfolio to the Buyer.  Pursuant to the terms of the Asset Purchase Agreement the following notes (the "*Notes*"), their associated mortgage documents and liens (the "*Liens*"), and other related loan documents, including any related guarantees (collectively, the "*Acquired Assets*") will be sold to the Buyer in exchange for payment of the Purchase Price.  The sale will include all of the guarantees signed by Mr. Karam that are related to the Notes.  Below is a list of the Notes that are to be included in the proposed sale, the priority of the lien securing each Note relative to other encumbrances against the relevant Property and, if there are Co-Owners of a particular Note, the percentage of ownership in that Note held by either of the Estates.

6

| No. | Borrower | Original Principal Amount of Note | Lien Priority of Note | Noteholder(s) | Noteholder % Ownership |
|---|---|---|---|---|---|
| 1. | JMK5 Alvin LLC | $4,500,000.00 | 1st | ILS Income Fund I LP | 88.89% |
| | | | | KK Houston Properties Inc. | 11.11% |
| 2. | JMK5 Arena LLC | $5,900,000.00 | 5th | ILS Growth Fund I LP | 100.00% |
| 3. | JMK5 Falstaff Hotel LLC | $1,432,169.06 | 1st | Silver Lending LLC / ILS Income Fund I LP and collaterally assigned to DGE Fund I and NewFirst National Bank | Sale is only for ILS Income Fund I LP interest by quitclaim deed |
| | | $4,047,640.49 | 2nd | ILS Growth Fund I LP | 100.00% |
| | | $8,980,000.00 | 3rd | ILS Growth Fund I LP | 100.00% |
| | | $1,925,000.00 | 5th | ILS Growth Fund I LP | 100.00% |
| | | $4,600,000.00 | 6th | ILS Growth Fund I LP | 100.00% |
| 4. | JMK5 Gemini A LLC | $1,961,680.00 | 1st | ILS Growth Fund I LP and collaterally assigned to DGE Fund I and NewFirst National Bank | 100.00% |
| | | $4,068,990.04 | 2nd | ILS Growth Fund I LP | 30.00% |
| | | | | DFS Cornerstone I LLC | 20.00% |
| | | | | ILS RE Capital LLC | 20.00% |
| | | | | ILS RE Capital III LLC | 20.00% |
| | | | | ILS Capital IV LLC | 10.00% |
| | | $1,719,329.96 | 3rd | ILS Growth Fund I LP | 100.00% |
| | | $2,100,000.00 | 4th | ILS Growth Fund I LP | 100.00% |
| | | $2,385,000.00 | 5th | ILS Growth Fund I LP | 100.00% |
| | | $2,100,000.00 | 6th | ILS Growth Fund I LP | 100.00% |
| | | $2,605,000.00 | 7th | ILS Growth Fund I LP | 100.00% |
| 5. | JMK5 Gemini B LLC | $3,000,000.00 | 2nd | ILS Growth Fund I LP and collaterally assigned to DGE Fund I LP | 58.33% |
| | | | | ILS Growth Fund I LP and collaterally assigned to Newfirst National Bank and Elliot W. Kruppa | 25.00% |
| | | | | ILS Growth Fund I LP and collaterally assigned to Ramona Krenek | 16.667% |
| | | $1,000,000.00 | 3rd | ILS Growth Fund I LP | 30.00% |
| | | | | ILS RE Capital LLC | 20.00% |
| | | | | ILS RE Capital II LLC | 20.00% |
| | | | | ILS RE Capital III LLC | 15.00% |
| | | | | ILS RE Capital IV LLC | 15.00% |
| | | $2,000,000.00 | 5th | ILS Growth Fund I LP | 100.00% |

7

| No. | Borrower | Original Principal Amount of Note | Lien Priority of Note | Noteholder(s) | Noteholder % Ownership |
|---|---|---|---|---|---|
|  |  | $1,615,000.00 | 6th | ILS Growth Fund I LP | 100.00% |
|  |  | $2,490,000.00 | 10th | ILS Growth Fund I LP | 100.00% |
| 6. | JMK5 Gemini D LLC | $2,000,000.00 | 1st | KK Houston Properties Inc. | 50.00% |
|  |  |  |  | Ramona Krenek | 33.00% |
|  |  |  |  | KJT Memorial Foundation | 11.00% |
|  |  |  |  | ILS Income Fund I LP | 6.00% |
|  |  | $1,000,000.00 | 2nd | ILS Growth Fund I LP | 100.00% |
|  |  | $2,500,000.00 | 3rd | ILS Growth Fund I LP | 100.00% |
|  |  | $3,660,000.00 | 4th | ILS Growth Fund I LP | 100.00% |
|  |  | $3,800,000.00 | 5th | ILS Growth Fund I LP | 100.00% |
| 7. | JMK5 Marina LLC | $1,650,000.00 | 6th | ILS Income Fund I LP | 100.00% |
| 8. | JMK5 Racing LLC | $6,500,000.00 | 5th | ILS Growth Fund I LP | 76.92% |
|  |  |  |  | KK Houston Properties Inc. | 23.08% |
| 9. | JMK5 Shreveport LLC | $2,115,000.00 | 1st | ILS Growth Fund I LP | 100.00% |
| 10. | JMK5 Sand Springs LLC | $3,200,000.00 | 1st | ILS Growth Fund I LP | 100.00% |
|  |  | $5,200,000.00 | 2nd | ILS Income Fund I LP | 100.00% |
|  |  | $1,800,000.00 | 3rd | ILS Growth Fund I LP | 100.00% |
|  |  | $9,400,000.00 | 5th | ILS Growth Fund I LP | 100.00% |
|  |  | $4,950,000.00 | 6th | ILS Growth Fund I LP | 100.00% |
|  |  | $2,430,000.00 | 7th | ILS Growth Fund I LP | 100.00% |
|  |  | $5,985,000.00 | 9th | ILS Growth Fund I LP | 100.00% |
|  |  | $18,470,000.00 | 10th | ILS Growth Fund I LP | 100.00% |

**Table 1**: Notes to Be Acquired Assets

21.     The Notes and Liens secured by the Gemini Properties are referred to in the Asset Purchase Agreement as the "*Gemini Acquired Assets*") and the Notes and Liens secured by the remainder of the Properties are referred to as the "*Non-Gemini Acquired Assets*."

22.     An allocation of the Purchase Price to each Note is set forth on **Exhibit 1-B**. Of the total Purchase Price, $15,850,000.00 is allocated to the Gemini Acquired Assets (the "*Gemini Purchase Price*") and $12,016,000.00 is allocated to the Non-Gemini Acquired Assets (the "*Non-Gemini Purchase Price*").

23.     Under the terms of the Asset Purchase Agreement, the Buyer may elect to effect the purchase of the Gemini Acquired Assets at a separate closing (the "*Second Closing*") from the

8

closing of the purchase of the Non-Gemini Acquired Assets (the "**First Closing**").  In the event that the Buyer elects to bifurcate the purchase into the First Closing and the Second Closing, the total aggregate Purchase Price shall remain the same, and the amounts of the Purchase Price allocated to each of the separate Acquired Assets shall remain the same.

24.     As identified in the above table, a number of the Notes have third-party, non-debtor co-noteholders who own a percentage of the applicable Note.  For example, the $4,500,000.00 Note executed by the JMK5 Alvin LLC Borrower is owned 88.89% by ILS Income and 11.11% by KK Houston Properties Inc.  *See* Table 1, No. 1.  Additionally, some of the Notes have been collaterally assigned to a third party to secure a prepetition loan to a Debtor.  For example, ILS Income borrowed funds from DGE Fund I and NewFirst National Bank prepetition and collaterally assigned the $1,961,680.00 note from the JMK5 Gemini A LLC Borrower to those lenders.  *See* Table 1, No. 4.

25.     For those Notes in which another party holds an ownership interest, the Trustee seeks authority to sell such Co-Owner's interest in the applicable Note.  The Trustee intends to contact each of the relevant third-party Co-Owners to obtain their consent to the inclusion of their interest in the proposed sale of the applicable Note(s) to the Buyer in exchange for their proportionate share of the Purchase Price that is allocated to the applicable Note.  If the Trustee cannot obtain the Co-Owner's consent, the Buyer has the option to remove that particular Note, Lien, and its corresponding loan documents from the list of Acquired Assets, with an equivalent dollar for dollar reduction in the Purchase Price.  A list of the Co-Owners for each Note (the "**Co-Owners**") and their respective percentage interest is attached hereto as **Exhibit 2**.

26.     As to the Notes that were collaterally assigned prepetition, the Trustee shall apply the allocated portion of the Purchase Price for that Note to the satisfaction of the debt related to the

9

collateral assignment.  A list of the collaterally assigned Notes and the respective collateral assignee is attached hereto as **Exhibit 3**.

27.     **Exhibit 4** attached hereto reflects the allocation of the Purchase Price to each of the Properties, the application of that allocated purchase price to each of the Notes, and the estimated payment amount for each Note, including any associated Co-Owner of the Note, if any, and the amount to satisfy any collateral assignment of the Note, if any.  Pursuant to this analysis, the Trustee estimates that after the payment of the Co-Owner's interest and satisfaction of the collateral assignments, as set forth in **Exhibit 4**, the proposed sale will result in the total amount of approximately **$15,316,150.00** in funds to the Estates ($3,141,143.17 to the ILS Income Estate and $12,175,006.91 to the ILS Growth Estate).  These calculations are based on the payoff amounts as of July 31, 2026.  To the extent that one or more closings occur after July 31, 2026, the amounts may change due to accrued interest and other fees.

28.     The Trustee selected the Buyer's offer to purchase the Estates' interest in the Acquired Assets as the highest and best offer received to date.  The sale will be free and clear of all liens, claims, encumbrances and other interests pursuant to 11 U.S.C. § 363(b) and (f), with such claims, liens, encumbrances and interests, if any, to attach to the proceeds of the sale.  The sale will be on an "as is, where is" basis without any representations or warranties of any kind.

### Proposed Sale Terms

29.     Pursuant to 11 U.S.C. § 363(b) and (f) and as set forth in the in Asset Purchase Agreement, the Trustee requests authority to convey the Estates' interest in the Acquired Assets, along with the interests of any Co-Owners, which will be conveyed on an "as-is, where-is" basis with no representation or warranty of any kind, free and clear of all liens, claims, interests and other encumbrances of any kind or character, with any valid security interests and liens to attach to the net sales proceeds, if any, subject to the Trustee's avoidance powers to the extent necessary.

332700392v1

30.     Subject to Court approval, the terms of the proposed sale are set forth in the attached

Asset Purchase Agreement and summarized as follows:

a)     The Trustee agrees to sell to the Buyer and the Buyer agrees to purchase from the Trustee all of the Estates' and, subject to provisions of section 1.2 of the Asset Purchase Agreement, the Third-Party Holders' rights, titles, and interest in and to the Notes, Liens and the other Loan Documents as set forth on Exhibit 1-A (the "*Acquired Assets*") free and clear of all liens, claims, and encumbrances to the fullest extent permitted under Section 363 of the Bankruptcy Code.

b)     The aggregate Purchase Price for the Acquired Assets shall be **Twenty-Seven Million Eight Hundred Sixty-Six Thousand and No/100 Dollars ($27,866,000.00)**

c)     The Purchase Price shall be payable in cash (or by wire transfer of immediately available funds) in full at Closing (as defined below); however, if the Buyer elects to bifurcate the sale, the Non-Gemini Purchase Price shall be payable in cash (or by wire transfer of immediately available funds) in full at the First Closing and the Gemini Purchase Price shall be payable in cash (or by wire transfer of immediately available funds) in full at the Second Closing.

d)     The Buyer shall deposit a non-refundable One Million and No/100 Dollars ($1,000,000.00) (the "*Deposit*") with the Title Company within three (3) days following the entry of the Sale Order (as defined in the Asset Purchase Agreement).  The Deposit shall be non-refundable but shall be applied to the Purchase Price at Closing; provided that if the Buyer elects to bifurcate the sale, $568,794.00 will be applied to the First Closing Purchase Price and $431,206.00 will be applied to the Second Closing Purchase Price.

e)     If the Buyer does not elect to bifurcate the sale, the consummation of the purchase and sale of the Acquired Assets (the "*Closing*") shall occur on or before the forty-fifth day after issuance of the Sale Order or the first business day thereafter if such day is not a business day.  If the Buyer elects to bifurcate the sale, the First Closing shall occur on or before the forty-fifth day after the issuance of the Sale Order or the first business day thereafter if such day is not a business day, and the Second Closing shall occur on or before the ninetieth day after the issuance of the Sale Order or the first business day thereafter if such day is not a business day.

f)     The Asset Purchase Agreement and the transaction contemplated thereby are subject to Bankruptcy Court approval.

11

332700392v1

g)     The sale of the Acquired Assets is being made on an "as is" and "where is" basis and "with all faults" and with no representations or warranties, express or implied except as set forth in Section 7 of the Asset Purchase Agreement.

h)     The conveyance shall occur via an appropriately completed Assignment of Note and Liens for each Note and Lien in the form substantially similar to the form attached as **Exhibit 1-C**.

31.     The Trustee reserves his right to modify or amend the terms of the proposed sale and the proposed accompanying order.

## A. 11 U.S.C. § 363(b)

32.     The Trustee requests authority to sell the Acquired Assets free and clear of all liens, claims or other interests.  As set forth herein, the requirements under section 363(b) and (f) for a sale free and clear are satisfied.  With the exception of the collaterally assigned Notes, the Trustee is not aware of any liens against Estates' interest in the Acquired Assets.  His investigation has not identified any other liens, and the Debtors' Schedules do not disclose any such liens.

33.     The Court may authorize the sale of the Estates' interest in the Acquired Assets free and clear of all liens, claims, encumbrances, and interests.  Section 363(f) allows the Trustee to sell the Estates' interest in the Acquired Assets free and clear of any interest if:

(1)     applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in a bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

332700392v1

34.     The Trustee believes there will likely be sufficient proceeds allocated to the particular collateral assigned Notes to satisfy the obligation and that such party will consent.  To the extent that is not the case on a particular Note, the Trustee asserts that the appraised value of the particular Property and the level of priority for the particular Note and Lien, such entity could be compelled to accept a money satisfaction of that interest.  Other than the collateral assignments of Notes identified in Table 1, the Trustee is not aware of any liens asserted on the Estates' interest in the Acquired Assets or proceeds thereof.  Therefore, the Trustee asserts that the requirements of 11 U.S.C. § 363(f) are satisfied.

35.     Notice of the proposed sale and its terms, as set out in this Motion, will be given to all known creditors of ILS Income and of ILS Growth and all known parties in interest.  The Trustee requests that any person or entity served with this Motion who claims a lien on, interest in, or claim against the Estates' interest in the Acquired Assets, other than those identified on Table 1, file a written notice with the Court and serve it on the Trustee no later than 45 days after entry of an Order approving the sale or be forever barred from asserting such lien, claim or interest.

### B.  Due Diligence on Guarantor

36.     As noted above, the Acquired Assets include all of the guarantees executed by Mr. Karam in connection with the Notes to be sold.  As set forth in the Asset Purchase Agreement, Mr. Karam has provided the Trustee with the Karam Financial Information (as defined in the Asset Purchase Agreement).  After analyzing the Karam Financial Information and meeting with Mr. Karam, the Trustee believes in his business judgment that the proposed sale of the Acquired Assets, including Mr. Karam's guarantees, is in the best interests of the Estates.  There is no separate allocation of the Purchase Price to Mr. Karam's guarantees because the Trustee, through his investigation, believes that pursuing those guarantees would not result in any recovery for the Estates. The indebtedness represented by the JMK5 Loan Portfolio represents only a portion of Mr.

332700392v1

Karam's liabilities, and many of his other creditors have already obtained judgments against him. Moreover, most of Mr. Karam's non-exempt assets hold little, if any, value. For these reasons, the Trustee has agreed to include Mr. Karam's guarantees in the Acquired Assets for no additional payment by the Buyer. However, the Trustee has made Mr. Karam's continued cooperation in the Trustee's investigations a term of the Asset Purchase Agreement. The Trustee has considered the possibility that the Estates may hold claims against Mr. Karam apart from those arising under the guarantees, but his investigations indicate that there are no other such claims.

37. Jerome Karam and the Buyer understand that the Karam Financial Information is a material component of the proposed transaction with the Buyer and that the Trustee has relied on the information provided in the Karam Financial Information in making his determination to proceed with the proposed sale of the Acquired Assets to the Buyer.

**C. Sale of the Acquired Assets**

38. In evaluating sale of property of the bankruptcy estate, a court must balance the need for flexibility with the concerns of the affected creditors. *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 715 (Bankr. W.D. Tex. 1989). The Court must also determine whether a creditor, if any, asserting a lien against the property to be sold is adequately protected and that the purchase price offered is the highest price obtainable under the circumstances in the particular case. *Id.*; *In re Beker Indus. Corp.*, 63 B.R. 474, 477–78 (Bankr. S.D.N.Y. 1986).

39. The Trustee believes in his business judgment that the proposed sale is the best available option to obtain the maximum value for the Estates' interest in the Acquired Assets. As noted above, the current offer is the highest offer received to date. The Trustee has not received any other offer for the Acquired Assets as a whole, and he has not received more than an expression of interest in the purchase of any of the specific Notes. Based on the property appraisals, the existence and priority of other liens on the Properties, and the facts and circumstances presented by these

14

Chapter 7 Cases, among other things, the Trustee believes in his business judgment that the sale of the Acquired Assets is in the best interest of the Estates, the best interest of the creditors and for a price and upon terms that are the most beneficial.

40.     While the Trustee seeks authority to sell the Acquired Assets to the Buyer, the Asset Purchase Agreement provides that the Trustee has the ability to entertain higher and better offers for the Acquired Assets.  While a number of parties have expressed interest in some of the Acquired Assets, as noted above, the Buyer is the only party that has submitted a proposed agreement on all of the Acquired Assets.  The Buyer's offer is  thus the highest and best offer received to date.  The Trustee expects that he will know by the date of the hearing set on this Motion whether there are any potential competing bidders for the Acquired Assets.   However, the Trustee believes it is unlikely that he will receive an offer for the Acquired Assets that is higher and better than the offer presented in the Asset Purchase Agreement.[2]

41.     The Trustee requests that any party that seeks to submit a higher and better offer, send such offer to the Trustee (via his below identified counsel) so that it is received **on or before August 24, 2026**.  To be considered, an offer must be identical to the Buyer's offer but must provide for a total sales price of at least **Twenty-Eight Million and No/100 Dollars ($28,000,000.00)** in order to provide for the increased administrative costs that would be incurred by such offer.   The offer must also include proof of available funds sufficient to close the proposed transaction.  The Trustee shall have the sole discretion in his business judgment as to which bid is the highest and best offer.  If the Trustee receives multiple offers, he will have the option to conduct an auction, and accept backup

---

[2]   It should be noted that, under the terms of the Asset Purchase Agreement, any competing offer must be an offer for all of the Acquired Assets, including both the Gemini Acquired Assets and the Non-Gemini Acquired Assets.  The Trustee agreed to this provision because the Buyer's offer represents a fair price for each of the Notes and related loan documents and allocates material value to some of the Notes that are unlikely to interest any other potential purchasers.  Accordingly, the Trustee believes that selling the Acquired Assets as a package will provide more value to the Estates than allowing other potential purchasers to "cherry pick" the more desirable Notes in the JMK5 Loan Portfolio.

332700392v1

bids in case the bidder submitting the ultimate highest and best offer does not timely close the sale of the Acquired Assets.

42.     The Trustee further seeks a finding that the Buyer is purchasing the Acquired Assets in good faith and thus entitled to the protections of 11 U.S.C. § 363(m).  The Trustee has thoroughly investigated the existence of any possible ties between the Buyer and any insider of the Debtors and has concluded that there are none.  He has also concluded that the relationship between the Debtors and Mr. Karam was solely commercial.  Given these facts and the arm's-length nature of the negotiations between the Trustee and the Buyer, the Trustee believes that the Buyer meets the requirements of a good faith purchaser under the statute.

43.     The Trustee further seeks an order waiving the 14-day stay imposed by Federal Rule of Bankruptcy Procedure 6004(h).

### Conclusion

Ronald J. Sommers, Chapter 7 Trustee of the bankruptcy estates of ILS Income Fund I LP, and ILS Growth Fund I LP, prays this Court for the entry of an order, in substantially the form attached to this Motion, approving the sale of the Estates' right, title  and interest, along with that of any Co-Owners, in the Acquired Assets to Buyer free and clear of any and all liens, claims, interests and encumbrances pursuant to 11 U.S.C. §§ 363(b), (f), and (m) on the terms set forth herein and in the Asset Purchase Agreement; and for all other relief to which the Trustee may be justly entitled.

332700392v1

Respectfully submitted,

*/s/ Simon R. Mayer*
Simon R. Mayer
Texas Bar Number 24060243
**TROUTMAN PEPPER LOCKE LLP**
600 Travis Street, Suite 2800
Houston, TX 77002
Telephone:  713-226-1200
Facsimile:  713-226-3717
Email:  Simon.Mayer@troutman.com

***Counsel for***
***Ronald J. Sommers, Trustee***

and

*/s/ Elizabeth M. Guffy*
Elizabeth M. Guffy, Attorney at Law
1116 Autrey Street
Houston, TX  77006
Telephone:  832-715-3654
Email: eguffy@eguffylaw.onmicrosoft.com

***Proposed Co-Counsel for***
***Ronald J. Sommers, Trustee***

17

332700392v1

**Certificate of Service**

I hereby certify that a true and complete copy of the foregoing pleading has been served on the parties registered for electronic service in this case and listed below through the Court's ECF/PACER system on August 4, 2026.

- Daniel Joseph Gierut on behalf of Horizon Turf Grass Inc.
- Daniel Joseph Gierut on behalf of R&R Turf Farms LP
- Lydia R Webb on behalf of Donald Sutton
- Misty A. Segura on behalf of The Mint National Bank
- Richard A. Battaglia on behalf of Jet Lending LLC
- Aaron J. Power on behalf of Good Bull Lending L.P.
- Reginald J. Fox on behalf of Intervenors
- W. Lee Keeling on behalf of Greg Garcia
- Elyse M. Farrow on behalf of ILS Income Fund I LP
- Elyse M. Farrow on behalf of ILS Growth Fund I LP
- Melissa Anne Haselden on behalf of ILS Income Fund I LP
- Melissa Anne Haselden on behalf of ILS Growth Fund I LP
- Jeannie Lee Andresen on behalf of City of Webster
- Jeannie Lee Andresen on behalf of Galveston County
- John Mark Stern on behalf of Texas Comptroller of Public Accounts Revenue Accounting Division
- Kim Ellen Lewinski on behalf of KJT Memorial Foundation
- T. Josh Judd on behalf of ILS Action Group of Investors
- Ronald J Sommers
- Simon R. Mayer on behalf of Trustee Ronald J. Sommers
- Elizabeth Mary Guffy on behalf of Trustee Ronald J. Sommers
- US Trustee

*/s/ Simon R. Mayer*
Simon R. Mayer

18

332700392v1