UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | **Chapter 7** |
| | § | |
| **ILS Income Fund I LP,** *and* | § | **Case No. 25-37277 (EVR)** |
| **ILS Growth Fund I LP,** | § | |
| | § | |
| Debtors. | § | **(Jointly Administered)** |
| | § | |

**ORDER GRANTING TRUSTEE'S MOTION (I) AUTHORIZING THE SALE OF
CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND
ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(B) AND (F);
(II) AUTHORIZING AND APPROVING ASSET PURCHASE AGREEMENT;
AND (III) GRANTING RELATED RELIEF**
[Related to Docket No. \_\_\_]

The Court has considered the *Motion (I) Authorizing the Sale of Certain Assets Free and*

*Clear of All Liens, Claims, Interests and Encumbrances Pursuant to 11 U.S.C. §§ 363(b) and (f); (II)*

*Authorizing and Approving Asset Purchase Agreement; and (III) Granting Other Related Relief* (the

"***Motion***") filed by Ronald J. Sommers, Chapter 7 Trustee (the "***Trustee***") for the bankruptcy estates

of ILS Income Fund I LP ("***ILS Income***") and ILS Growth Fund I LP ("***ILS Growth***").  Through the

Motion, the Trustee seeks approval to sell the Estates' interest, along with that of certain Co-Owners

as set forth in the Motion, in certain Notes, Liens,  and other loan documents defined as the Acquired

Assets[3] to Impex DGW Capital, LLC (the "***Buyer***") free and clear of all liens, interests, claims and

encumbrances pursuant to this Order and the Asset Purchase Agreement (the "***Sale***") and to

distribute the proceeds from such Sale between the Co-Owners and the Estates as set forth in the

Motion.

Upon the hearing on the Motion (the "***Sales Hearing***"); and all parties-in-interest having

been heard, or having had the opportunity to be heard, regarding the Motion, the Asset Purchase

---

[3] All capitalized terms not otherwise defined in this Order shall have the meaning set forth in the Motion.

332700392v1

Agreement, and this Order; and this Court having reviewed and considered the Motion and all objections thereto, if any, the arguments of counsel, and the evidence adduced at the Sale Hearing; and upon the entire record, and after due deliberation thereon, and sufficient cause appearing therefore, the Court is of the opinion that the Motion should be granted.  Any objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are overruled on the merits with prejudice.

The Court is of the opinion that the Motion should be granted.  The Court finds as follows:

A.      The Court has jurisdiction to consider the Motion and to grant the relief requested therein pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

B.      The legal predicates for the relief requested in the Motion are sections 105 and 363 of the Bankruptcy Code.  Such relief is also warranted pursuant to Bankruptcy Rules 2002, 6004, 9014 and 9019.

C.      The Sale of the Acquired Assets (to the Buyer on the terms set out in the Motion and the Asset Purchase Agreement attached to this Order as **Exhibit 1** is proper.

D.      Based upon the certificates of service [Docket Nos. _____ and _____], and the evidence presented as the Sale Hearing: (1) proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale and the transactions contemplated thereby has been provided in accordance with sections 102(1), 105(a), and 363 of the Bankruptcy Code, and Bankruptcy Rules 2002, 4001, 6004, 9006, 9007, and 9014; (2) such notice was good and sufficient, appropriate under the particular circumstances and reasonably calculated to reach and apprise all known and unknown holders of liens, claims and encumbrances; and (3) no other or further notice of the Motion, the Sale Hearing, the Sale, is or shall be required.  Further, a reasonable opportunity to object to and to be

2

heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 6004(a).

E.      The Trustee has properly exercised his business judgment in entering into the Asset Purchase Agreement.

F.      The Estates have an interest in the Acquired Assets that are sought to be transferred to the Buyer pursuant to the Asset Purchase Agreement and that interest is property of the Estates and title thereto is vested in the Estates within the meaning of section 541(a) of the Bankruptcy Code. Pursuant to the agreements announced at the Sales Hearing, Co-Owners have consented to the transfer of their respective interest in the Acquired Assets by the Trustee.  As of the Closing Date, the consummation of the Sale contemplated by the Asset Purchase Agreement will be legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), and 1146, and all of the applicable requirements of such sections have been complied with in respect of the Sale.

G.      The Trustee and the Buyer have acted in good faith.

H.      The Trustee and the Buyer negotiated, proposed, and entered into the Asset Purchase Agreement without collusion or fraud, in good faith, and from arm's-length bargaining positions. The Buyer is, therefore, purchasing the Acquired Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code.  The Buyer is not an "insider" or "affiliate" of the Debtors as those terms are defined in sections 101(31) and 101(2) of the Bankruptcy Code.  Neither the Trustee nor the Buyer has engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code. The Buyer proceeded in good faith in connection with all aspects of the Sale. The Buyer recognized that the Trustee was free to deal with any other party interested in acquiring the Acquired Assets. All payments to be made by the Buyer and other agreements or arrangements entered into by the

3

Buyer in connection with the Sale have been disclosed, neither the Buyer nor the Trustee has violated section 363(n) of the Bankruptcy Code by any action or inaction, and no common identity of directors or controlling stockholders exists between and among the Buyer on the one hand, and the Trustee, on the other.  Accordingly, the Buyer is entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code, including in the event this Order or any portion thereof is reversed or modified on appeal, and otherwise has proceeded in good faith in all respects in connection with these Chapter 7 Cases and the Sale.

I.       The total consideration provided by the Buyer pursuant to the Asset Purchase Agreement (i) is fair and adequate, (ii) is the highest or otherwise best offer for the Acquired Assets, (iii) is in the best interests of the Estates, their creditors, and other parties in interest; (iv) will provide a greater recovery for the Estates than would be provided by any other available alternative, and (v) constitutes reasonably equivalent value and fair consideration under the Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, the Bankruptcy Code and any other applicable laws.  The Trustee's determination that the Asset Purchase Agreement constitutes the highest and best offer for the Acquired Assets and the Bankruptcy Estates' entry into the Asset Purchase Agreement constitutes a valid and sound exercise of the Trustee's business judgment.  Neither the Trustee nor the Buyer engaged in any conduct that would cause or permit the Asset Purchase Agreement or the consummation of the Sale to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, any other law of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law.  The Asset Purchase Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors or their Estates under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law.  Neither the Trustee nor

4

the Buyer has entered into the Asset Purchase Agreement or is consummating the Sale with any fraudulent or otherwise improper purpose. Other than the Buyer, no person, entity or group of persons or entities has offered to purchase the Acquired Assets for an amount that would provide greater economic value to the Estates. The Court's approval of the Motion as set forth herein, the Sale, and the Asset Purchase Agreement is in the best interests of the Estates, their creditors and all other parties in interest.

J.        The Buyer has not colluded or entered into any agreements with any other bidders, potential bidders or any other parties interested in the Acquired Assets and there was no agreement among potential bidders that controlled the price paid for the Acquired Assets; therefore, neither the Trustee, the Estates, nor any other party shall be entitled to bring an action against the Buyer, and the Sale may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

K.        Notice of the Motion is proper and complies with applicable bankruptcy law and rules under the circumstances of this Bankruptcy Case, and no further notice is required.

L.        A sale of the Acquired Assets other than one free and clear of liens, claims, and interests and without the protections of this Order would have a material adverse impact on the Estates and would yield substantially less value, with less certainty than any available alternatives. Without the protections afforded to the Buyer under the Bankruptcy Code and this Order, the Buyer would have not offered the consideration set forth for the Acquired Assets in the Asset Purchase Agreement.

M.        The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale if the Sale to the Buyer were not free and clear of all claims, lien, interests and encumbrances, including Claims and Liens pursuant to § 363(f) of the Bankruptcy Code, or if the Buyer would, or in the future could, be liable for any of such claims, liens, interests and encumbrances. Unless expressly included in the Asset Purchase Agreement, the Buyer shall not be

5

332700392v1

responsible for any claims, liens, interests and encumbrances, including in respect of the following: any mortgages, deeds of trust or security interests.

N.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).   Notwithstanding Bankruptcy Rule 6004(h), the parties may consummate the Sale immediately upon entry of this Order.   Time is of the essence in consummating the Sale to the Buyer.   Accordingly, cause exists to lift the stay to the extent necessary, as contemplated by Bankruptcy Rule 6004(h).   To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order.

O.      The consummation of the Sale to the Buyer is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), and 363(m) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.   In particular, the Trustee may sell the Acquired Assets free and clear of all liens, claims and interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.   Any party with an interest in the Acquired Assets who did not object, or who withdrew its objection, to the Sale or the Motion is deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.   Further, the parties holding collateral interest in some of the Acquired Assets have either consented to the sale of their respective interest in the Acquired Assets or will be receiving payment in full of their secured claims, thus satisfying section 363(f)(2) of the Bankruptcy Code.   Any party with a lien, claim, or other interest in the Acquired Assets who did object falls within one or more of the other subsections of § 363(f) of the Bankruptcy Code and is adequately protected.

6

P.        Accordingly, subject to section 363(f) of the Bankruptcy Code, and except as otherwise provided in the Asset Purchase Agreement or this Order, the transfer of the Acquired Assets to the Buyer will be, as of the Closing Date, a legal, valid, and effective transfer of the Acquired Assets, which transfer vests or will vest the Buyer with all right, title, and interest of the Debtors and their Estates and the interests of the Co-Owners to the Acquired Assets free and clear of, among other things, all claims, liens, interests and encumbrances.

Based upon the foregoing Findings of Fact: it is therefore **ORDERED, ADJUDGED AND DECREED THAT**:

1.        The relief requested in the *Motion (I) Authorizing A Sale of Certain Assets Free and Clear of All Liens, Claims, Interests and Encumbrances Pursuant to 11 U.S.C. §§ 363(b) and (f); (II) Authorizing and Approving Asset Purchase Agreement; and (III) Granting Other Related Relief* (the "***Motion***") is **GRANTED** as set forth in this Order.  All objections to the Motion, if any, and/or otherwise to the Sale are overruled on the merits, with prejudice, to the extent they have not been withdrawn, waived or otherwise resolved.

2.        The Asset Purchase Agreement, attached hereto as **Exhibit 1**, is **APPROVED**.

3.        The Co-Owners identified in **Exhibit 2** attached hereto consent and are deemed to consent to the Trustee's sale of their respective undivided interest in the Acquired Assets to the Buyer pursuant to 11 U.S.C. § 363(b) and (f).

4.        The Co-Owners are directed to execute all documents and take all other actions necessary to complete the Sale on the terms set out in this Order.

5.        On the terms and conditions set forth in the Motion and the Asset Purchase Agreement attached hereto as **Exhibit 1**, pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Trustee is authorized to sell and transfer all of the Bankruptcy Estates' right, title and interest in and to the Acquired Assets (as defined in the Motion and the Asset Purchase

Agreement) and the Co-Owners' right, title and interest in and to the Acquired Assets to Buyer for the total purchase price of **Twenty-Seven Million Eight Hundred Sixty-Six Thousand and No/100 Dollars ($27,866,000.00)** ("*Purchase Price*"), which is to be paid in full at Closing or as provided in the Asset Purchase Agreement at the First Closing and the Second Closing

6.      At Closing or at the First Closing and Second Closing, if applicable, the Trustee shall satisfy the collateral assignments by paying the collateral assignees from the net sale proceeds (the "*Sale Proceeds*") the amounts set forth in **Exhibit 3** attached hereto.

7.      At Closing or at the First Closing and Second Closing, if applicable, the Trustee shall disburse Sale Proceeds to the Co-Owners and the Debtors according to their respective percentage interests in the Acquired Assets pursuant to 11 U.S.C. § 363(j) in the amounts set forth in **Exhibit 2** attached hereto.

8.      The Buyer is hereby granted the protections of good faith purchaser under 11 U.S.C. § 363(m).

9.      The consideration provided by the Buyer under the Asset Purchase Agreement is fair and reasonable, and the sale may not be avoided under 11 U.S.C. § 363(n).

10.      The sale of the Acquired Assets by the Trustee to the Buyer shall be made "as is, where is" with no representations or warranties of any kind, other than as expressly stated in the Asset Purchase Agreement.

11.      Upon the Closing or upon the First Closing and Second Closing, if applicable: (a) the Trustee is hereby authorized and directed to consummate, and shall be deemed for all purposes to have consummated, the sale, transfer and assignment of the Acquired Assets as set forth herein to the Buyer free and clear of all liens, claims, interests and liabilities; and (b) except as expressly provided in the Asset Purchase Agreement, all liens, claims and liabilities shall not be enforceable against the Buyer or the Acquired Assets.  Unless expressly provided in the Asset Purchase Agreement or this

8

332700392v1

Order, the Buyer shall not be responsible for any claims, liens, interests and encumbrances, including any mortgages, deeds of trust or security interests. A certified copy of this Order may be filed with the appropriate clerk and/or recorder to cancel or extinguish any such lien, claim, interest or encumbrance of record, and each appropriate clerk and/or recorder is hereby ordered to accept a certified copy of this Order as evidence of the cancellation or extinguishment of any such lien, claim, interest, or encumbrance.

12.     The transfer to the Buyer of the Acquired Assets pursuant to this Order shall be, and hereby is deemed to be, a legal, valid and effective transfer of the Estates' and the Co-Owners' rights, title and interest in the Acquired Assets as set forth herein, and vests in or will vest in the Buyer all rights, title and interest of the Estates and the Co-Owners in the Acquired Assets, free and clear of all claims, liens, interests and encumbrances of any kind or nature whatsoever, with any such claims, liens, interests and encumbrances attaching to the Sale Proceeds in the same validity, extent and priority as existed immediately prior to the Sale, subject to the provisions of the Asset Purchase Agreement, and any rights, claims and defenses of the Estates, and other parties in interest.

13.     Because the Asset Purchase Agreement has been entered into with the Buyer in good faith and the Buyer is a good faith purchaser of the Acquired Assets as that term is used in section 363(m) of the Bankruptcy Code, the Buyer is entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

14.     The consideration provided by the Buyer for the Acquired Assets under the Asset Purchase Agreement shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided, or costs or damages imposed or awarded, under section 363(n) or any other provision of the Bankruptcy Code, the Uniform Voidable Transfer Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act or any other similar federal or state laws.

9

332700392v1

15.     The obligations relating to taxes, whether arising under Law, the Asset Purchase Agreement or otherwise, shall be fulfilled by the party responsible for such obligations under the Asset Purchase Agreement.

16.     The provisions of this Order are non-severable and mutually dependent.

17.     Except with respect to any assumed liabilities and permitted liens allowed pursuant to the Asset Purchase Agreement or this Order, if any person or entity which has filed statements or other documents or agreements evidencing liens, interests or encumbrances on, or claims in, the Acquired Assets shall not have delivered to the Trustee before the Closing or before the First Closing and Second Closing, if applicable, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all claims, liens, interests or encumbrances which the person or entity has or may assert with respect to the Acquired Assets, the Trustee and the Buyer are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets. Notwithstanding the foregoing, a certified copy of this Order may be filed with the appropriate clerk or recorded with the recorder of any state, county, or local authority and that shall be sufficient to cancel or extinguish any of the liens, claims, or interests of record, except with respect to any assumed liabilities and permitted liens allowed pursuant to the Asset Purchase Agreement or this Order.

18.     The terms of this Order shall be binding on and inure to the benefit of the Trustee, the Estates, the Buyer and all creditors and all other parties in interest, and any successors of such parties including, but not limited to, any subsequent trustee in these Chapter 7 Cases.

332700392v1

19.     The Trustee is hereby authorized to execute all instruments and documents and to perform all other actions necessary to consummate the transaction contemplated under the Motion and this Order.

20.     Nothing in this Order shall be construed to compromise any issue or dispute or to affect any obligation between the Trustee and any other individuals or entities.

21.     To the extent that this Order is inconsistent with the Asset Purchase Agreement, the terms of the Asset Purchase Agreement shall govern.

22.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in this Bankruptcy Case, the terms of this Order shall govern.

23.     The failure specifically to include or to reference any particular provisions of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement is authorized and approved in its entirety.

24.     The Court retains jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order, the Asset Purchase Agreement, all amendments thereto, and any waivers and consents thereunder, and each ancillary document executed in connection therewith to which the Trustee or the Estates is a party or which has been assigned by the Trustee to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Acquired Assets to the Buyer , (b) interpret, implement, and enforce the provisions of this Order, and (c) protect the Buyer against any lien, claims, or interests in or against the Estates or the Acquired Assets of any kind or nature whatsoever; provided, however, that in the event the Court abstains from exercising or declines to exercise jurisdiction or is without jurisdiction, such abstention, refusal

11

or lack of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

25.     The 14-day stay requirements of Bankruptcy Rule 6004(h) are hereby **WAIVED**.

26.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Rules to the contrary, including but not limited to Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds there is no reason for any material delay in the implementation of this Order and, accordingly, unless otherwise ordered by the Court: (i) the Trustee and the Estates are not subject to any other stay of this Order or in the implementation, enforcement or realization of the relief granted in this Order unless so stayed by further Court order; and (ii) the Trustee shall take any action and perform any act authorized under this Order.

_____
Eduardo V. Rodriguez
Chief United States Bankruptcy Judge

12

**Exhibit 1**                                                    *Troutman 7.31.26*

## AMENDED AND RESTATED
## AGREEMENT REGARDING PURCHASE OF NOTES AND LIENS

THIS AMENDED AND RESTATED AGREEMENT REGARDING PURCHASE OF NOTES AND LIENS ("Agreement") is made and entered into as of August 3, 2026 (the "Effective Date"), by and between **Ronald J. Sommers, Chapter 7 Trustee** of the bankruptcy estates of **ILS Income Fund I LP** and **ILS Growth Fund I LP** (the "Trustee") and **Impex DGW Capital, LLC**, a Texas limited liability company (the "Buyer").  This Agreement amends and restates in its entirety that certain Agreement Regarding Purchase of Notes and Liens dated July 6, 2026, by and between Buyer and Trustee.

### RECITALS:

WHEREAS, the Trustee is the chapter 7 trustee of the bankruptcy estates of ILS Income Fund I, LP and ILS Growth Fund I, LP (collectively, the "Estates") which bankruptcy cases are being jointly administered under Case Number 25-37277 (the "Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"); and

WHEREAS, the Estates, together with certain third parties (the "Third-Party Holders"), are the owners and holders of those certain promissory notes described on Exhibit A attached hereto (the "Notes"); and

WHEREAS, the Notes are secured by, as applicable, the deeds of trust, mortgages, and assignments of leases and rents as set forth on Exhibit A (the "Security Instruments"); and

WHEREAS, each of the Notes is guaranteed by Jerome Karam (the "Guarantor") pursuant to the guarantees, as applicable, set forth on Exhibit A (the "Guarantees"); and

WHEREAS, upon and subject to the terms and conditions of this Agreement and the approval of the Bankruptcy Court, the Buyer desires to purchase the Notes, Security Instruments and the liens created thereby (the "Liens") and the Guarantees and any loan or mortgagee policies of title insurance insuring the Liens (the "Title Policies") and the Trustee, on behalf of the Estates, desires to sell to Buyer the Notes, Security Interests, Liens, Guarantees and Title Policies and all other documents evidencing or relating to the loans evidenced by the Notes (collectively, the "Loan Documents").

### AGREEMENTS:

NOW, THEREFORE, for and in consideration of the mutual covenants and agreements contained herein, the Buyer and the Trustee hereby agree as follows:

1     Purchase and Sale of the Acquired Assets.  Subject to the terms and conditions of this Agreement, the Trustee agrees to sell to the Buyer, and the Buyer agrees to purchase from the Trustee all of the Estates' and, subject to the provisions of Section 1.2 below, the Third-Party Holders' rights, titles and interests in and to the Notes, Liens and the other Loan Documents set forth on Exhibit A (the "Acquired Assets") free and clear of all liens, claims,

330026998v7

*Troutman 7.31.26*

and encumbrances to the fullest extent permitted under Section 363 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). The Loan Documents in which JMK5 Gemini A LLC, JMK5 Gemini B LLC and JMK5 Gemini D LLC are the borrowers including, without limitation, the associated Guarantees are referred to herein as the "Gemini Acquired Assets." The Acquired Assets other than the Gemini Acquired Assets are referred to herein as the "Non-Gemini Acquired Assets."

1.1 Excluded Assets. The Acquired Assets shall not include:

(a) Any Note, together with its associated other Loan Documents, that the Buyer elects to exclude under the provisions of paragraph 1.2 below;

(b) All rents or other income related to any of the Acquired Assets that accrue prior to the Closing, regardless of when received by the Trustee;

(c) Any claims or causes of action held by the Estates against any party other than the makers of the Notes or the Guarantor.

1.2 Interests of Third-Party Holders. The Trustee will use good faith, commercially reasonable efforts to obtain the Third-Party Holders' consent to include in the sale to the Buyer their interests in the Notes and other Loan Documents that constitute Acquired Assets or to obtain provisions in the Sale Order that permit the sale of the Third-Party Holders' interest in the Acquired Assets without their consent under Section 363(h) of the Bankruptcy Code; however, the Trustee does not represent or guarantee that he will be successful in doing so. In the event that the Trustee, after commercially reasonable efforts, is unable to either obtain the consent of a Third-Party Holder or provisions in the Sale Order to permit the sale of such Third-Party Holder's interest, then the Buyer will be granted an opportunity to work directly with any non-consenting Third-Party Holder to facilitate and negotiate such payoff or acquisition arrangement. If the Buyer cannot reach a satisfactory agreement with a non-consenting Third-Party Holder, then the Buyer shall have the right to elect that Note and the other related Loan Documents in which the non-consenting Third-Party Holder holds an interest be removed from the Acquired Assets, and the Purchase Price shall be reduced, dollar for dollar, by the allocated amount set forth in Section 2.1 below. Additionally, the Sale Order shall confirm that the Notes and Liens being sold include those as set forth on Exhibit A.

2. Purchase Price. The aggregate purchase price ("Purchase Price") shall be **Fifteen Million Eight Hundred Fifty Thousand and No/100 Dollars ($15,850,000.00)** for the Gemini Acquired Assets, shall be **Twelve Million Sixteen Thousand and No/100 Dollars ($12,016,000.00)** for the Non-Gemini Acquired Assets and shall be payable in cash (or by wire transfer of immediately available funds) at the applicable Closing (hereinafter defined) for such Acquired Assets.

2.1 Allocation of the Purchase Price. The portion of the Purchase Price that is allocated to each of the Notes, Liens and their related Loan Documents is as set forth on Exhibit B.

2.2 Deposit. The Buyer shall deposit a non-refundable **One Million and No/100 Dollars ($1,000,000.00)** (the "**Deposit**") with the Title Company (as defined below) within three

2

330026998v7

*Troutman 7.31.26*

(3) days following the entry of the Sale Order (as defined below). The Deposit shall be non-refundable but shall be applied to the Purchase Price at the Closing as follows:

    (a) $568,794.00 of the Deposit shall be applied to the Purchase Price at the Closing of the purchase and sale of the Gemini Acquired Assets; and

    (b) $431,206.00 of the Deposit shall be applied to the Purchase Price at the Closing of the purchase and sale of the Non-Gemini Acquired Assets.

The Buyer hereby agrees that if the Buyer fails to close the transactions described herein for any reason other than a default by the Trustee hereunder, the Title Company (as defined below) shall release the Deposit or remaining portion thereof to the Trustee without further permission required from the Buyer.

2.3 <u>Cooperation by Guarantor</u>. As part of the consideration for the sale of the Guarantees, the Guarantor agrees to provide all cooperation reasonably requested by the Trustee in the investigation and prosecution of claims and causes of action against any parties other than the makers of the Notes, the Guarantor, or the Buyer. The Guarantor's obligation to cooperate shall survive the Closing.

2.4 <u>Sales Tax Payable by the Buyer</u>. The Buyer shall pay the sales tax due, if any, with respect to the transaction contemplated by this Agreement.

3 <u>Proof of Funds; Guarantor Financial Information</u>. Prior to the date of this Agreement, the following have been provided to the Trustee:

    (a) By the Buyer, proof of funds available to the Buyer to close the proposed transaction in a form satisfactory to the Trustee in his sole discretion; and

    (b) By the Guarantor, (i) a copy of the Guarantor's latest filed federal tax return, (ii) the Guarantor's individual balance sheet signed and dated May 2026, and (iii) a written statement by the Guarantor as to whether any of the makers of the Notes have any assets other than the real properties that are subject to the Liens (collectively, the "<u>Karam Financial Information</u>"), in a form satisfactory to the Trustee in his sole discretion.

4 <u>Bankruptcy Court Approval</u>. The parties agree and acknowledge that this Agreement and the transaction contemplated herein is subject to Bankruptcy Court approval and that the Trustee will not be bound by the terms of this Agreement unless and until the Agreement has been approved by order of the Bankruptcy Court.

4.1 <u>Trustee to File Sale Motion</u>. Upon the full execution of this Agreement, the Trustee shall promptly file a motion (the "<u>Sale Motion</u>") with the Bankruptcy Court seeking approval of this Agreement and the sale of the Acquired Assets to the Buyer free and clear of all liens, claims, and encumbrances pursuant to the provisions of Section 363(a) of the Bankruptcy Code (the "<u>Sale Order</u>"). The Sale Motion shall request a finding by the Bankruptcy Court that the Buyer is purchasing the Acquired Assets in good faith and is entitled to the protections of Section 363(m) of the Bankruptcy Code.

3

*Troutman 7.31.26*

    4.2 <u>Sale Subject to Higher and Better Offer</u>.  The Sale Motion shall state that the transaction set forth herein is subject to the potential submission of a higher and better offer for the Acquired Assets.  To be considered a higher and better offer, such offer must be for the entirety of the Acquired Assets.  If the Trustee receives any offers for the Acquired Assets prior to the entry of the Sale Order, the Trustee shall comply with his fiduciary duty to the Estates with regard to the evaluation of such offers.

    4.3 <u>Buyer's Cooperation</u>.  The Buyer shall cooperate with the Trustee as to all requests the Trustee deems reasonably necessary to obtain the entry of the Sale Order, including but not limited to declarations, documentation, and witnesses as may be needed.

5   <u>Conditions of Purchase and Closing</u>.  The Trustee shall have no obligation to sell and the Buyer shall have no obligation to purchase the Notes and the other Loan Documents until such time, if ever, that the following conditions are satisfied:

    (a) the Bankruptcy Court shall have entered the Sale Order and, as of the Closing Date, the Sale Order shall be a final order in full force and effect and shall not have been stayed, vacated, or reversed;

    (b) The Buyer shall have provided proof of funds to the Trustee as required by Section 3(a) above; and

    (c) The Guarantor has provided the Karam Financial Information to the Trustee as required by Section 3(b) above.  Additionally, the Guarantor shall agree to provide his reasonable cooperation regarding the Trustee's investigation and prosecution of the Estates' claims against third parties.

6   <u>Closing; Conveyance of Notes and Liens</u>.  Subject to Section 3 above, the consummation of the purchase and sale of the Acquired Assets (the "<u>Closing</u>") shall take place at the offices of Fidelity National Title at 440 Louisiana St. #1100, Houston, Texas 77002 (the "<u>Title Company</u>") (or such other place as the Trustee and Buyer may agree) (a) with respect to the Non-Gemini Acquired Assets, on or before the forty-fifth (45th) day after the issuance of the Approval Order or first business day thereafter if such day is not a business day, and (b) with respect to the Gemini Acquired Assets, on or before the ninetieth (90th) day after the issuance of the Approval Order or first business day thereafter if such day is not a business day .  At the Closing, the Trustee (and, if applicable, the Third-Party Holders) shall assign and convey unto the Buyer the Notes, Liens and other Loan Documents comprising the Non-Gemini Acquired Assets or Gemini Acquired Assets, as applicable, and shall execute an appropriately completed Assignment of Note and Liens for each such Note and Lien in the form attached hereto as <u>Exhibit C</u> (the "<u>Assignment of Note and Liens</u>") and with such modifications as may be required to meet any local recording requirements.

7   <u>Trustee's Limited Representations</u>.  The Trustee, on behalf of the Estates, makes the following representations and warranties, which shall survive the execution of the Agreement and which shall survive the Closing:

    7.1 <u>Authority</u>.  The Trustee is the chapter 7 trustee in the Bankruptcy Case.  Subject to the entry of the Sale Order, the Trustee has the authority to enter into this Agreement and to consummate the transactions contemplated herein.

4

330026998v7

*Troutman 7.31.26*

7.2 <u>No Prior Transfer of Interest</u>.  the Trustee, on behalf of the Estates, has not previously sold or conveyed any interest in the Notes, Liens or other Loan Documents except with respect to the Third-Party Holders as is set forth on <u>Exhibit A</u>.

8   <u>Buyer's Representations and Warranties</u>.  The Buyer makes the following representations and warranties, which shall survive the execution of the Agreement and which shall survive the Closing:

8.1 <u>Authority</u>.  The Buyer has the authority and power to enter into this Agreement and consummate the transactions contemplated herein.

8.2 <u>Investigation</u>.  The Buyer acknowledges that the Trustee has limited information and documentation concerning the Acquired Assets; the Buyer has made its own investigation concerning the Acquired Assets, the condition of title, and any other matter pertaining to the Acquired Assets; and, other than the express representations made by the Trustee pursuant to this Agreement, the Buyer is not relying on any representations, warranties, or inducements the Trustee (or any agent of the Trustee) with respect to the Acquired Assets, the condition of title to the Acquired Assets, or any other matter pertaining to the Acquired Assets, the transaction contemplated in this Agreement, or otherwise.

8.3 <u>"As Is" "Where Is" Sale</u>.  **The Buyer agrees and acknowledges that it has had a full opportunity to conduct its own due diligence and that the sale of the Acquired Assets is being made on an "as is" and "where is" basis and "with all faults" and with no representations or warranties, express or implied, except as set forth in Section 7.**

9   <u>Costs and Expenses</u>.  All costs and expenses incurred in connection with this Agreement shall be paid by the party incurring such cost or expense; provided, however, that the costs of recording the Assignments of Note and Liens shall be paid by the Buyer.

10  <u>No Modification of Notes or Security Instruments</u>.  This Agreement shall not be construed to release or in any way modify the Notes or any of the Loan Documents.

11  <u>No Beneficiaries</u>.  No person or entity besides the Trustee, the Sellers, the Buyer, and their permitted successors has any rights or remedies under this Agreement.

12  <u>Termination</u>.  This Agreement may be terminated at any time prior to Closing by:

(a) mutual written agreement of the Trustee and the Buyer;

(b) the Buyer, if any material condition set forth in this Agreement has not been satisfied and such condition is incapable of being satisfied, unless the Buyer elects to waive such satisfaction;

(c) the Trustee, if any material condition set forth in this Agreement has not been satisfied and such condition is incapable of being satisfied, unless the Trustee elects to waive such satisfaction; and

(d) the Trustee, if in his business judgment a higher and better offer for the Acquired Assets is received prior to the entry of the Sale Order

The party desiring to terminate this Agreement pursuant to this Section 11 shall give notice of such termination to the other party in accordance with Section 13.1.

5

330026998v7

*Troutman 7.31.26*

13   Miscellaneous.

13.1   Notices.  All notices, requests, or other communications to any party hereunder shall be in writing (including electronic mail and facsimile transmission) and shall be given,

| | |
|---|---|
| If to the Trustee, to: | Ronald J. Sommers<br>1400 Post Oak Boulevard, Suite 300<br>Houston, Texas  77056<br>rsommers@nathansommers.com |
| With a copy to: | Simon R. Mayer<br>Troutman Pepper Locke<br>600 Travis Street, Suite 2800<br>Houston, Texas  77002<br>simon.mayer@troutman.com |
| If to the Buyer: | Impex DGW Capital, LLC<br>Ash Shah, Manager<br>5251 Westheimer, Suite 925<br>Houston, Texas  77056<br>ash.shah@impexcapitalgroup.com |
| With a copy to: | Richard L. Fuqua<br>8558 Katy Freeway, Suite 119<br>Houston, Texas  77024<br>RLFuqua@fuqualegal.com |

13.2   Complete agreement.  This Agreement and the Assignments of Notes and Liens constitute the entire agreement between the parties in respect to the subject matter hereof and may not be altered or amended except in a writing signed by all parties hereto.

13.3   Governing Law; Retention of Jurisdiction.  This Agreement shall be governed by and construed in accordance with the laws of the State of Texas and any applicable provisions of the Bankruptcy Code, without regard to the principles of conflicts of law that would provide for the application of another law.  Any and all disputes, disagreements, interpretations, or other matters concerning the consummation and enforcement of this Agreement shall be and remain in the exclusive jurisdiction of the Bankruptcy Court and, as a result thereof, any pleadings, causes of action, or other requests for relief must be brought before the Bankruptcy Court by the party seeking such relief, and all parties herein consent to the jurisdiction of the Bankruptcy Court.

13.4   Binding Agreement.  This Agreement shall be binding upon the parties hereto and their respective heirs, legal representatives, successors and assigns.

EXECUTED by the parties hereto as of the date first above written.

6

330026998v7

*Troutman 7.31.26*

13.4   Binding Agreement.  This Agreement shall be binding upon the parties hereto and their respective heirs, legal representatives, successors and assigns.

EXECUTED by the parties hereto as of the date first above written.

_____ Trustee
Ronald J. Sommers,
Chapter 7 Trustee for ILS Growth Fund I LP
and ILS Income Fund I LP


Impex DGW Capital, LLC


By: _____
Name: _____
Title: _____


Jerome Karam joins in the execution of this Agreement to confirm his agreement to provide the Karam Financial Information and to provide his reasonable cooperation regarding the Trustee's investigation and prosecution of the Estates' claims against third parties.


_____
Jerome Karam

7

330026998v7

*Troutman 7.31.26*

_____
Ronald J. Sommers,
Chapter 7 Trustee for ILS Growth Fund I LP
and ILS Income Fund I LP


Impex DGW Capital, LLC

By: _____
Name: ____Ash Shah_____
Title: _____Manager_____


Jerome Karam joins in the execution of this Agreement to confirm his agreement to provide the Karam Financial Information and to provide his reasonable cooperation regarding the Trustee's investigation and prosecution of the Estates' claims against third parties.


_____
Jerome Karam


7

330026998v7

*Troutman 7.31.26*

_____
Ronald J. Sommers,
Chapter 7 Trustee for ILS Growth Fund I LP
and ILS Income Fund I LP


Impex DGW Capital, LLC


By: _____
Name: _____
Title: _____


Jerome Karam joins in the execution of this Agreement to confirm his agreement to provide the Karam Financial Information and to provide his reasonable cooperation regarding the Trustee's investigation and prosecution of the Estates' claims against third parties.


_____
Jerome Karam

7

330026998v7

**<u>EXHIBIT A</u>**
**to Agreement Regarding Purchase of Notes and Liens**

**Description of Notes, Liens, Security Instruments, Guarantees, Loan Documents and Third-Party Holders**

**[See attached]**

330026998v7

**EXHIBIT A**

| Name of Borrower | Original Principal Amount of Note | Lien Priority of Note[1] | Noteholder(s) | Noteholder % Ownership | Address of Property Securing Note |
|---|---|---|---|---|---|
| JMK5 Alvin LLC | $4,500,000.00 | 1st | ILS Income Fund I LP | 88.89% | 000 Texas State Highway 35 Alvin, Texas 77511 |
| | | | KK Houston Properties Inc. | 11.11% | |
| JMK5 Arena LLC | $5,900,000.00 | 5th | ILS Growth Fund I LP | 100.00% | 5721 FM 2004, La Marque Texas 77568 |
| JMK5 Falstaff Hotel LLC | $1,432,169.06 | 1st | Silver Lending LLC / ILS Income Fund I LP | Sale is only for ILS Income Fund I LP interest by quitclaim deed | 402 33rd Street Galveston, Texas 77550 |
| | $4,047,640.49 | 2nd | ILS Growth Fund I LP (f/k/a ILS Short Term Fund I LP) | 100.00% | |
| | $8,980,000.00 | 3rd | ILS Growth Fund I LP | 100.00% | |
| | $1,925,000.00 | 5th | ILS Growth Fund I LP | 100.00% | |
| | $4,600,000.00 | 6th | ILS Growth Fund I LP | 100.00% | |
| JMK5 Gemini A LLC | $1.961,680.00 | 1st | ILS Growth Fund I LP and collaterally assigned to DGE Fund I and NewFirst National Bank | 100.00% | 600-A Gemini Street Houston, Texas 77058 |
| | $4,068,990.04 | 2nd | ILS Growth Fund I LP | 30.00% | |
| | | | DFS Cornerstone I LLC | 20.00% | |
| | | | ILS RE Capital LLC | 20.00% | |
| | | | ILS RE Capital III LLC | 20.00% | |
| | | | ILS Capital IV LLC | 10.00% | |
| | $1,719,329.96 | 3rd | ILS Growth Fund I LP | 100.00% | |
| | $2,100,000.00 | 4th | ILS Growth Fund I LP | 100.00% | |
| | $2,385,000.00 | 5th | ILS Growth Fund I LP | 100.00% | |
| | $2,100,000.00 | 6th | ILS Growth Fund I LP | 100.00% | |

---

[1] The Trustee makes no representation or warranty regarding the priority, validity or extent of any lien or note.

**EXHIBIT A**

| Name of Borrower | Original Principal Amount of Note | Lien Priority of Note[1] | Noteholder(s) | Noteholder % Ownership | Address of Property Securing Note |
|---|---|---|---|---|---|
| | $2,605,000.00 | 7th | ILS Growth Fund I LP | 100.00% | |
| JMK5 Gemini B LLC | $3,000,000.00 | 2nd (collateral loan) | ILS Growth Fund I LP and collaterally assigned to DGE Fund I LP | 58.33%% | 600-B Gemini Street Houston, Texas 77058 |
| | | | ILS Growth Fund I LP and collaterally assigned to Newfirst National Bank | 25.00% | |
| | | | ILS Growth Fund I LP and collaterally assigned to Elliot W. Kruppa | 25.00% | |
| | | | ILS Growth Fund I LP and collaterally assigned to Ramona Krenek | 16.667% | |
| | $1,000,000.00 | 3rd | ILS Growth Fund I LP | 30.00% | |
| | | | ILS RE Capital LLC | 20.00% | |
| | | | ILS RE Capital II LLC | 20.00% | |
| | | | ILS RE Capital III LLC | 15.00% | |
| | | | ILS RE Capital IV LLC | 15.00% | |
| | $2,000,000.00 | 5th | ILS Growth Fund I LP | 100.00% | |
| | $1,615,000.00 | 6th | ILS Growth Fund I LP | 100.00% | |
| | $2,490,000.00 | 10th | ILS Growth Fund I LP | 100.00% | |
| JMK5 Gemini D LLC | $2,000,000.00 | 1st | KK Houston Properties Inc. | 50.00% | 600-D Gemini Street Houston, Texas 77058 |
| | | | Ramona Krenek | 33.00% | |
| | | | KJT Memorial Foundation | 11.00% | |
| | | | ILS Income Fund I LP | 6.00% | |
| | $1,000,000.00 | 2nd | ILS Growth Fund I LP | 100.00% | |
| | $2,500,000.00 | 3rd | ILS Growth Fund I LP | 100.00% | |
| | $3,660,000.00 | 4th | ILS Growth Fund I LP | 100.00% | |
| | $3,800,000.00 | 5th | ILS Growth Fund I LP | 100.00% | |

**EXHIBIT A**

| Name of Borrower | Original Principal Amount of Note | Lien Priority of Note[1] | Noteholder(s) | Noteholder % Ownership | Address of Property Securing Note |
|---|---|---|---|---|---|
| JMK5 Marina LLC | $1,650,000.00 | 6th | ILS Income Fund I LP | 100.00% | 1203 Twin Oaks Boulevard Kemah, Texas 77565 |
| JMK5 Racing LLC | $6,500,000.00 | 5th | ILS Growth Fund I LP | 76.92% | 1000 Emmett F. Lowry Expressway, Texas City, Texas 77591 |
| | | | KK Houston Properties Inc. | 23.08% | |
| JMK5 Shreveport LLC | $2,115,000.00 | 1st | ILS Growth Fund I LP | 100.00% | 6007 Financial Plaza, Shreveport, Louisiana 71129 |
| JMK5 Sand Springs LLC | $3,200,000.00 | 1st | ILS Growth Fund I LP | 100.00% | 1200 East Charles Page Bouledvard, Sand Springs, Oklahoma 74063 |
| | $5,200,000.00 | 2nd | ILS Income Fund I LP | 100.00% | |
| | $1,800,000.00 | 3rd | ILS Growth Fund I LP | 100.00% | |
| | $9,400,000.00 | 5th | ILS Growth Fund I LP | 100.00% | |
| | $4,950,000.00 | 6th | ILS Growth Fund I LP | 100.00% | |
| | $2,430,000.00 | 7th | ILS Growth Fund I LP | 100.00% | |
| | $5,985,000.00 | 9th | ILS Growth Fund I LP | 100.00% | |
| | $18,470,000.00 | 10th | ILS Growth Fund I LP | 100.00% | |

**EXHIBIT A**

**JMK5 Alvin LLC**

**Note/Guaranty**

1.  That certain Promissory Note Secured by Security Instrument Fixed Rate Interest Only with Balloon, dated January 25, 2023, made by JMK5 Alvin LLC, a Texas limited liability company ("Alvin") in favor of ILS Lending LLC, a Texas limited liability company ("Lending"), in the original principal amount of $4,500,000.00; guaranteed by that certain Personal Guaranty Agreement of Jerome M. Karam, dated January 25, 2023, made by Jerome M. Karam ("Guarantor") in favor of Lending.

**Security Instruments**

2.  That certain First Lien Commercial Deed of Trust, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing, dated January 25, 2023, made by JMK5 Alvin LLC, a Texas limited liability company ("Alvin") in favor of ILS Lending LLC, a Texas limited liability company ("Lending"), recorded on January 30, 2023, in the Official Public Records of Brazoria County, Texas ("Brazoria Records"), as Instrument No. 2023004008, in the original principal amount of $4,500,000.00; secured by that certain Assignment of Leases and Rents, dated January 25, 2023, by Alvin in favor of Lending, recorded January 30, 2023, in the Brazoria Records, as Instrument No. 2023004009; transferred by that certain Transfer and Assignment of Lien, dated May 1, 2023, by Lending to ILS Growth Fund I LP, a Texas limited partnership ("Growth"), recorded May 4, 2023, in the Brazoria Records, as Instrument No. 2023019704; partially transferred by that certain Transfer and Assignment of Lien by Growth to KK Houston Properties Inc., a Texas corporation ("KK"), recorded May 4, 2023, in the Brazoria Records, as Instrument No. 2023019705; modified by that certain Loan Modification Agreement, dated February 5, 2024, by Alvin and Loan Source LLC, a Texas limited liability company ("Loan Source"), recorded February 13, 2024, in the Brazoria Records, as Instrument No. 2024006119; affected by that certain Subordination Agreement, dated May 14, 2024, by and between Alvin, CastleRock Communities LLC, a Delaware limited liability company, KK, Lending and Growth, recorded June 5, 2024, in the Brazoria Records, as Instrument No. 2024024205; and partially transferred by that certain Transfer and Assignment of Lien, dated August 19, 2025, by Growth to ILS Income Fund I LP, a Texas limited partnership ("Income"), recorded August 20, 2025, in the Brazoria Records, as Instrument No. 2025039683.

**JMK5 Arena LLC**

**Note/Guaranty**

3.  That certain Promissory Note Secured by Security Instrument Fixed Rate Interest Only with Balloon, dated May 20, 2024, made by JMK5 Arena LLC, a Texas limited liability company ("Arena") in favor of Lending, in the original principal amount of $5,900,000.00; guaranteed by that certain Personal Guaranty Agreement of Jerome M. Karam, dated May 20, 2024, made by Guarantor in favor of Lending.

**Security Instruments**

4.  That certain Fourth Lien Commercial Deed of Trust, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing, dated May 20, 2024, made by JMK5 Arena LLC, a Texas limited liability company ("Arena") in favor of Lending,

**EXHIBIT A**

recorded May 21, 2024, in the Official Property Records of Galveston County ("Galveston Records"), as Instrument No. 2024022604, in the original principal amount of $5,900,000.00; secured by that certain Assignment of Leases and Rents, dated May 20, 2024, made by Arena in favor of Lending, recorded May 21, 2024, in the Galveston Records, as Instrument No. 2024022605; affected by that certain Subordination Agreement, dated May 31, 2024, by and between Lending and Jet Lending, LLC a Texas limited liability company, recorded June 3, 2024, in the Galveston Records, as Instrument No. 2024024936; transferred by that certain Transfer and Assignment of Lien, dated June 4, 2024, by Lending to DFS Bayside Fund LLC, a Texas limited liability company ("DFS Bayside"), recorded June 20, 2024, in the Galveston Records, as Instrument No. 2024027595; and transferred by that certain Transfer and Assignment of Lien, dated October 30, 2024, by DFS Bayside to Growth, recorded November 1, 2024, in the Galveston Records, as Instrument No. 2024049798.

### JMK5 Falstaff Hotel LLC
**Notes/Guarantees**

5. That certain Interest-Only Fixed Rate Note, dated September 15, 2020, made by JMK5 Falstaff Hotel LLC, a Texas limited liability company ("Falstaff") in favor of Silver Lending LLC, a Texas limited liability company ("Silver"), in the original principal amount of $1,432,169.06; guaranteed by that certain Specific Guaranty Agreement, dated September 15, 2020, made by Guarantor in favor of Silver.

6. That certain Note, dated September 15, 2020, made by Falstaff in favor of Growth (f/k/a ILS Short Term Fund I LP, a Texas limited partnership ("Short")), in the original principal amount of $4,047,640.49; guaranteed by that certain Specific Guaranty Agreement, dated September 15, 2020, made by Guarantor in favor of Growth (f/k/a Short).

7. That certain Note, dated September 15, 2020, made by Falstaff in favor of Lending, in the original principal amount of $8,980,000.00; guaranteed by that certain Specific Guaranty Agreement, dated September 15, 2020, made by Guarantor in favor of Lending.

8. That certain Note, dated March 24, 2022, made by Falstaff in favor of Lending, in the original principal amount of $1,925,000.00; guaranteed by that certain Specific Guaranty Agreement, dated March 24, 2022, made by Guarantor in favor of Lending.

9. That certain Note, dated July 7, 2022, made by Falstaff in favor of Lending, in the original principal amount of $4,600,000.00; guaranteed by that certain Specific Guaranty Agreement, dated July 7, 2022, made by Guarantor in favor of Lending.

**Security Instruments**

10. That certain Deed of Trust, dated September 15, 2020, made by JMK5 Falstaff Hotel LLC, a Texas limited liability company ("Falstaff") in favor of Silver Lending LLC, a Texas limited liability company ("Silver"), recorded September 16, 2020, in the Galveston Records, as Instrument No. 2020057985, in the original principal amount of $1,432,169.06; modified by that certain Loan Modification Agreement, dated October 19, 2020, by and between Falstaff and Loan Source, recorded October 19, 2020, in the

**EXHIBIT A**

Galveston Records, as Instrument No. 2020066767; affected by that certain Forbearance Agreement, dated February 3, 2021, by and between Silver, Growth ((f/k/a ILS Short Term Fund I LP, a Texas limited partnership ("Short")), Lending, Falstaff, JMK5 Managing Member LLC, a Texas limited liability company and Octagon Credit Partners LP, a Delaware limited partnership, recorded February 5, 2021, in the Galveston Records, as Instrument No. 2021009396; collaterally assigned by that certain Collateral Transfer of Note and Lien with Additional Assignment by Secured Party to Newfirst National Bank, dated October 8, 2020, made by Silver in favor of DGE Fund I LP, a Texas limited partnership ("DGE Fund"), recorded April 15, 2021, in the Galveston Records, as Instrument No. 2021027085; modified by that certain Renewal, Extension and Modification Agreement of Collateral Note, dated November 8, 2022, by and between DGE Fund and Silver, recorded January 8, 2024, in the Galveston Records, as Instrument No. 2024001020; modified by that certain Loan Modification Agreement, dated July 7, 2022, by and between Falstaff and Loan Source, recorded July 15, 2022, in the Galveston Records, as Instrument No. 2022047132; modified by that certain Loan Modification Agreement, dated July 21, 2023, by and between Falstaff and Loan Source, recorded July 24, 2023, in the Galveston Records, as Instrument No. 2023034357; modified by that certain Loan Modification Agreement, dated December 1, 2023, by and between Falstaff and Loan Source, recorded December 1, 2023, in the Galveston Records, as Instrument No. 2023056156; modified by that certain Renewal, Extension and Modification Agreement of Collateral Note, dated November 1, 2024, by and between DGE Fund and Silver, recorded November 22, 2024, in the Galveston Records, as Instrument No. 2024053063; modified by that certain Loan Modification Agreement, dated December 1, 2024, by Falstaff and Loan Source, recorded December 18, 2024, in the Galveston Records, as Instrument No. 2024056999; and affected by that certain Appointment of Substitute Trustee, dated October 27, 2025, by DGE Fund, recorded November 10, 2025, in the Galveston Records, as Instrument No. 2025052747.

11. That certain Second Lien Deed of Trust, dated September 15, 2020, made by Falstaff in favor of Growth (f/k/a Short), recorded September 16, 2020, in the Galveston Records, as Instrument No. 2020057997, in the original principal amount of $4,047,640.49; modified by that certain Loan Modification Agreement, dated October 19, 2020, by and between Falstaff and Loan Source, recorded October 19, 2020, in the Galveston Records, as Instrument No. 2020066767; affected by that certain Forbearance Agreement, dated February 3, 2021, by and between Silver, Growth (f/k/a Short), Lending, Falstaff, JMK5 Managing Member LLC, a Texas limited liability company and Octagon Credit Partners LP, a Delaware limited partnership, recorded February 5, 2021, in the Galveston Records, as Instrument No. 2021009396; modified by that certain Loan Modification Agreement, dated July 7, 2022, by and between Falstaff and Loan Source, recorded July 15, 2022, in the Galveston Records, as Instrument No. 2022047132; modified by that certain Loan Modification Agreement, dated July 21, 2023, by and between Falstaff and Loan Source, recorded July 24, 2023, in the Galveston Records, as Instrument No. 2023034357; modified by that certain Loan Modification Agreement, dated December 1, 2023, by and between Falstaff and Loan Source, recorded December 1, 2023, in the Galveston Records, as Instrument No. 2023056156; modified by that certain Loan Modification Agreement, dated December 1, 2024, by Falstaff and Loan Source, recorded December 18, 2024, in the

**EXHIBIT A**

Galveston Records, as Instrument No. 2024056999; and modified by that certain Loan Modification Agreement, dated April 15, 2025, by and between Falstaff and Loan Source, recorded May 1, 2025, in the Galveston Records, as Instrument No. 2025019887.

12. That certain Deed of Trust (Subordinate Financing Third Lien), dated September 15, 2020, made by Falstaff in favor of Lending, recorded September 16, 2020, in the Galveston Records, as Instrument No. 2020058001, in the original principal amount of $8,980,000.00; modified by that certain Loan Modification Agreement, dated October 19, 2020, by and between Falstaff and Loan Source, recorded October 19, 2020, in the Galveston Records, as Instrument No. 2020066767; affected by that certain Forbearance Agreement, dated February 3, 2021, by and between Silver, Growth (f/k/a Short), Lending, Falstaff, JMK5 Managing Member LLC, a Texas limited liability company and Octagon Credit Partners LP, a Delaware limited partnership, recorded February 5, 2021, in the Galveston Records, as Instrument No. 2021009396; modified by that certain Loan Modification Agreement, dated July 7, 2022, by and between Falstaff and Loan Source, recorded July 15, 2022, in the Galveston Records, as Instrument No. 2022047132; partially transferred by that certain Transfer and Assignment of Lien, dated January 1, 2023, by Lending to Growth, ILS RE Capital LLC, a Texas limited liability company ("RE Capital") and Silver, recorded January 13, 2023, in the Galveston Records, as Instrument No. 2023002080; modified by that certain Loan Modification Agreement, dated July 21, 2023, by and between Falstaff and Loan Source, recorded July 24, 2023, in the Galveston Records, as Instrument No. 2023034357; partially transferred by that certain Transfer and Assignment of Lien, dated October 3, 2023, by Silver to Growth, recorded October 4, 2023, in the Galveston Records, as Instrument No. 2023047519; modified by that certain Loan Modification Agreement, dated December 1, 2023, by and between Falstaff and Loan Source, recorded December 1, 2023, in the Galveston Records, as Instrument No. 2023056156; partially transferred by that certain Transfer and Assignment of Lien, dated June 6, 2024, by RE Capital to Growth, recorded June 20, 2024, in the Galveston Records, as Instrument No. 2024027594; modified by that certain Loan Modification Agreement, dated December 1, 2024, by Falstaff and Loan Source, recorded December 18, 2024, in the Galveston Records, as Instrument No. 2024056999; and modified by that certain Loan Modification Agreement, dated April 15, 2025, by and between Falstaff and Loan Source, recorded May 1, 2025, in the Galveston Records, as Instrument No. 2025019887.

13. That certain Deed of Trust, dated March 24, 2022, made by Falstaff in favor of Lending, recorded March 25, 2022, in the Galveston Records, as Instrument No. 2022020538, in the original principal amount of $1,925,000.00; transferred by that certain Transfer and Assignment of Lien, dated April 1, 2022, by Lending to Growth, recorded April 22, 2022, in the Galveston Records, as Instrument No. 2022027270; modified by that certain Loan Modification Agreement, dated July 7, 2022, by and between Falstaff and Loan Source, recorded July 15, 2022, in the Galveston Records, as Instrument No. 2022047132; modified by that certain Loan Modification Agreement, dated July 21, 2023, by and between Falstaff and Loan Source, recorded July 24, 2023, in the Galveston Records, as Instrument No. 2023034357; modified by that certain Loan Modification Agreement, dated December 1, 2023, by and between Falstaff and Loan Source, recorded December 1, 2023, in the Galveston Records, as Instrument No. 2023056156; modified by that certain Loan

**EXHIBIT A**

Modification Agreement, dated December 1, 2024, by Falstaff and Loan Source, recorded December 18, 2024, in the Galveston Records, as Instrument No. 2024056999; and modified by that certain Loan Modification Agreement, dated April 15, 2025, by and between Falstaff and Loan Source, recorded May 1, 2025, in the Galveston Records, as Instrument No. 2025019887.

14. That certain Deed of Trust Subordinate Financing, dated July 7, 2022, made by Falstaff in favor of Lending, recorded July 7, 2022, in the Galveston Records, as Instrument No. 2022045503, in the original principal amount of $4,600,000.00; transferred by that certain Transfer and Assignment of Lien, dated August 1, 2022, by Lending to Growth, recorded August 8, 2022, in the Galveston Records, as Instrument No. 2022052054; modified by that certain Loan Modification Agreement, dated July 21, 2023, by and between Falstaff and Loan Source, recorded July 24, 2023, in the Galveston Records, as Instrument No. 2023034357; modified by that certain Loan Modification Agreement, dated December 1, 2023, by and between Falstaff and Loan Source, recorded December 1, 2023, in the Galveston Records, as Instrument No. 2023056156; modified by that certain Loan Modification Agreement, dated December 1, 2024, by Falstaff and Loan Source, recorded December 18, 2024, in the Galveston Records, as Instrument No. 2024056999; and modified by that certain Loan Modification Agreement, dated April 15, 2025, by and between Falstaff and Loan Source, recorded May 1, 2025, in the Galveston Records, as Instrument No. 2025019887.

**JMK5 Gemini A LLC**

**Notes/Guarantees**

15. That certain Interest Only Fixed Period Promissory Note Secured by Security Instrument, dated March 2, 2022, made by JMK5 Gemini A LLC, a Texas limited liability company ("Gemini A") in favor of Lending, in the original principal amount of $1,961,680.00; guaranteed by that certain Personal Guaranty Agreement, dated March 2, 2022, made by Guarantor in favor of Lending.

16. That certain Subordinate Financing Second Lien Interest Only Fixed Period Promissory Note Secured by Security Instrument, dated March 2, 2022, made by Gemini A, in favor of Lending, in the original principal amount of $4,068,990.04; guaranteed by that certain Personal Guaranty Agreement, dated March 2, 2022, made by Guarantor in favor of Lending.

17. That certain Subordinate Financing Third Lien Interest Only Fixed Period Promissory Note Secured by Security Instrument, dated March 2, 2022, made by Gemini A, in favor of Lending, in the original principal amount of $1,719,329.96; guaranteed by that certain Personal Guaranty Agreement, dated March 2, 2022, made by Guarantor in favor of Lending.

18. That certain Promissory Note Secured by Security Instrument Fixed Rate Interest Only with Balloon, dated November 8, 2022, made by Gemini A, in favor of Lending, in the original principal amount of $2,100,000.00; guaranteed by that certain Personal Guaranty

**EXHIBIT A**

Agreement of Jerome M. Karam, dated November 8, 2022, made by Guarantor in favor of Lending.

19. That certain Promissory Note Secured by Security Instrument Fixed Rate Interest only with Balloon, dated January 10, 2023, made by Gemini A, in favor of Lending, in the original principal amount of $2,385,000.00; guaranteed by that certain Personal Guaranty Agreement of Jerome M. Karam, dated January 10, 2023, made by Guarantor in favor of Lending.

20. That certain Promissory Note Secured by Security Instrument Fixed Rate Interest only with Balloon, dated December 1, 2023, made by Gemini A, in favor of Lending, in the original principal amount of $2,100,000.00; guaranteed by that certain Personal Guaranty Agreement of Jerome M. Karam, dated December 1, 2023, made by Guarantor in favor of Lending.

21. That certain Promissory Note Secured by Security Instrument Fixed Rate Interest only with Balloon, dated February 9, 2024, made by Gemini A, in favor of Lending, in the original principal amount of $2,605,000.00; guaranteed by that certain Personal Guaranty Agreement of Jerome M. Karam, dated February 9, 2024, made by Guarantor in favor of Lending.

**Security Instruments**

22. That certain Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing, dated March 2, 2022, made by Gemini A, LLC, a Teas limited liability company ("Gemini A"), in favor of Lending in the original principal amount of $1,961,680.00, recorded March 4, 2022, in the Official Public Records of Harris County, Texas ("Harris Records"), as Instrument No. RP-2022-117528; transferred by that certain Transfer and Assignment of Lien, dated March 11, 2022, from Lending to Growth, recorded May 10, 2022, in the Harris Records, as Instrument No. RP-2022-246455; collaterally assigned by that certain Collateral Transfer of Lien with Additional Assignment by Secured Party to Newfirst National Bank, dated March 11, 2022, made by Growth in favor of DGE Fund recorded May 11, 2022, in the Harris Records, as Instrument No. RP-2022-248070; modified by that certain Loan Modification Agreement, dated November 8, 2022, by and between Gemini A, Lending and Loan Source, recorded November 15, 2022, in the Harris Records, as Instrument No. RP-2022-550321; modified by that certain Loan Modification Agreement, dated July 21, 2023, by and between Gemini A, Lending and Loan Source, recorded July 24, 2023, in the Harris Records, as Instrument No. RP-2023-276189; modified by that certain Renewal, Extension and Modification Agreement of Collateral Note, dated April 1, 2024, by and between Growth, DGE Fund and NewFirst National Bank ("NewFirst"), recorded on June 18, 2024, in the Harris Records, as Instrument No. RP-2024-221559; modified by that certain Renewal, Extension and Modification Agreement of Collateral Note, dated April 1, 2024, by and between Growth, DGE Fund, and NewFirst, recorded on June 20, 2024, in the Harris Records, as Instrument No. RP-2024-222910; modified by that certain Loan Modification Agreement, dated December 12, 2024, by and between Gemini A, Lending and Loan Source, recorded December 18, 2024, in the Harris Records as Instrument No. RP-2024-471244; affected by that certain Notice of Substitute Trustee's

**EXHIBIT A**

Sale, dated September 12, 2025, by Loan Source, recorded September 12, 2025, in the Harris Records, as Instrument No. RP-2025-363973; and affected by that certain Notice of Substitute Trustee's Sale, dated October 28, 2025, by Caleb E. McAuslan, as Substitute Trustee, recorded November 7, 2025, in the Harris Records, as Instrument No. RP-2025-443761.

23. That certain Second Lien Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing, dated March 2, 2022, made by Gemini A in favor of Lending, recorded March 4, 2022, in the Harris Records, as Instrument No. RP-2022-117529 in the original principal amount of $4,068,990.04; transferred by that certain Transfer and Assignment of Lien, dated May 1, 2022, by Lending to Growth, recorded May 6, 2022, in the Harris Records, as Instrument No. RP-2022-241093; modified by that certain Loan Modification Agreement, dated November 8, 2022, by and between Gemini A, Lending and Loan Source, recorded November 15, 2022, in the Harris Records, as Instrument No. RP-2022-550321; modified by that certain Loan Modification Agreement, dated July 21, 2023, by and between Gemini A and Loan Source, recorded July 24, 2023, in the Harris Records, as Instrument No. RP-2023-276189; modified by that certain Loan Modification Agreement, dated February 9, 2024, by and between Gemini A and Loan Source, recorded February 13, 2024, in the Harris Records, as Instrument No. RP-2024-49389; modified by that certain Loan Modification Agreement, dated December 12, 2024, by and between Gemini A and Loan Source, recorded December 18, 2024, in the Harris Records as Instrument No. RP-2024-471244; transferred by that certain Transfer and Assignment of Lien, by Growth to ILS Income Fund I LP, a Texas limited partnership ("Income"), recorded January 2, 2025, in the Harris Records, as Instrument No. RP-2025-1764; partially transferred by that certain Transfer and Assignment of Lien, dated December 23, 2024, by Income to ILS RE Capital LLC, a Texas limited liability company ("RE Capital"), recorded January 6, 2025, in the Harris Records, as Instrument No. RP-2025-3870; partially transferred by that certain Transfer and Assignment of Lien, dated January 6, 2025, by Income to ILS RE Capital II LLC, a Texas limited liability company ("Capital II"), ILS RE Capital III LLC, a Texas limited liability company ("Capital III"), and ILS RE Capital IV LLC, a Texas limited liability company ("Capital IV"), recorded January 9, 2025, in the Harris Records, as Instrument No. RP-2025-8864; partially transferred by that certain Transfer and Assignment of Lien, dated March 6, 2025, by Capital II to DFS Cornerstone I LLC, a Texas limited liability company ("DFS Corner"), recorded March 10. 2025, in the Harris Records, as Instrument No. RP-2025-84224; partially transferred by that certain Transfer and Assignment of Lien, dated August 19, 2025, by Income to Growth, recorded August 20, 2025, in the Harris Records, as Instrument No. RP-2025-328419.

24. That certain Third Lien Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing, dated March 2, 2022, made by Gemini A in favor of Lending, in the original principal amount of $1,719,329.96, recorded on March 4, 2022, in the Harris Records, as Instrument No. RP-2022-117530; transferred by that certain Transfer and Assignment of Lien, dated April 1, 2022, by Lending to Growth, recorded May 10, 2022, in the Harris Records, as Instrument No. RP-2022-246476; modified by that certain Loan Modification Agreement, dated November 8, 2022, by and between Gemini A and Loan Source, recorded November 15, 2022, in the Harris Records, as Instrument No. RP-2022-550321;

**EXHIBIT A**

modified by that certain Loan Modification Agreement, dated July 21, 2023, by and between Gemini A and Loan Source, recorded July 24, 2023, in the Harris Records, as Instrument No. RP-2023-276189; modified by that certain Loan Modification Agreement, dated February 9, 2024, by and between Gemini A and Loan Source, recorded February 13, 2024, in the Harris Records, as Instrument No. RP-2024-49389; modified by that certain Loan Modification Agreement, dated December 12, 2024, by and between Gemini A and Loan Source, recorded December 18, 2024, in the Harris Records as Instrument No. RP-2024-471244; transferred by that certain Transfer and Assignment of Lien, dated February 3, 2025, by Growth to Income, recorded February 12, 2025, in the Harris Records, as Instrument No. RP-2025-49756; and transferred to by that certain Transfer and Assignment of Lien, dated August 19, 2025, by Income to Growth, recorded August 20, 2025, in the Harris Records, as Instrument No. RP-2025-328427.

25. That certain Fourth Lien Commercial Deed of Trust, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing, dated November 8, 2022, made by Gemini A in favor of Lending, recorded November 10, 2022, in the Harris Records, as Instrument No. RP-2022-546097, in the original principal amount of $2,100,000.00; secured by that certain Assignment of Leases and Rents, dated November 8, 2022, made by Gemini A in favor of Lending, recorded November 10, 2022, in the Harris Records, as Instrument No. RP-2022-546098; transferred by that certain Transfer and Assignment of Lien, dated December 1, 2022, by Lending to Growth, recorded December 6, 2022, in the Harris Records, as Instrument No. RP-2022-576996; modified by that certain Loan Modification Agreement, dated July 21, 2023, by and between Gemini A, Lending and Loan Source, recorded July 24, 2023, in the Harris Records, as Instrument No. RP-2023-276189; modified by that certain Loan Modification Agreement, dated February 9, 2024, by and between Gemini A and Loan Source, recorded February 13, 2024, in the Harris Records, as Instrument No. RP-2024-49389; modified by that certain Loan Modification Agreement, dated December 12, 2024, by and between Gemini A and Loan Source, recorded December 18, 2024, in the Harris Records as Instrument No. RP-2024-471244; transferred by that certain Transfer and Assignment of Lien, dated October 30, 2024, by Growth to DFS Bayside Fund LLC, a Texas limited liability company ("DFS Bayside"), recorded November 1, 2024, in the Harris Records, as Instrument No. RP-2024-407740; and transferred by that certain Transfer and Assignment of Lien, dated December 16, 2024, by DFS Bayside to Growth, recorded January 2, 2025, in the Harris Records, as Instrument No. RP-2025-1736.

26. That certain Fifth Lien Commercial Deed of Trust, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing, dated January 10, 2023, made by Gemini A in favor of Lending, recorded January 12, 2023, in the Harris Records, as Instrument No. RP-2023-12591, in the original principal amount of $2,385,000.00; transferred by that certain Transfer and Assignment of Lien, dated March 1, 2023, by Lending to Growth, recorded March 7, 2023, in the Harris Records, as Instrument No. RP-2023-78984; modified by that certain Loan Modification Agreement, dated July 21, 2023, by and between Gemini A and Loan Source, recorded July 24, 2023, in the Harris Records, as Instrument No. RP-2023-276189; partially transferred by that certain Transfer and Assignment of Lien, dated February 1, 2024, by Growth to Income, recorded February 7,

**EXHIBIT A**

2024, in the Harris Records, as Instrument No. RP-2024-42644; modified by that certain Loan Modification Agreement, dated February 9, 2024, by Gemini A and Loan Source, recorded February 13, 2024, in the Harris Records, as Instrument No. RP-2024-49389; modified by that certain Loan Modification Agreement, dated December 12, 2024, by and between Gemini A and Loan Source, recorded December 18, 2024, in the Harris Records as Instrument No. RP-2024-471244; and transferred by that certain Transfer and Assignment of Lien, dated August 19, 2025, by Income to Growth, recorded August 20, 2025, in the Harris Records, as Instrument No. RP-2025-328438.

27. That certain Sixth Lien Commercial Deed of Trust, Security Agreement, Assignment of Rents, Financing Statement and Fixture Filing, dated December 1, 2023, made by Gemini A in favor of Lending, recorded on December 1, 2023, in the Real Property Records of Harris County, Texas, as Instrument No. RP-2023-454186, in the original principal amount of $2,100,000.00; partially transferred by that certain Transfer and Assignment of Lien, dated December 7, 2023, by Lending to Growth, recorded December 29, 2023, in the Harris Records, as Instrument No. RP-2023-489173; partially transferred by that certain Transfer and Assignment of Lien, dated January 1, 2024, by Lending to Growth, recorded January 5, 2024, in the Harris Records, as Instrument No. RP-2024-5617; and modified by that certain Loan Modification Agreement, dated December 12, 2024, by and between Gemini A, Lending and Loan Source, recorded December 18, 2024, in the Harris Records as Instrument No. RP-2024-471244.

28. That certain Seventh Lien Commercial Deed of Trust, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing, dated February 9, 2024, made by Gemini A in favor of Lending, recorded on February 12, 2024, in the Harris Records, as Instrument No. RP-2024-48373, in the original principal amount of $2,605,000.00; partially transferred by that certain Transfer and Assignment of Lien, dated February 14, 2024, by Lending to Growth, recorded February 21, 2024, in the Harris Records, as Instrument No. RP-2024-60270; partially transferred by that certain Transfer and Assignment of Lien, dated March 1, 2024, by Lending to Growth, recorded March 5, 2024, in the Harris Records, as Instrument No. RP-2024-77595; partially transferred by that certain Transfer and Assignment of Lien, dated March 1, 2024, by Growth to Income, recorded March 5, 2024, in the Harris Records, as Instrument No. RP-2024-77755; partially transferred by that certain Transfer and Assignment of Lien, dated February 16, 2024, by Lending to Growth, recorded March 6, 2024, in the Harris Records, as Instrument No. RP-2024-77980; and transferred by that certain Transfer and Assignment of Lien, dated August 19, 2025, by Income to Growth, recorded August 20, 2025, in the Harris Records, as Instrument No. RP-2025-328434.

**JMK5 Gemini B LLC**

**Notes/Guarantees**

29. That certain Interest Only Fixed Period Promissory Note Secured by Security Instrument, dated March 17, 2022, made by JMK5 Gemini B LLC, a Texas limited liability company ("Gemini B") in favor of Lending, in the original principal amount of $3,000,000.00; guaranteed by that certain Personal Guaranty Agreement, dated March 17, 2022, made by Guarantor in favor of Lending.

**EXHIBIT A**

30. That certain Interest Only Fixed Period Promissory Note Secured by Security Instrument, dated March 17, 2022, made by Gemini B in favor of Lending, in the original principal amount of $1,000,000.00; guaranteed by that certain Personal Guaranty Agreement, dated March 17, 2022, made by Guarantor in favor of Lending.

31. That certain Interest Only Fixed Period Promissory Note Secured by Security Instrument, dated March 17, 2022, made by Gemini B in favor of Lending, in the original principal amount of $2,000,000.00; guaranteed by that certain Personal Guaranty Agreement, dated March 17, 2022, made by Guarantor in favor of Lending.

32. That certain Promissory Note Secured by Security Instrument Fixed Rate Interest only with Balloon, dated November 8, 2022, made by Gemini B in favor of Lending, in the original principal amount of $1,615,000.00; guaranteed by that certain Personal Guaranty Agreement of Jerome M. Karam, dated November 8, 2022, made by Guarantor in favor of Lending.

33. That certain Promissory Note Secured by Security Instrument Fixed Rate Interest only with Balloon, dated February 9, 2024, made by Gemini B in favor of Lending, in the original principal amount of $2,490,000.00; guaranteed by that certain Personal Guaranty Agreement of Jerome M. Karam, dated February 9, 2024, made by Guarantor in favor of Lending.

**Security Instruments**

34. That certain First Lien Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing, dated March 17, 2022, made by JMK5 Gemini B LLC, a Texas limited liability company ("Gemini B") in favor of Lending, recorded March 21, 2022, in the Harris Records, as Instrument No. RP-2022-146728, in the original principal amount of $3,000,000.00; transferred by that certain Transfer and Assignment of Lien, dated April 1, 2022, by Lending to Growth, recorded April 7, 2022, in the Harris Records, as Instrument No. RP-2022-184023; collaterally assigned by that certain Collateral Assignment of Lien, dated April 1, 2022, by Growth to DGE Fund, NewFirst National Bank, Elliott W. Kruppa and Ramona Krenek, recorded April 7, 2022, in the Harris Records, as Instrument No. RP-2022-185132; modified by that certain Loan Modification Agreement, dated November 8, 2022, by and between Gemini B and Loan Source, recorded November 15, 2022, in the Harris Records, as Instrument No. RP-2022-550322; modified by that certain Loan Modification Agreement, dated July 21, 2023, by and between Gemini B and Loan Source, recorded July 24, 2023, in the Harris Records, as Instrument No. RP-2023-276190; modified by that certain Loan Modification Agreement, dated February 9, 2024, by and between Gemini B and Loan Source, recorded February 13, 2024, in the Harris Records, as Instrument No. RP-2024-49390; modified by that certain Renewal, Extension and Modification Agreement of Collateral Note, dated April 1, 2024, by and between Growth, DGE Fund, NewFirst National Bank, Elliott W. Kruppa and Ramona Krenek, recorded June 20, 2024, in the Harris Records, as Instrument No. RP-2024-223994; modified by that certain Loan Modification Agreement, dated December 12, 2024, by and between Gemini B and Loan Source, recorded December 18, 2024, in the Harris Records, as Instrument No.

**EXHIBIT A**

RP-2024-471255; and affected by that certain Notice of Substitute Trustee's Sale, dated September 12, 2025, by Loan Source, recorded September 12, 2025, in the Harris Records, as Instrument No. RP-2025-363961.

35. That certain Second Lien Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing, dated March 17, 2022, made by Gemini B in favor of Lending, recorded March 21, 2022, in the Harris Records, as Instrument No. RP-2022-146729, in the original principal amount of $1,000,000.00; modified by that certain Loan Modification Agreement, dated July 21, 2023, by and between Gemini B and Loan Source, recorded July 24, 2023, in the Harris Records, as Instrument No. RP-2023-276190; modified by that certain Loan Modification Agreement, dated February 9, 2024, by and between Gemini B and Loan Source, recorded February 13, 2024, in the Harris Records, as Instrument No. RP-2024-49390; partially transferred by that certain Transfer and Assignment of Lien, dated October 30, 2024, by Growth to DFS Bayside, recorded November 1, 2024, in the Harris Records, as Instrument No. RP-2024-407763; partially transferred by that certain Transfer and Assignment of Lien, dated December 11, 2024, by Growth to RE Capital, Capital II, Capital III and Capital IV, recorded December 16, 2024, in the Harris Records, as Instrument No. RP-2024-466842; modified by that certain Loan Modification Agreement, dated December 12, 2024, by and between Gemini B and Loan Source, recorded December 18, 2024, in the Harris Records, as Instrument No. RP-2024-471255; partially transferred by that certain Transfer and Assignment of Lien, dated December 16, 2024, by DFS Bayside to Income, recorded January 2, 2025, in the Harris Records, as Instrument No. RP-2025-1740; and partially transferred by that certain Transfer and Assignment of Lien, dated August 19, 2025, by Income to Growth, recorded August 20, 2025, in the Harris Records, as Instrument No. RP-2025-328444.

36. That certain Fourth Lien Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing, dated March 17, 2022, made by Gemini B in favor of Lending, recorded March 21, 2022, in the Harris Records, as Instrument No. RP-2022-146731, in the original principal amount of $2,000,000.00; partially transferred by that certain Transfer and Assignment of Lien, dated April 1, 2022, by Lending to Income, Silver, ILS Real Estate Lending LLC, a Texas limited liability company ("ILS Real") and RE Capital, recorded April 12, 2022, in the Harris Records, as Instrument No. RP-2022-192928; modified by that certain Loan Modification Agreement, dated July 21, 2023, by and between Gemini B and Loan Source, recorded July 24, 2023, in the Harris Records, as Instrument No. RP-2023-276190; transferred by that certain Transfer and Assignment of Lien, dated December 1, 2023, by Silver to Growth, recorded January 3, 2024, in the Harris Records, as Instrument No. RP-2024-3454; modified by that certain Loan Modification Agreement, dated February 9, 2024, by and between Gemini B and Loan Source, recorded February 13, 2024, in the Harris Records, as Instrument No. RP-2024-49390; transferred by that certain Transfer and Assignment of Lien, dated September 1, 2023, by ILS Real to Growth, recorded February 22, 2024, in the Harris Records, as Instrument No. RP-2024-61659; transferred by that certain Transfer and Assignment of Lien, dated September 6, 2023, by Income to Growth, recorded February 22, 2024, in the Harris Records, as Instrument No. RP-2024-61660; transferred by that certain Transfer and Assignment of Lien, dated October 1, 2023, by RE Capital to Growth, recorded February 22, 2024, in the Harris

**EXHIBIT A**

Records, as Instrument No. RP-2024-61661; transferred by that certain Transfer and Assignment of Lien, dated October 30, 2024, by Growth to DFS Bayside, recorded November 4, 2024, in the Harris Records, as Instrument No. RP-2024-409683; modified by that certain Loan Modification Agreement, dated December 12, 2024, by and between Gemini B and Loan Source, recorded December 18, 2024, in the Harris Records, as Instrument No. RP-2024-471255; and transferred by that certain Transfer and Assignment of Lien, dated December 17, 2024, by DFS Bayside to Growth, recorded January 2, 2025, in the Harris Records, as Instrument No. RP-2025-1765.

37. That certain Fifth Lien Commercial Deed of Trust, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing, dated November 8, 2022, made by Gemini B in favor of Lending, recorded November 10, 2022, in the Harris Records, as Instrument No. RP-2022-546080, in the original principal amount of $1,615,000.00; secured by that certain Assignment of Leases and Rents, dated November 8, 2022, made by Gemini B in favor of Lending, recorded November 10, 2022, in the Harris Records, as Instrument No. RP-2022-546081; transferred by that certain Transfer and Assignment of Lien, dated December 1, 2022, by Lending to Growth, recorded December 6, 2022, in the Harris Records, as Instrument No. RP-2022-576969; transferred by that certain Transfer and Assignment of Lien, dated December 1, 2022, by Growth to RE Capital, recorded December 8, 2022, in the Harris Records, as Instrument No. RP-2022-579426; modified by that certain Loan Modification Agreement, dated July 21, 2023, by and between Gemini B and Loan Source, recorded July 24, 2023, in the Harris Records, as Instrument No. RP-2023-276190; modified by that certain Loan Modification Agreement, dated February 9, 2024, by and between Gemini B and Loan Source, recorded February 13, 2024, in the Harris Records, as Instrument No. RP-2024-49390; transferred by that certain Transfer and Assignment of Lien, dated June 20, 2024, by RE Capital to Growth, recorded August 13, 2024, in the Harris Records, as Instrument No. RP-2024-293751; transferred by that certain Transfer and Assignment of Lien, dated October 30, 2024, by Growth to DFS Bayside, recorded November 1, 2024, in the Harris Records, as Instrument No. RP-2024-407751; modified by that certain Loan Modification Agreement, dated December 12, 2024, by and between Gemini B and Loan Source, recorded December 18, 2024, in the Harris Records, as Instrument No. RP-2024-471255; transferred by that certain Transfer and Assignment of Lien, dated December 16, 2024, by DFS Bayside to Income, recorded January 2, 2025, in the Harris Records, as Instrument No. RP-2025-1763; and transferred by that certain Transfer and Assignment of Lien, dated August 19, 2025, by Income to Growth, recorded August 20, 2025, in the Harris Records, as Instrument No. RP-2025-328455.

38. That certain Eighth Lien Commercial Deed of Trust, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing, dated February 9, 2024, made by Gemini B in favor of Lending, recorded February 12, 2024, in the Harris Records, as Instrument No. RP-2024-48374, in the original principal amount of $2,490,000.00; partially transferred by that certain Transfer and Assignment of Lien, dated March 1, 2024, by Lending to Growth, recorded March 5, 2024, in the Harris Records, as Instrument No. RP-2024-77591; partially transferred by that certain Transfer and Assignment of Lien, dated April 1, 2024, by Lending to Growth, recorded April 2, 2024, in the Harris Records, as Instrument No. RP-2024-115999; and modified by that certain Loan Modification

**EXHIBIT A**

Agreement, dated December 12, 2024, by and between Gemini B and Loan Source, recorded December 18, 2024, in the Harris Records, as Instrument No. RP-2024-471255.

## JMK5 Gemini D LLC

**Notes/Guarantees**

39. That certain Interest Only Fixed Period Promissory Note Secured by Security Instrument, dated April 27, 2022, made by JMK5 Gemini D LLC, a Texas limited liability company ("Gemini D") in favor of Lending, in the original principal amount of $2,000,000.00; guaranteed by that certain Personal Guaranty Agreement, dated April 27, 2022, made by Guarantor in favor of Lending.

40. That certain Interest Only Fixed Period Promissory Note Secured by Security Instrument, dated April 27, 2022, made by Gemini D in favor of Lending, in the original principal amount of $1,000,000.00; guaranteed by that certain Personal Guaranty Agreement, dated April 27, 2022, made by Guarantor in favor of Lending.

41. That certain Interest Only Fixed Period Promissory Note Secured by Security Instrument, dated April 27, 2022, made by Gemini D in favor of Lending, in the original principal amount of $2,500,000.00; guaranteed by that certain Personal Guaranty Agreement, dated April 27, 2022, made by Guarantor in favor of Lending.

42. That certain Interest Only Fixed Period Promissory Note Secured by Security Instrument, dated April 27, 2022, made by Gemini D in favor of Lending, in the original principal amount of $3,660,000.00; guaranteed by that certain Personal Guaranty Agreement, dated April 27, 2022, made by Guarantor in favor of Lending.

43. That certain Promissory Note Secured by Security Instrument Fixed Rate Interest Only with Balloon, dated November 8, 2022, made by Gemini D in favor of Lending, in the original principal amount of $3,800,000.00; guaranteed by that certain Personal Guaranty Agreement of Jerome M. Karam, dated November 8, 2022, made by Guarantor in favor of Lending.

**Security Instruments**

44. That certain First Lien Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing, dated April 27, 2022, by JMK5 Gemini D LLC, a Texas limited liability company ("Gemini D") in favor of Lending, recorded April 28, 2022, in the Harris Records, as Instrument No. RP-2022-222900, in the original principal amount of $2,000,000.00; transferred by that certain Transfer and Assignment of Lien dated May 1, 2022, by Lending to Growth, recorded May 24, 2022, in the Harris Records, as Instrument No. RP-2022-271938; modified by that certain Loan Modification Agreement, dated July 21, 2023, by Gemini D and Loan Source, recorded July 24, 2023, in the Harris Records, as Instrument No. RP-2023-276191; partially transferred by that certain Transfer and Assignment of Lien, dated November 1, 2023, by Growth to Ramona Krenek, recorded December 12, 2023, in the Harris Records, as Instrument No. RP-2023-466577; modified by that certain Loan Modification Agreement, dated February 9, 2024, by Gemini D and Loan Source, recorded February 13, 2024, in the Harris Records, as Instrument No. RP-

**EXHIBIT A**

2024-49391; modified by that certain Loan Modification Agreement, dated December 12, 2024, by Gemini D and Loan Source, recorded December 18, 2024, in the Harris Records, as Instrument No. RP-2024-471252; partially transferred by that certain Transfer and Assignment of Lien, dated January 15, 2025, by Growth to KJT Memorial Foundation ("KJT"), recorded January 27, 2025, in the Harris Records, as Instrument No. RP-2025-27425; partially transferred by that certain Transfer and Assignment of Lien, dated February 18, 2025, by Growth to KK, recorded February 18, 2025, in the Harris Records, as Instrument No. RP-2025-56787; partially transferred by that certain Transfer and Assignment of Lien, dated August 19, 2025 by Growth to Income, recorded August 20, 2025, in the Harris Records, as Instrument No. RP-2025-328264.

45. That certain Second Lien Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing, dated April 27, 2022, by Gemini D in favor of Lending, recorded April 28, 2022, in the Harris Records, as Instrument No. RP-2022-222901, in the original principal amount of $1,000,000.00; transferred by that certain Transfer and Assignment of Lien, dated June 1, 2022, by Lending to Income, recorded June 10, 2022, in the Harris Records, as Instrument No. RP-2022-304078; modified by that certain Loan Modification Agreement, dated July 21, 2023, by Gemini D and Loan Source, recorded July 24, 2023, in the Harris Records, as Instrument No. RP-2023-276191; modified by that certain Loan Modification Agreement, dated February 9, 2024, by Gemini D and Loan Source, recorded February 13, 2024, in the Harris Records, as Instrument No. RP-2024-49391; and transferred by that certain Transfer and Assignment of Lien, dated October 1, 2023, by Income to Growth, recorded September 10, 2024, in the Harris Records, as Instrument No. RP-2024-333243.

46. That certain Third Lien Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing, dated April 27, 2022, by Gemini D in favor of Lending, recorded April 28, 2022, in the Harris Records, as Instrument No. RP-2022-222902, in the original principal amount of $2,500,000.00; transferred by that certain Transfer and Assignment of Lien, dated June 1, 2022, by Lending to Income, recorded June 10, 2022, in the Harris Records, as Instrument No. RP-2022-303852; modified by that certain Loan Modification Agreement, dated July 21, 2023, by Gemini D and Loan Source, recorded July 24, 2023, in the Harris Records, as Instrument No. RP-2023-276191; transferred by that certain Transfer and Assignment of Lien, dated February 1, 2024, by Income to Growth, recorded February 5, 2024, in the Harris Records, as Instrument No. RP-2024-40637; and modified by that certain Loan Modification Agreement, dated February 9, 2024, by Gemini D and Loan Source, recorded February 13, 2024, in the Harris Records, as Instrument No. RP-2024-49391.

47. That certain Fourth Lien Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing, dated April 27, 2022, by Gemini D in favor of Lending, recorded April 28, 2022, in the Harris Records, as Instrument No. RP-2022-222903, in the original principal amount of $3,660,000.00; transferred by that certain Transfer and Assignment of Lien, dated June 1, 2022, by Lending to Growth, recorded June 10, 2022, in the Harris Records, as Instrument No. RP-2022-303865; modified by that certain Loan Modification Agreement, dated July 21, 2023, by Gemini D and Loan Source, recorded July 24, 2023,

**EXHIBIT A**

in the Harris Records, as Instrument No. RP-2023-276191; and modified by that certain Loan Modification Agreement, dated February 9, 2024, by Gemini D and Loan Source, recorded February 13, 2024, in the Harris Records, as Instrument No. RP-2024-49391.

48. That certain Fifth Lien Commercial Deed of Trust, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing, dated November 8, 2022, by Gemini D in favor of Lending, recorded November 10, 2022, in the Harris Records, as Instrument No. RP-2022-546046, in the original principal amount of $3,800,000.00; secured by that certain Assignment of Leases and Rents, dated November 8, 2022, made by Gemini D in favor of Lending, recorded November 10, 2022, in the Harris Records, as Instrument No. RP-2022-546047; transferred by that certain Transfer and Assignment of Lien, dated December 1, 2022, by Lending to Growth, recorded December 8, 2022, in the Harris Records, as Instrument No. RP-2022-576999; transferred by that certain Transfer and Assignment of Lien, dated December 1, 2022, by Growth to Income, recorded December 6, 2022, in the Harris Records, as Instrument No. RP-2022-579440; modified by that certain Loan Modification Agreement, dated July 21, 2023, by Gemini D and Loan Source, recorded July 24, 2023, in the Harris Records, as Instrument No. RP-2023-276191; modified by that certain Loan Modification Agreement, dated February 9, 2024, by Gemini D and Loan Source, recorded February 13, 2024, in the Harris Records, as Instrument No. RP-2024-49391; and transferred by that certain Transfer and Assignment of Lien, dated August 19, 2025, by Income to Growth, recorded August 20, 2025, in the Harris Records, as Instrument No. RP-2025-328248.

## JMK5 Marina LLC

**Note/Guaranty**

49. That certain Promissory Note Secured by Security Instrument Fixed Rate Interest with only Balloon, dated May 5, 2023, made by JMK5 Marina LLC, a Texas limited liability company ("Marina") in favor of Lending, in the original principal amount of $1,650,000.00; guaranteed by that certain Personal Guaranty Agreement of Jerome M. Karam, dated May 5, 2023, made by Guarantor in favor of Lending.

**Security Instruments**

50. That certain Second Lien Commercial Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated May 5, 2023, by JMK5 Marina LLC, a Texas limited liability company ("Marina") in favor of Lending, recorded May 5, 2023, in the Galveston Records, as Instrument No. 2023020433, in the original principal amount of $1,650,000.00; secured by that certain Assignment of Leases and Rents, dated May 5, 2023, made by Marina in favor of Lending, recorded May 5, 2023, in the Galveston Records, as Instrument No. 2023020434; transferred by that certain Transfer and Assignment of Lien, dated June 1, 2023, by Lending to Growth, recorded June 6, 2023, in the Galveston Records, as Instrument No. 2023025809; modified by that certain Loan Modification Agreement, dated July 31, 2024, by and between Marina and Loan Source, recorded July 31, 2024, in the Galveston Records, as Instrument No. 2024034429; and transferred by that certain Transfer and Assignment of Lien, dated August 19, 2025, by Growth to Income, recorded August 20, 2025, in the Galveston Records, as Instrument No. 2025038973.

**EXHIBIT A**

**JMK5 Racing LLC**

**Note/Guaranty**

51. That certain Promissory Note Secured by Security Instrument Fixed Rate Interest with only Balloon, dated September 28, 2023, made by JMK5 Racing LLC, a Texas limited liability company ("Racing") in favor of Lending, in the original principal amount of $6,500,000.00; guaranteed by that certain Personal Guaranty Agreement of Jerome M. Karam, dated September 28, 2023, made by Guarantor in favor of Lending.

**Security Instruments**

52. That certain Fifth Lien Commercial Deed of Trust, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing, dated September 28, 2023, made by JMK5 Racing LLC, a Texas limited liability company ("Racing") in favor of Lending, recorded September 29, 2023, in the Galveston Records, as Instrument No. 2023046492, in the original principal amount of $6,500,000.00; secured by that certain Assignment of Leases and Rents, dated September 28, 2023, made by Racing in favor of Lending, recorded September 29, 2023, in the Galveston Records, as Instrument No. 2023046493; partially transferred by that certain Transfer and Assignment of Lien, dated October 25, 2023, by Lending to Growth, recorded January 8, 2024, in the Galveston Records, as Instrument No. 2024000936; partially transferred by that certain Transfer and Assignment of Lien, dated October 25, 2023, by Growth to KK, recorded January 8, 2024, in the Galveston Records, as Instrument No. 2024000937; partially transferred by that certain Transfer and Assignment of Lien, dated January 1, 2024, by Lending to Growth; recorded January 8, 2024, in the Galveston Records, as Instrument No. 2024000938; partially transferred by that certain Transfer and Assignment of Lien, dated February 1, 2024, by Lending to Growth, recorded February 7, 2024, in the Galveston Records, as Instrument No. 2024005205; partially transferred by that certain Transfer and Assignment of Lien, dated April 18, 2024, by Lending to Growth, recorded April 23, 2024, in the Galveston Records, as Instrument No. 2024017662; and modified by that certain Loan Modification Agreement, dated July 31, 2024, by and between Racing and Loan Source, recorded July 31, 2024, in the Galveston Records, as Instrument No. 2024034431.

**JMK5 Shreveport LLC**

**Note/Guaranty**

53. That certain Interest-Only Period Fixed Rate Note, dated June 1, 2022, made by JMK5 Shreveport LLC, a Texas limited liability company ("Shreveport") in favor of Lending, in the original principal amount of $2,115,000.00; guaranteed by that certain Specific Guaranty Agreement, dated June 1, 2022, made by Guarantor in favor of Lending.

**Security Instruments**

54. That certain Mortgage, dated June 1, 2022, made by JMK5 Shreveport LLC, a Texas limited liability company ("Shreveport") in favor of Lending, recorded June 8, 2022, in the Mortgage Records of Caddo Parish, Louisiana ("Caddo Records"), as Instrument No. 2888670 in the original principal amount of $2,115,000.00; transferred by that certain Transfer and Assignment of Lien, dated June 3, 2022, by Lending to Growth, recorded July 25, 2022, in the Caddo Records, as Instrument No. 2896021; modified by that certain Loan

**EXHIBIT A**

Modification Agreement, dated February 12, 2024, by and between Shreveport and Loan Source, recorded February 21, 2024, in the Caddo Records, as Instrument No. 2958397; modified by that certain Loan Modification Agreement, dated July 31, 2024, by and between Shreveport and Loan Source, recorded August 5, 2024, in the Caddo Records, as Instrument No. 2978605.

**JMK5 Sand Springs LLC**

**Notes/Guarantees**

55. That certain Note, dated October 21, 2019, made by JMK5 Sand Springs LLC, a Texas limited liability company ("Springs") in favor of Lending, in the original principal amount of $3,200,000.00; guaranteed by that certain Specific Guaranty Agreement, dated October 21, 2019, made by Guarantor in favor of Lending.

56. That certain Note, dated April 9, 2020, made by Springs in favor of Lending, in the original principal amount of $5,200,000.00; guaranteed by that certain Specific Guaranty Agreement, dated April 9, 2020, made by Guarantor in favor of Lending.

57. That certain Note (Subordinate Financing – 3rd), dated November 13, 2020, made by Springs in favor of Lending, in the original principal amount of $1,800,000.00; guaranteed by that certain Specific Guaranty Agreement, dated November 13, 2020, made by Guarantor in favor of Lending.

58. That certain Note Subordinate Financing – 5th, dated January 6, 2022, made by Springs in favor of Lending, in the original principal amount of $9,400,000.00; guaranteed by that certain Specific Guaranty Agreement, dated January 6, 2022, made by Guarantor in favor of Lending.

59. That certain Promissory Note Secured by Security Instrument Fixed Rate Interest Only with Balloon, dated November 29, 2022, made by Springs in favor of Lending, in the original principal amount of $4,950,000.00; guaranteed by that certain Personal Guaranty Agreement of Jerome M. Karam, dated November 29, 2022, made by Guarantor in favor of Lending.

60. That certain Promissory Note Secured by Security Instrument Fixed Rate Interest Only with Balloon, dated July 21, 2023, made by Springs in favor of Lending, in the original principal amount of $2,430,000.00; guaranteed by that certain Personal Guaranty Agreement of Jerome M. Karam, dated July 21, 2023, made by Guarantor in favor of Lending.

61. That certain Promissory Note Secured by Security Instrument Fixed Rate Interest Only with Balloon, dated February 5, 2024, made by Springs in favor of Lending, in the original principal amount of $5,985,000.00; guaranteed by that certain Personal Guaranty Agreement of Jerome M. Karam, dated February 5, 2024, made by Guarantor in favor of Lending.

**EXHIBIT A**

62. That certain Promissory Note Secured by Security Instrument Fixed Rate Interest only with Balloon, dated May 1, 2024, made by Springs in favor of Lending, in the original principal amount of $18,470,000; guaranteed by that certain Personal Guaranty Agreement of Jerome M. Karam, dated May 1, 2024, made by Guarantor in favor of Lending.

**Security Instruments**

63. That certain Mortgage, dated October 21, 2019, made by JMK5 Sand Springs LLC, a Texas limited liability company ("Springs") in favor of Lending, recorded October 25, 2019, in the Tulsa County, Oklahoma Official Public Records ("Tulsa Records"), as Instrument No. 2019-99071, in the original principal amount of $3,200,000.00; modified by that certain Loan Modification Agreement, dated April 9, 2020, by and between Springs and Loan Source, recorded April 23, 2020, in the Tulsa Records, as Instrument No. 2020-36732; transferred by that certain Transfer and Assignment of Lien, dated July 22, 2020, by Lending to Growth (f/k/a Short), recorded July 22, 2020, in the Tulsa Records, as Instrument No. 2020-68137; modified by that certain Loan Modification Agreement, dated August 18, 2020, by and between Springs and Loan Source, recorded August 25, 2020, in the Tulsa Records, as Instrument No. 2020-80606; collaterally assigned by that certain Collateral Assignment of Lien, dated August 20, 2020, made by Growth (f/k/a Short) in favor of Banner Investments LLC, a Texas limited liability company ("Banner"), Latir Inc., a Texas corporation, Midland Trust Company as custodian FBO Jefferson Tomlinson IRA #1707094 ("Midland"), Quest Trust Company FBO Barry Walter IRA #1197811 ("Walter"), PowerMind Wealth LLC, a Texas limited liability company ("Power"), Quest Trust Company FBO Joe Nunez IRA #1315121, and Juanita Nunez, recorded September 10, 2020, in the Tulsa Records, as Instrument No. 2020-86966; transferred by that certain Transfer and Assignment of Collateral Note and Security Interest, dated October 16, 2020, Banner to WAFRE LLC, a Texas limited liability company ("WAFRE"), Brede Interests LLC – Series One, a separate series of Brede Interests LLC, a Texas limited liability company ("Brede"), Quest Trust Company FBO Gregory Kurmadas IRA #4119311 ("Gregory"), Quest Trust Company FBO David Ketrick IRA #4120011 ("Ketrick") and KJT, recorded November 13, 2020, in the Tulsa Records, as Instrument No. 2020-112426; modified by that certain Loan Modification Agreement, dated November 4, 2020, by and between Springs and Loan Source, recorded November 20, 2020, in the Tulsa Records, as Instrument No. 2020-115614; assigned by that certain Reassignment of Collateral Assignment, dated September 14, 2022, by Midland to Growth, recorded October 27, 2022, in the Tulsa Records, as Instrument No. 2022-109327; assigned by that certain Reassignment of Collateral Assignment, dated September 14, 2022, by PowerMind to Growth, recorded October 27, 2022, in the Tulsa Records, as Instrument No. 2022-109328; transferred by that certain Transfer and Assignment of Collateral Note and Security Interest, dated September 20, 2022, by Gregory to Banner, recorded October 27, 2022, in the Tulsa Records, as Instrument No. 2022-109329; transferred by that certain Transfer and Assignment of Collateral Note and Security Interest, dated September 19, 2022, by Ketrick to Banner, recorded October 27, 2022, in the Tulsa Records, as Instrument No. 2022-109330; assigned by that certain Reassignment of Collateral Assignment, dated October 28, 2022, by Walter to Growth, recorded October 28, 2022, in the Tulsa Records, as Instrument No. 2022-110224; modified by that certain Loan Modification Agreement, dated July 25, 2023, by and between Springs and Loan Source, recorded October 18, 2023,

**EXHIBIT A**

in the Tulsa Records, as Instrument No. 2023-84997; and modified by that certain Loan Modification Agreement, dated February 12, 2024, by and between Springs and Loan Source, recorded February 22, 2024, in the Tulsa Records, as Instrument No. 2024-13021.

64. That certain Mortgage, dated April 9, 2020, made by Springs in favor of Lending, recorded April 13, 2020, in the Tulsa Records, as Instrument No. 2020-32457, in the original principal amount of $5,200,000.00; modified by that certain Loan Modification Agreement, dated November 4, 2020, by and between Springs and Loan Source, recorded November 20, 2020, in the Tulsa Records, as Instrument No. 2020-115614; transferred by that certain Transfer and Assignment of Lien, dated December 1, 2021, by Lending to Growth and Silver, recorded February 25, 2022, in the Tulsa Records, as Instrument No. 2022-19304; modified by that certain Loan Modification Agreement, dated July 25, 2023, by and between Springs and Loan Source, recorded October 18, 2023, in the Tulsa Records, as Instrument No. 2023-84997; partially transferred by that certain Transfer and Assignment of Lien, dated December 1, 2023, by Silver to Growth, recorded January 3, 2024, in the Tulsa Records, as Instrument No. 2024-1033; modified by that certain Loan Modification Agreement, dated February 12, 2024, by and between Springs and Loan Source, recorded February 22, 2024, in the Tulsa Records, as Instrument No. 2024-13021; and transferred by that certain Transfer and Assignment of Lien, dated August 19, 2025, by Growth to Income, recorded August 20, 2025, in the Tulsa Records, as Instrument No. 2025-73831.

65. That certain Mortgage, dated November 13, 2020, made by Springs in favor of Lending, recorded November 17, 2020, in the Tulsa Records, as Instrument No. 2020-113972, in the original principal amount of $1,800,000.00; transferred by that certain Transfer and Assignment of Lien, dated April 1, 2021, by Lending to Income, recorded April 12, 2021, in the Tulsa Records, as Instrument No. 2021-40127; transferred by that certain Transfer and Assignment of Lien, dated January 1, 2022, by Income to Growth, recorded January 7, 2022, in the Tulsa Records, as Instrument No. 2022-2267; transferred by that certain Transfer and Assignment of Lien, dated January 1, 2022, by Growth to Income, recorded January 10, 2022, in the Tulsa Records, as Instrument No. 2022-3142; modified by that certain Loan Modification Agreement, dated July 25, 2023, by and between Springs and Loan Source, recorded October 18, 2023, in the Tulsa Records, as Instrument No. 2023-84997; modified by that certain Loan Modification Agreement, dated February 12, 2024, by and between Springs and Loan Source, recorded February 22, 2024, in the Tulsa Records, as Instrument No. 2024-13021; transferred by that certain Transfer and Assignment of Lien, dated August 19, 2025, by Income to Growth, recorded August 20, 2025, in the Tulsa Records, as Instrument No. 2025-73748; transferred by that certain Transfer and Assignment of Lien, dated August 19, 2025, by Income to Growth, recorded August 20, 2025, in the Tulsa Records, as Instrument No. 2025-73833.

66. That certain Mortgage Subordinate – 5th Lien, dated January 6, 2022, made by Springs in favor of Lending, recorded January 10, 2022, in the Tulsa Records, as Instrument No. 2022-2864, in the original principal amount of $9,400,000.00; transferred by that certain Transfer and Assignment of Lien, dated February 1, 2022, by Lending to Growth, recorded February 25, 2022, in the Tulsa Records, as Instrument No. 2022-19305; modified by that certain

**EXHIBIT A**

Loan Modification Agreement, dated July 25, 2023, by and between Springs and Loan Source, recorded October 18, 2023, in the Tulsa Records, as Instrument No. 2023-84997; and modified by that certain Loan Modification Agreement, dated February 12, 2024, by and between Springs and Loan Source, recorded February 22, 2024, in the Tulsa Records, as Instrument No. 2024-13021.

67. That certain Sixth Lien Commercial Mortgage, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing, dated November 29, 2022, made by Springs in favor of Lending, recorded November 30, 2022, in the Tulsa Records as Instrument No. 2022-119807, in the original principal amount of $4,950,000.00; transferred by that certain Transfer and Assignment of Lien, dated December 1, 2022, by Lending to Growth, recorded February 23, 2023, in the Tulsa Records, as Instrument No. 2023-13395; modified by that certain Loan Modification Agreement, dated July 25, 2023, by and between Springs and Loan Source, recorded October 18, 2023, in the Tulsa Records, as Instrument No. 2023-84997; and modified by that certain Loan Modification Agreement, dated February 12, 2024, by and between Springs and Loan Source, recorded February 22, 2024, in the Tulsa Records, as Instrument No. 2024-13021.

68. That certain Seventh Lien Commercial Mortgage, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing, dated July 21, 2023, made by Springs in favor of Lending, recorded July 24, 2023, in the Tulsa Records, as Instrument No. 2023-58641 in the original principal amount of $2,430,000.00; transferred by that certain Transfer and Assignment of Lien, dated August 3, 2023, by Lending to Growth, recorded September 14, 2023, in the Tulsa Records, as Instrument No. 2023-74719.

69. That certain Ninth Lien Commercial Mortgage, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing, dated February 5, 2024, made by Springs in favor of Lending, recorded February 12, 2024, in the Tulsa Records, as Instrument No. 2024-10333 in the original principal amount of $5,985,000.00; transferred by that certain Transfer and Assignment of Lien, dated February 3, 2025, by Lending to Growth, recorded February 11, 2025, in the Tulsa Records, as Instrument No. 2025-11555.

70. That certain Tenth Lien Commercial Mortgage, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing, dated May 1, 2024, made by Springs in favor of Lending, recorded May 2, 2024, in the Tulsa Records, as Instrument No. 2024-33896 in the original principal amount of $18,470,000.00; transferred by that certain Transfer and Assignment of Lien, dated May 2, 2024, by Lending to Growth, recorded May 15, 2024, in the Tulsa Records, as Instrument No. 2024-38210.

**EXHIBIT B**
**to Agreement Regarding Purchase of Notes and Liens**

**Allocation of Purchase Price to Acquired Assets**

**[See attached]**

330026998v7

**EXHIBIT B**

| Name of Borrower | Original Principal Amount of Note | Payoff Amount of Note as of July 31, 2026 | Portion of Purchase Price Allocated to Note | Lien Priority of Note | Current Noteholder(s) | Noteholder % Ownership |
|---|---|---|---|---|---|---|
| **JMK5 Alvin Total Purchase Price Allocation: $3,380,000.00** | | | | | | |
| JMK5 Alvin LLC | $4,500,000.00 | $5,128,543.77 | $3,380,000.00 | 1st | ILS Income Fund I LP | 88.89% |
| | | | | | KK Houston Properties Inc. | 11.11% |
| **JMK5 Arena Total Purchase Price Allocation: $0.00** | | | | | | |
| JMK5 Arena LLC | $5,900,000.00 | | $0.00 | 5th | ILS Growth Fund I LP | 100.00% |
| **JMK5 Falstaff Total Purchase Price Allocation: $780,000.00** | | | | | | |
| JMK5 Falstaff Hotel LLC | $1,432,169.06 | $1,617,910.47 | $0.00 | 1st | Silver Lending LLC / ILS Income Fund I LP | Sale is only for ILS Income Fund I LP interest by quitclaim deed |
| | $4,047,640.49 | $4,572,588.58 | $780,000.00 | 2nd | ILS Growth Fund I LP (f/k/a ILS Short Term Fund I LP) | 100.00% |
| | $8,980,000.00 | | $0.00 | 3RD | ILS Growth Fund I LP | 100.00% |
| | $1,925,000.00 | | $0.00 | 5TH | ILS Growth Fund I LP | 100.00% |
| | $4,600,000.00 | | $0.00 | 6TH | ILS Growth Fund I LP | 100.00% |
| **JMK5 Gemini A Total Purchase Price Allocation: $8,230,000.00** | | | | | | |
| JMK5 Gemini A LLC | $1,961,680.00 | $2,007,592.19 | $2,007,592.19 | 1st | ILS Income Fund I LP and collaterally assigned to DGE Fund I and Newfirst National Bank | 100.00% |
| | $4,068,990.04 | $4,596,707.10 | $4,596,707.10 | 2nd | ILS Growth Fund I LP | 30.00% |
| | | | | | DFS Cornerstone I LLC | 20.00% |
| | | | | | ILS RE Capital LLC | 20.00% |

**EXHIBIT B**

| Name of Borrower | Original Principal Amount of Note | Payoff Amount of Note as of July 31, 2026 | Portion of Purchase Price Allocated to Note | Lien Priority of Note | Current Noteholder(s) | Noteholder % Ownership |
|---|---|---|---|---|---|---|
| | | | | | ILS RE Capital III LLC | 20.00% |
| | | | | | ILS Capital IV LLC | 10.00% |
| | $1,719,329.96 | $1,942,313.84 | $1,625,700.71 | 3rd | ILS Growth Fund I LP | 100.00% |
| | $2,100,000.00 | | $0.00 | 4th | ILS Growth Fund I LP | 100.00% |
| | $2,385,000.00 | | $0.00 | 5TH | ILS Growth Fund I LP | 100.00% |
| | | | $0.00 | 6TH | ILS Growth Fund I LP | 100.00% |
| | | | $0.00 | 7TH | ILS Growth Fund I LP | 100.00% |
| **JMK5 Gemini B Total Purchase Price Allocation: $4,320,000.00** | | | | | | |
| JMK5 Gemini B LLC | $3,000,000.00 | $3,180,192.67 | $3,180,192.67 | 2nd (collateral loan) | ILS Growth Fund I LP and collaterally assigned to DGE Fund I LP | 58.33%% |
| | | | | | ILS Growth Fund I LP and collaterally assigned to Newfirst National Bank | 25.00% |
| | | | | | ILS Growth Fund I LP and collaterally assigned to Elliot W. Kruppa | 25.00% |
| | | | | | ILS Growth Fund I LP and collaterally assigned to Ramona Krenek | 16.667% |
| | $1,000,000.00 | $1,138,843.08 | $1,138,843.08 | 3rd | ILS Growth Fund I LP | 30.00% |
| | | | | | ILS RE Capital LLC | 20.00% |
| | | | | | ILS RE Capital II LLC | 20.00% |
| | | | | | ILS RE Capital III LLC | 15.00% |

**EXHIBIT B**

| Name of Borrower | Original Principal Amount of Note | Payoff Amount of Note as of July 31, 2026 | Portion of Purchase Price Allocated to Note | Lien Priority of Note | Current Noteholder(s) | Noteholder % Ownership |
|---|---|---|---|---|---|---|
| | | | | | ILS RE Capital IV LLC | 15.00% |
| | $2,000,000.00 | | $964.25 | 5TH | ILS Growth Fund I LP | 100.00% |
| | $1,615,000.00 | | $0.00 | 6TH | ILS Growth Fund I LP | 100.00% |
| | $2,490,000.00 | | $0.00 | 10TH | ILS Growth Fund I LP | 100.00% |
| **JMK5 Gemini D Total Purchase Price Allocation: $3,300,000.00** | | | | | | |
| JMK5 Gemini D LLC | $2,000,000.00 | $2,277,686.16 | $2,277,686.16 | 1st | KK Houston Properties Inc. | 50.00% |
| | | | | | Ramona Krenek | 33.00% |
| | | | | | KJT Memorial Foundation | 11.00% |
| | | | | | ILS Income Fund I LP | 6.00% |
| | $1,000,000.00 | $1,138,843.08 | $1,022,313.84 | 2nd | ILS Growth Fund I LP | 100.00% |
| | $2,500,000.00 | | $0.00 | 3rd | ILS Growth Fund I LP | 100.00% |
| | $3,660,000.00 | | $0.00 | 4th | ILS Growth Fund I LP | 100.00% |
| | $3,800,000.00 | | $0.00 | 5th | ILS Growth Fund I LP | 100.00% |
| **JMK5 Marina Total Purchase Price Allocation: $0.00** | | | | | | |
| JMK5 Marina LLC | $1,650,000.00 | | $0.00 | 6th | ILS Growth Fund I LP | 100.00% |
| **JMK5 Racing Total Purchase Price Allocation: $4,386,000.00** | | | | | | |
| JMK5 Racing LLC | $6,500,000.00 | $7,407,896.53 | $4,386,000.00 | 5th | ILS Growth Fund I LP | 76.92% |
| | | | | | KK Houston Properties Inc. | 23.08% |

**EXHIBIT B**

| Name of Borrower | Original Principal Amount of Note | Payoff Amount of Note as of July 31, 2026 | Portion of Purchase Price Allocated to Note | Lien Priority of Note | Current Noteholder(s) | Noteholder % Ownership |
|---|---|---|---|---|---|---|
| **JMK5 Shreveport Total Purchase Price Allocation: $740,000.00** | | | | | | |
| JMK5 Shreveport LLC | $2,115,000.00 | $1,477,123.33 | $740,000.00 | 1st | ILS Growth Fund I LP | 100.00% |
| **JMK5 Sand Springs Total Purchase Price Allocation: $2,730,000.00** | | | | | | |
| JMK5 Sand Springs LLC | $3,200,000.00 | $3,615,015.67 | $2,730,000.00 | 1st | ILS Growth Fund I LP | 100.00% |
| | $5,200,000.00 | | $0.00 | 2nd | ILS Income Fund I LP | 100.00% |
| | $1,800,000.00 | | $0.00 | 3rd | ILS Growth Fund I LP | 100.00% |
| | $9,400,000.00 | | $0.00 | 5th | ILS Growth Fund I LP | 100.00% |
| | $4,950,000.00 | | $0.00 | 6th | ILS Growth Fund I LP | 100.00% |
| | $2,430,000.00 | | $0.00 | 7th | ILS Growth Fund I LP | 100.00% |
| | $5,985,000.00 | | $0.00 | 9th | ILS Growth Fund I LP | 100.00% |
| | $18,470,000.00 | | $0.00 | 10th | ILS Growth Fund I LP | 100.00% |

<u>**EXHIBIT C**</u>
**to Agreement Regarding Purchase of Notes and Liens**

**Form of Assignment of Note and Liens**

**[see attached]**

330026998v7

## ASSIGNMENT OF NOTE AND LIENS

THIS ASSIGNMENT OF NOTE AND LIENS ("Assignment") dated _____, 2026, is executed and delivered by **Ronald J. Sommers, Chapter 7 Trustee** of the bankruptcy estate of [**ILS Income Fund I LP] [ILS Growth Fund I LP]** [and _____] ("Assignor(s)"), to **Impex DGW Capital, LLC**, a Texas limited liability company ("Assignee").

## **RECITALS:**

WHEREAS, Assignor(s) is(are) the owner and holder of that certain Promissory Note (the "Note") dated _____, executed by _____ ("Maker") payable to the order of [ILS Income Fund I LP][ILS Growth Fund I LP] (the "Lender") in the original principal amount of _____ Dollars ($_____); and

WHEREAS, the Note is secured by, without limitation, (i) the [Deed of Trust ("Deed of Trust")] [Mortgage (the "Mortgage")] dated _____, executed by Maker [to Jay C. Paxton, Trustee,] for the benefit of the Lender and recorded in the real property records of _____ County, _____, under Clerk's File No. _____, (ii) the [Assignment of Leases and Rents ("Assignment of Leases")] dated _____, executed by Maker for the benefit of the Lender and recorded in the real property records of _____ County, _____, under Clerk's File No. _____,each covering and affecting, among other property, the real property described therein (said liens and security interests created by the [Deed of Trust] [Mortgage] and Assignment of Leases are hereinafter collectively referred to as the "Liens" and the [Deed of Trust][Mortgage] and any and all other security agreements relating to the Note or evidencing or creating the Liens or any other liens, security interests, guarantees or other security for repayment of the Note and any mortgagee or loan title insurance policy(ies) accruing to the benefit of Assignor(s) are hereinafter collectively referred to as the "Loan Documents");

## **ASSIGNMENT AND AGREEMENTS:**

NOW, THEREFORE, for good and valuable consideration paid to Assignor(s), the receipt and sufficiency of which are hereby acknowledged, Assignor(s) has(have) TRANSFERRED and ASSIGNED and by these presents TRANSFER(S) and ASSIGN(S) unto Assignee the Note and Liens, together with all of the Loan Documents.

Assignor(s) represents and warrants that as of the date hereof Assignor(s) is(are) the owner and holder of the Note and Liens and the Loan Documents and has(have) all requisite power and authority to make this assignment and transfer, and otherwise this Assignment is made without recourse, representation or warranty of any kind.

*[signature and acknowledgement page follows]*

330026998v7

EXECUTED effective as of this _____ day of _____, 2026.


                                           _____
Ronald J. Sommers,
Chapter 7 Trustee for ILS Growth Fund I LP
and ILS Income Fund I LP

THE STATE OF TEXAS          §
                                §
COUNTY OF HARRIS         §

This instrument was acknowledged before me on this ____ day of _____, 2026, by Ronald J. Sommers, as Chapter 7 Trustee for ILS Growth Fund I LP and ILS Income Fund I LP.


[seal]


                                         _____
Notary Public, State of Texas


[*Note*: *signature blocks and acknowledgements to be added for Third-Party Holders if and as applicable*.]

330026998v7

**Exhibit 2 – Consenting Co-Owners**

To be supplemented prior to the hearing on Motion with the consenting Co-Owners

**<u>Exhibit 3 – Collateral Assignees</u>**

To be supplemented prior to the hearing on Motion with the collateral assignees
and applicable payoff amounts