MURRAY | LOBB
ATTORNEYS

700 GEMINI, SUITE 115
HOUSTON, TEXAS 77058-2735
Phone: (281) 488-0630 Fax: (281) 488-2039
www.murray-lobb.com

KYLE L. DICKSON | PARTNER
E-mail: kdickson@murray-lobb.com

August 31, 2020

Greenworks Lending LLC
28 Thorndal Circle, Third Floor
Darien, Connecticut 06820
Attention: Alexandra Cooley

BY FEDEX TRK# 7714 3160 5618

U.S. Bank National Association
425 Walnut Street
CN-OH-W6CT
Cincinnati, Ohio 45202
Attention: Global Structure Finance, as Indenture Trustee for the Issuers sponsored by Greenworks Lending LLC (or affiliates)

BY FEDEX TRK# 7714 3169 2098

RE: Galveston County, Texas PACE Program, Assessment on real property located at 3316 Church Street, Galveston, Galveston County, Texas 77550

Ladies and Gentlemen:

We have acted as special counsel in the State of Texas (the "State") for Greenworks Lending LLC ("Lender") in connection with a loan by Lender to JMK5 Falstaff Storage, L.L.C., a Texas limited liability company ("Borrower") in the principal amount of TWO MILLION ONE HUNDRED SIXTY THOUSAND AND NO/100 ($2,160,000.00) ("Loan"). The transactions described in the Transaction Documents (hereinafter defined) are herein collectively referred to as the "Transaction." We are advised that Lender and Borrower intend for the Loan to comply with the Property Assessed Clean Energy Act, Texas Local Government Code Chapter 399 (the "Act").

We are not general counsel to the Lender, the Borrower, or the Local Government and are not generally familiar with the organizational proceedings of the Lender, the Borrower, or the Local Government, or the operation, management, use or other dealings with the property of the Borrower.

## 1. BACKGROUND

In our capacity as special Texas counsel to the Lender, we have examined copies of originals showing signatures and identified to us as true copies of originals as signed of the following documents stated below in Section 2.

## 2. Documents Reviewed

a. PACE Owner Contract (the "Owner Contract"), dated August 31, 2020 by and between Galveston County, Texas ("Local Government") and Borrower.

b. PACE Lender Contract (the "Lender Contract"), dated August 31, 2020 by and between Local Government and Lender.

c. Notice of Contractual Assessment Lien Pursuant to Property Assessed Clean Energy Act ("Notice of Contractual Assessment"), dated August 13, 2020 to be recorded in the Real Property Records of the Official Public Records of Galveston County, Texas (the "Recorder's Office").

d. Financing Agreement (the "Financing Agreement"), August 31, 2020 by and between the Lender and the Borrower.

e. Property Assessed Clean Energy Program Pre-qualification Letter to Borrower ("Pre-qualification Letter") from the Texas PACE Authority (the "Authorized Representative"), as authorized representative of Local Government, dated April 29, 2020, a copy of which is attached hereto as **Exhibit "A".**

f. Property Assessed Clean Energy Program Independent Third-Party Reviewer Project Verification Certificate dated June 20, 2020 by Laughton Energy Engineering Services, LLC ("Verification"), a copy of which is attached hereto as **Exhibit "B".**

g. Lender Consent to PACE Assessment by Priority Investor Loans, LLC dated August 24, 2020 ("Lender Consent"), a copy of which is attached hereto as **Exhibit "C".**

The documents listed in paragraph 2, a through d above are referred to collectively as the "Loan Documents." The documents listed in paragraph 2 a through g above are referred to as the "Transaction Documents."

We have also examined the following documents: Galveston County Commissioner's Court Resolution Establishing the Galveston County PACE Program and authorizing the retention of the Authorized Representative adopted January 14, 2019, a copy of which is attached hereto as **Exhibit "D"** and Professional Services Agreement by and between the County of Galveston, Texas and Texas Property Assessed Clean Energy ("Authorized Representative") authorizing it to execute contracts on its behalf, a copy of which is attached hereto as **Exhibit "E"** (collectively, the "Resolution"). With respect to the opinion in numbered opinion paragraph 3 d. below, we have relied solely on the Resolution.

In rendering our opinion, we have also examined such certificates of public officials, documents and records and other certificates and instruments as we have deemed necessary for the purposes of the opinions herein expressed.

In rendering the following opinions, as to factual matters that affect our opinions, we have, with your approval, relied on (and assumed the accuracy of) certificates, statements and other representations of the Borrower, the Local Government, the Authorized Representative, and others, including certificates of public officials (the "Public Documents").

**3. OPINION(S) OF COUNSEL**

Based on the foregoing and in reliance thereon and on the assumptions and subject to the qualifications and limitations set forth in this opinion, we are of the opinion that:

a. The Owner Contract complies with the requirements of Section 399.005 of the Act.

b. The Lender Contract complies with the requirements of Section 399.006(c) of the Act.

c. The Notice of Contractual Assessment complies with the requirements of Section 399.013 of the Act.

d. The Authorized Representative has the full power and authority to execute the Owner Contract, the Lender Contract and the Notice of Contractual Assessment on behalf of the Local Government pursuant to the Resolution.

e. The collection of interest as set forth in Section 1.2(c) of the Financing Agreement and the collection of interest on delinquent payments set forth in Section 1.5 of the Financing Agreement, which collection of interest on delinquent payments is collected in addition to any statutory interest or penalties due and owing the Local Government thereon, does not violate the usury laws of the State of Texas.

f. The Notice of Contractual Assessment is in appropriate form for recording in the Recorder's Office. Upon recording of the Notice of Contractual Assessment in the Recorder's Office, the Notice of Contractual Assessment will create a valid lien on the property described therein in accordance with Section 399.014 of the Act, which provides as follows:

Sec. 399.014. LIEN.

(a) A contractual assessment under this chapter and any interest or penalties on the assessment:

(1) is a first and prior lien against the real property on which the assessment is imposed from the date on which the notice of contractual assessment is recorded as provided by Section 399.013 and until the assessment, interest, or penalty is paid; and

(2) has the same priority status as a lien for any other ad valorem tax.

(a-1) After the notice of a contractual assessment is recorded as provided under Section 399.013, the lien may not be contested on the basis that the improvement is not a qualified improvement, or the project is not a qualified project.

(b) The lien runs with the land, and that portion of the assessment under the assessment contract that has not yet become due is not eliminated by foreclosure of a property tax lien.

(c) The assessment lien may be enforced by the local government in the same manner that a property tax lien against real property may be enforced by the local government to the extent the enforcement is consistent with Section 50, Article XVI, Texas Constitution.

(d) Delinquent installments of the assessments incur interest and penalties in the same manner as delinquent property taxes.

(e) A local government may recover costs and expenses, including attorney's fees, in a suit to collect a delinquent installment of an assessment in the same manner as in a suit to collect a delinquent property tax.

Added by Acts 2013, 83rd Leg., R.S., Ch. 416 (S.B. 385), Sec. 1, eff. June 14, 2013. Amended by: Acts 2015, 84th Leg., R.S., Ch. 577 (H.B. 3187), Sec. 5, eff. June 16, 2015.

g. The Resolution complies with the requirements of Section 399.008 of the Act.

h. Enforcement of the lien created by filing of the Notice of Contractual Assessment in accordance with Section 399.014 of the Act does not violate Section 50, Article XVI, Texas Constitution pertaining to homestead property.

## 4. ASSUMPTIONS RELIED UPON BY COUNSEL

Our opinions are based on the assumptions (upon which we have relied with your consent)

and subject to the qualifications and limitations set forth in this letter, including the following:

a. We express no opinion as to any laws other than the laws of the State of Texas.

b. We have assumed for purposes of this opinion that: (a) all parties to the Transaction Documents other than the Local Government (the "**Other Parties**") are duly organized, validly existing and in good standing with full power and authority to enter into, execute, deliver and perform the Transaction Documents and their respective obligations thereunder; (b) the Transaction has been duly authorized by the Other Parties and the Other Parties have duly executed and delivered the Transaction Documents to which they are a signatory; (c) the Other Parties have satisfied those legal requirements that are applicable to each of them to the extent necessary to make the Transaction Documents enforceable against each of them; (d) the Other Parties have complied with all legal requirements pertaining to each of their status as such status relates to their rights to enforce the Transaction Documents; (e) the loans contemplated by the Transaction Documents are funded and all conditions precedent to such funding have been satisfied or waived; (f) each natural person executing any of the Loan Documents is legally competent; (g) all signatures are genuine, the Transaction Documents submitted to us as originals are authentic and the Transaction Documents submitted to us as copies conform to the originals; (h) all Transaction Documents are complete (including, without limitation, all blanks and exhibits thereto); (i) any certifications dated prior to closing remain true as of closing; (j) all official public records are accurate and complete; (k) there has not been any mutual mistake of fact or misunderstanding, fraud, duress or undue influence; (l) the conduct of the parties to the Transaction Documents has complied with any requirement of good faith, fair dealing and conscionability; (m) the Other Parties and any agent acting for the Other Parties in connection with the Transaction have acted in good faith and without notice of any defense against the enforcement of any rights created by, or adverse claim to any property or security interest transferred or created as part of, the Transaction; (n) the Notice of Contractual Assessment will be duly filed, indexed and recorded among the appropriate official records, as set forth above, with all fees having been paid; (o) the Lender will comply with all requirements of applicable procedural and substantive law, and will act in good faith and in a commercially reasonable manner in the exercise of any rights or enforcement of any remedies under the Loan Documents; (p) there are no agreements or understandings among the parties, written or oral, and there is no usage of trade or course of prior dealing among the parties that would, in either case, define, supplement or qualify the terms of the Transaction Documents; (q) all statutes, judicial and administrative decisions, and rules and regulations of governmental agencies, constituting the law of the State are generally available (i.e., in terms of access and distribution following publication or other release) to practicing lawyers, and are in a format that makes the legal research reasonably feasible; (r) the constitutionality or validity of a relevant

statute, rule, regulation or agency action is not in issue unless a reported decision in the State has specifically addressed but not resolved, or has established, its unconstitutionality or invalidity; (s) no party will in the future take any discretionary action (including a decision not to act) permitted under the Transaction Documents that would result in a violation of law or constitute a breach or default under any agreement by which it is bound or a breach or default of any court or administrative body having jurisdiction over the parties or the matter; (t) the Borrower will obtain all permits and governmental approvals required, and take all actions similarly required, relevant to consummation of the Transaction or performance of the Transaction Documents; (u) Intentionally omitted; (v) Intentionally omitted; (w) Intentionally omitted; (x) all applicable taxes and fees, including but not limited to sales taxes, transfer taxes and filing fees, required to be paid in connection with the consummation of the Transaction have been paid; (y) Intentionally omitted; (z) all parties to the Transaction will act in accordance with, and will refrain from taking any action that is forbidden by, the terms and conditions of the Transaction Documents; (aa) Intentionally omitted; (bb) the Loan will be used to finance costs and expenses authorized by the PACE Act; (cc) the Loan complies with the Report Required by Texas Local Government Code Section 399.009 referenced in the Resolution; (dd) the party that provided the Lender Consent is the only holder of any mortgage lien on the property described in the Loan Documents; (ee) the Verification is true and correct and complies with the requirements of Section 399.011 of the Act; (ff) after the project is completed, the Borrower and Lender will provide written confirmation to Local Government that the project was properly completed and is operating as intended. We note that we have no actual knowledge of the occurrence of any of the matters described in clauses (k) or (p) above, nor do we have any actual knowledge that any of the parties to the Transaction has not complied with the requirement of good faith, fair dealing, and conscionability as assumed by clauses (l) or (m) above. We have not made any independent investigation or inquiry concerning the business or financial condition of the Borrower or concerning the operation, management, use or other dealings with the property of the Borrower.

c. The opinions contained herein as to the enforceability of the Owner Contract, the Lender Contract, the Notice of Assessment and the Financing Agreement are further subject to the qualification that certain of the remedial, waiver and other provisions therein may not be enforceable, nevertheless, such unenforceability will not render the Owner Contract, the Lender Contract, the Notice of Assessment and the Financing Agreement invalid as a whole or preclude: (a) the judicial enforcement of the obligation of the Borrower to make the payments required pursuant to the Financing Agreement; (b) Intentionally omitted; and (c) the enforcement of the contractual assessment lien in accordance with Section 399.014 of the Act. We express no opinion to the extent any provisions of the Financing Agreement or any other documents may purport to waive any provisions of

Sections 51.003, 51.004 and 51.005 of the Texas Property Code.

d. Our opinions are subject to: (i) the effect of applicable bankruptcy, insolvency, reorganization, arrangement, moratorium, fraudulent transfer or fraudulent conveyance and other similar laws affecting creditor's rights generally and judicially developed doctrines relevant to any of the foregoing laws, such as substantive consolidation of entities; (ii) limitations imposed by equitable doctrines, including without limitation, limitations upon the specific enforceability of provisions of the Loan Documents, concepts of materiality, reasonableness (including commercial reasonableness of the sale or disposition of collateral), good faith and fair dealing, marshalling of assets, and the availability of injunctive relief or other equitable remedies (regardless whether considered in a proceeding in equity or at law); (iii) Intentionally omitted; (iv) judicial discretion regarding the determination of damages and entitlement to attorneys' fees and other costs; and (v) the effect of forfeiture laws. Enforceability of certain provisions purporting to waive the benefits of statutory provisions or constitutional or common law rights or providing for indemnification, exculpation or release may be limited or otherwise affected by limitations based on statutes, case law or public policy. Enforceability of the Loan Documents, to the extent they purport to grant rights relating to leases, contracts, licenses or other general intangibles or claims against account debtors, is further subject to the rights of the other parties to such leases, contracts, licenses or general intangibles and the rights of other account debtors and the terms of such leases, contracts, licenses and other general intangibles. Enforcement may further be limited by the nature of any account being the obligation of any federal, state or other governmental authority or agency. The opinions in this letter do not include any opinion as to the enforceability of (a) any waiver of jury trial; (b) any choice of law provision; (c) any choice of forum or choice of venue provision; (d) a remedy under certain circumstances where another remedy has been elected; (e) the right of a creditor to use force or cause a breach of the peace in enforcing rights; (f) any power of attorney; (g) the provisions of the Loan Documents which release, exculpate or exempt a party from, or require indemnification of a party for, liability for its own action or inaction, to the extent the action or inaction involves (I) gross negligence, recklessness, willful misconduct or unlawful conduct or (II) negligence to the extent the provisions are insufficiently explicit; (h) any prepayment premium or penalty; (i) the balance of a Loan Document, where part of the Loan Document may be unenforceable under circumstances in which the unenforceable portion is an essential part of the agreed upon exchange; (j) any right to appointment of a receiver; (k) any waiver of the right to notice of acceleration of the debt; (l) any waiver of the right to assert a counterclaim; (m) any provision for the survival of certain provisions of the Loan Documents after the payment in full of the obligations secured by the Loan Documents or after the release and satisfaction or after the foreclosure of the Deed of Trust; (n) any provision giving the Lender the right to enter onto property of the

Borrower without judicial process; (o) any provision for the integration or unenforceability of any oral or other unwritten agreements of the parties; and (p) any provision for the payment of Lender’s attorney’s fees or other cost or expense to the extent the same is held not to be reasonable.

e. We have made no examination of, and express no opinion as to, title to any of the properties (whether real, personal, mixed or otherwise) described in the Loan Documents, the legal descriptions thereof, the accuracy or adequacy of the description of any of the property contained in the Notice of Contractual Assessment, or compliance with any land use, building, zoning or environmental laws, regulations and codes or subdivision or other restrictions. We express no opinion on the existence or validity of leases, contracts or other interests assigned or transferred pursuant to the Loan Documents. We have assumed for purposes of this opinion that the Borrower has the requisite title and rights in all property and interests described in the Loan Documents, that such title is free and clear of all encumbrances not permitted by the Loan Documents, and that the legal description for any real property is proper and correct. We neither express nor imply any opinion as to the priority of any security interest or lien against the real or personal property of any party to the Loan Documents, or except as set forth in Sections (a)(vi) above, the creation or perfection of any security interest or lien therein.

f. With regard to the opinion expressed in paragraph a(v) above, we have assumed that (1) each and every usury savings clause contained in the Loan Documents has been and will continue to be complied with; (2) no other fees, sums or other benefits, whether direct or indirect, have been paid or received or are, or may be, payable or receivable by you except as expressly mentioned in the Loan Documents; (3) any fees which have been or may be paid to you or to any other party, including, but not limited to, appraisal fees, inspection fees, and attorneys' fees, are, or will be, reasonable in amount and charged or paid for services actually rendered; (4) except as may be expressly set forth in the Loan Documents, there are not, nor shall there be, any compensating balances, deposits, or other funds of the Borrower pledged or hypothecated by the Borrower as security for the Loan; (5) all fees paid by the Borrower to you and intended as commitment fees are in fact commitment fees and not sums paid for the use, forbearance, or detention of money (and, if such sums are considered to be sums paid for the use, forbearance, or detention of money, you are hereby advised that should you accelerate maturity of the Loan prior to its respective maturity date you may be legally required to refund a portion of any such fees); (6) all terms, provisions, and conditions of, or relating to, the Loan Documents are correctly and completely embodied therein; and (7) interest and penalties due and owing the Local Government pursuant to the Act are not interest payable to you under Texas law. As to matters of fact, we have assumed all representations of the Borrower and the Other Parties in the Transaction Documents are true. When an opinion is stated to be “to the best of our knowledge” or the statement is made that “we have no

we have no actual knowledge to the contrary and does not indicate or imply any investigation or inquiry, of the Borrower or others, on our part.

g. Our opinions with respect to federal law and laws of the state of Texas do not include any opinion with respect to pension and employee benefit laws and regulations, antitrust and unfair competition laws and regulations, tax laws and regulations, health and safety laws and regulations, labor laws and regulations, securities laws and regulations, or environmental laws, regulations and codes.

h. This opinion is limited to the matters specifically stated in this letter, and no further opinion is to be implied or may be inferred beyond the opinions specifically stated herein. Unless otherwise stated herein, we have made no independent investigation regarding factual matters. This opinion is based solely on the state of the law as of the date of this opinion and the factual matters in existence as of such date, and we specifically disclaim any obligation to monitor or update any of the matters stated in this opinion or to advise the persons entitled to rely on this opinion of any change in law or fact after the date of this opinion which might affect any of the opinions stated herein.

This opinion is rendered solely for your benefit, or for the benefit of the assignee of your interest in the Transaction Documents, in connection with the execution and delivery by the Borrower of the Transaction Documents, and may not be released to or relied upon by any other person or for any other purpose without our prior written consent. This opinion letter is directed to the addressees only, and is for the exclusive reliance of the addressees and their attorneys, successors and assigns including any issuer issuing securities for which such Transaction is collateral (an "ABS Issuance"), the related indenture trustee for such ABS Issuance, any note purchaser of such ABS Issuance and any rating agency rating any security in connection with such ABS Issuance, and no other persons may quote from this opinion letter in whole or in part, without the express written consent of the undersigned

Respectfully,

MURRAY | LOBB, PLLC

By:______________________________
Kyle L. Dickson

cc: JMK5 Falstaff Storage, L.L.C.

EXHIBIT "A"

TEXAS ★ PACE AUTHORITY

Charlene Heydinger
*President*
Charlene@TexasPACEAuthority.org
(512) 633-5169

August 27, 2020

Elliott Cole
Senior Business Development Associate
Greenworks Lending

Dear Elliott:

As Administrator of the PACE program for Galveston County, one of our member jurisdictions, I am writing about the proposed PACE project at 3316 Church Street. We reviewed the application for participation in this program as authorized by the Property Assessed Clean Energy Act, Section 399 of the Texas Local Government Code (The PACE Act). Pending submission of final documents at closing substantiating all relevant facts and obligations, the project as presented in the application appears to meet the requirements of the PACE Act and of this PACE program.

The proposed project is a qualified improvement under the PACE Act. The subject property is privately-owned, developed commercial property with clear title located within the jurisdiction of this program. The record owner has satisfied the ownership requirements of the program. The savings to investment ratio is projected to be 1.01. The ratio between the proposed assessment and the value of the property is reasonable. The term of the proposed assessment does not exceed the useful life of the equipment involved.

This project will fulfill vital public purposes of Galveston County, including reducing the utility expenses for this property, upgrading the infrastructure of the property, promoting economic development and job creation, improving local building stock, and improving the environment.

Sincerely,

Charlene Heydinger

Charlene Heydinger
President

TEXAS ★ PACE AUTHORITY

# EXHIBIT "B"

## PROPERTY ASSESSED CLEAN ENERGY PROGRAM

### INDEPENDENT THIRD PARTY REVIEWER (ITPR)

### STATEMENT OF COMPLIANCE

I, the undersigned Independent Third Party Reviewer (ITPR), hereby certify the following facts with respect to the project described in the attached Project Application No. 2020-GAL-005 (the "Project") under the Galveston Property Assessed Clean Energy Program:

1. I have the professional qualifications to be an ITPR specified by the PACE in a Box Technical Standards Manual, in that –

    I am a licensed Professional Engineer in the State of Texas, whose registration number and seal are shown below, and

    I have experience in energy or water efficiency, including one or more of the professional credentials listed below:

    - ☐ Building Energy Assessment Professional (BEAP) or Building Energy Modeling Professional by the American Society of Heating, Refrigeration, and Air-Conditioning Engineers (ASHRAE);
    - ■ Certified Energy Manager (CEM), Certified Measurement and Verification Professional (CMVP), or Certified Energy Auditor (CEA) by the Association of Energy Engineers;
    - ☐ Certified Commissioning Professional by the Building Commissioning Association;
    - ☐ Credentialed Quality Assurance Provider from the Investor Confidence Project;
    - ☐ Certified Commissioning Authority from the AABC Commissioning Group
    - ■ 5 Years relevant project experience in energy/water efficiency

2. I do not have any conflicting financial interest in the Project, in that –

    Neither I nor any member of my family nor any company that I own or have a financial interest in has any ownership or financial interest in the Project, the engineer/contractor, the real property, or its owner; and

    Neither I nor any member of my family nor any company that I own or have a financial interest in has provided or will provide any products or services for the Project other than independent third party review.

TEXAS ★ PACE AUTHORITY

3. I personally visited the site of the Project on June 20, 2020 and observed, based on my inspection, review of construction and commissioning documents made available to me, and witnessing of operations, that the improvements described in the Project Application have been completed and are operating as intended.

4. The attached project documentation review letter provides details of my findings and conclusions.

CERTIFIED ENERGY MANAGER CEM® #2369 EXP. 12/31/2020 Michael J. Langton aee®

SIGNED: AUG 20, 2020

(SEAL) STATE OF TEXAS MICHAEL J. LANGTON PROFESSIONAL ENGINEER

Texas Professional Engineer Registration No.

63914

ITPR Signature

Langton Energy Engineering Services, LLC

Company/Firm

18725 Stewart Hill Dr.

Address

Montgomery, TX 77356

City, State, Zip Code

Office Use Only

Project ID ______________

Received ______________

# EXHIBIT "C"

## LENDER CONSENT TO PACE ASSESSMENT

| | |
|---|---|
| Property Owner: | JMK5 Falstaff Storage LLC |
| Mailing Address: | 308 W. Parkwood Ave., Suite 104A, Friendswood, TX 77546 |
| Lender: | NewFirst National Bank |
| Mailing Address: | 16554 Creekbend Drive, Suite 150, Sugar Land, TX 77478 |
| Lender Phone Number: | 832-344-2051 |
| Property: | The Real Property located in Galveston County, Texas, as more fully described in Exhibit A |
| Street Address of Property: | 3316 Church Street, Galveston, TX 77550 |
| Maximum Amount of PACE Assessment Principal Authorized: | $2,160,000.00 |
| Maximum Annual PACE Installment Amount Authorized: | $157,973.13 |

## RECITALS

Lender has made one or more loans to Property Owner secured by that Deed of Trust or Security Agreement (the "**Deed of Trust**") dated October 8, 2018 recorded in Volume N/A, Page N/A, under Instrument No. 2018061323 of the Real Property Records of Galveston County, Texas, securing the indebtedness described therein. The Deed of Trust, the notes creating the debts secured by the Deed of Trust, and all other loan agreements and other documents relating to the debt and Deed of Trust are referred to as the "**Loan Documents.**"

Property Owner desires to enter into an agreement (the "**PACE Agreement**") with the Local Government to impose an assessment (the "**Assessment**") for the financing of a qualified project under Texas Local Government Code Chapter 399 (the "**PACE Act**"). The terms of the Assessment are set out in the PACE Agreement between the Local Government and Property Owner. The Assessment will constitute a lien against the Property with the same priority status of any other ad valorem tax.

Texas Local Government Code Chapter 399 requires that the Lender: (i) be given notice of the Property Owner's intention to participate in a program under the PACE Act on or before the 30th day before the date the PACE Assessment is executed, and (ii) provide written consent to the Assessment prior to the Property Owner and Local Government executing the PACE Agreement.

V2020-06

## AGREEMENT

1. Lender hereby consents to the Assessment and the PACE Agreement and agrees that Property Owner shall not be in default under the Loan Documents because it enters into the PACE Agreement or the financing documents referenced therein, or because the Property is subject to the Assessment imposed against the Property pursuant to the PACE Agreement.

2. Lender hereby also agrees that, pursuant to Texas Local Government Code Section 399.014, the Assessment will constitute a lien against the Property from and after the date on which the notice of contractual assessment is recorded and that such lien will have the same priority status as a lien for any other ad valorem tax. In no circumstances will the amount owing on the Assessment be accelerated on account of a payment default or for any other reason. Any proceeding to enforce the lien shall be limited to collection of the amount then currently due with respect to the Assessment, together with past-due interest, past-due fees and costs of collection as permitted under the PACE Act and Texas Tax Code, as they are amended from time-to-time.

3. Property Owner and Lender agree that the principal amount of the Assessment shall not exceed the Maximum Amount of Assessment Principal Authorized, as specified above, without the consent of Lender.

EXECUTED effective as of August 24, 20 20.

**PROPERTY OWNER:**

JMK5 Falstaff Storage LLC

By: [signature]

Name: Jerome Karam

Title: Managing Member

Address: 308 W. Parkwood Ave. Suite 104-A

Friendswood Tx 77546

Email Address: jeromekaram@yahoo.com

**ACKNOWLEDGEMENT**

STATE OF Texas §

COUNTY OF Galveston §

This Lender Consent to PACE Assessment pursuant to Property Assessed Clean Energy Act was acknowledged before me on August 24, 2020 by Jerome Karam, managing member, on behalf of JMK5 Falstaff Storage.

Joshua M. Karam [signature]

Joshua M. Karam (print name)

NOTARY PUBLIC, STATE OF Texas

JOSHUA M. KARAM
My Notary ID # 132432820
Expires April 9, 2024

V2020-06

**LENDER:**

NewFirst National Bank

By: [signature]

Name: Thomas J. Shirley

Title: President - Houston Region

Address: 16554 Creekbend Drive, Suite 150

Sugar Land, TX 77478

Email Address: tshirley@newfirst.com

## ACKNOWLEDGEMENT

STATE OF Texas §

COUNTY OF Ft. Bend §

This Lender Consent to PACE Assessment pursuant to Property Assessed Clean Energy Act was acknowledged before me on 8/24/20, ______ by Thomas J. Shirley, President, on behalf of New First National Bank

[signature]

Sabrina Charles (print name)

NOTARY PUBLIC, STATE OF Texas

SABRINA CHARLES
My Notary ID # 132605849
Expires August 5, 2024

V2020-06

# EXHIBIT "A"

Legal Description

Property located in Galveston County, Texas

Lot 3-A, of Falstaff Place Partial Replat, a Subdivision in Galveston County, Texas according to the Map or Plat thereof recorded in/under Instrument No. 2017059514, of the Official Public Records of Galveston County, Texas

AND BEING the same property conveyed to JMK5 Falstaff Storage LLC, a Texas limited liability company from JMK5 Holdings Galveston, LLC, a Texas limited liability company by General Warranty Deed dated October 8, 2018 and recorded October 10, 2018 in Instrument No.2018061322.

Tax Parcel No. 610741

# EXHIBIT "D"

COUNTY OF GALVESTON COMMISSIONERS COURT
RESOLUTION ESTABLISHING THE GALVESTON COUNTY PACE PROGRAM

STATE OF TEXAS §
§
COUNTY OF GALVESTON §

WHEREAS, the 83rd Regular Session of the Texas Legislature enacted the Property Assessed Clean Energy Act, Texas Local Government Code Chapter 399 (the "PACE Act"), which allows the governing body of a local government, including a County, to designate an area of the territory of the local government as a region within which an authorized representative of a local government and the record owners of commercial, industrial, and large multifamily residential (5 or more dwelling units) real property may enter into written contracts to impose assessments on the property to repay the financing by the owners of permanent improvements fixed to the property intended to decrease energy or water consumption or demand;

WHEREAS, the installation or modification by property owners of qualified energy or water saving improvements to commercial, industrial, and large multifamily residential real property in Galveston County will further the goals of energy and water conservation without cost to the public;

WHEREAS, the Commissioners Court finds that third-party financing of energy and water conserving projects through contractual assessments maintained by County ("PACE financing") furthers essential government purposes, including but not limited to, economic development, reducing energy consumption and costs, conserving water resources, and reducing greenhouse gas emissions;

WHEREAS, the Commissioners Court adopted a Resolution of Intent to establish a PACE program for Galveston County on December 21, 2018, including a reference to the report on the proposed program prepared as required by Section 399.009 of the PACE Act and made the report available to the public on the County website and for inspection in the County Judge's office;

WHEREAS, The Commissioners Court finds that the administration of the PACE program by a qualified non-profit organization as an independent third-party Authorized Representative contracted by County and compensated by application and administration fees paid by the participating property owners, will enable the program to be administered without use of County resources, will assure the objectives of impartiality and confidentiality of owner information, and will be convenient and advantageous to County; and

WHEREAS, the Commissioners Court also finds that because no County funds will be expended for PACE financing of the Authorized Representative's services, the selection of such an independent third-party Authorized Representative is not subject to the Professional Services Procurement Act or other County purchasing requirements; and

WHEREAS, the Commissioners Court held a public hearing on January 14, 2019 at 9:30am in the Commissioners Courtroom, 722 Moody, County Courthouse, Galveston, TX 77550, at which the public hearing could comment on the proposed program, including the report available for public inspection as mentioned above and as required by Section 399.008(a)(2):

NOW THEREFORE, be it resolved by the Commissioners Court of Galveston County that:

1. Recitals. The recitals to this Resolution are true and correct and are incorporated into this resolution for all purposes.

2. Establishment of Program. Galveston County hereby adopts this Resolution Establishing the Galveston County Property Assessed Clean Energy Program ("Galveston County PACE"), herein called "the Program," and finds that financing qualified projects through contractual assessments pursuant to the PACE Act is a valid public purpose and is convenient and advantageous to Galveston County and its citizens.

3. Contractual Assessments. Galveston County will, at the property owner's request, impose contractual assessments on the property to repay PACE financing for qualified energy and water conserving projects available to owners of privately owned commercial, industrial, and large multifamily property.

4. Qualified Projects. The following types of projects are qualified projects for PACE financing that may be subject to such contractual assessments:

   Projects that (a) involve the installation or modification of a permanent improvement fixed to privately owned commercial, industrial, or residential real property with five (5) or more dwelling units, and (b) are intended to decrease energy or water consumption or demand, including a product, device, or interacting group of products or devices on the customer's side of the meter that uses energy technology to generate electricity, provide thermal energy, or regulate temperature.

   An assessment may not be imposed to repay the financing of facilities for undeveloped lots or lots undergoing development at the time of the assessment or the purchase or installation of products or devices not permanently fixed to real property.

5. Region. The boundaries of the entire geographic area within Galveston County's jurisdiction are included in the boundaries of the region where PACE financing and assessments can occur.

6. Third- Party Financing. Financing for qualified projects under the Program will be provided by qualified third-party lenders chosen by the owners. Such lenders will execute written contracts with the Authorized Representative to service the debt through assessments, as required by the PACE Act. The contracts will provide for the lenders to determine the financial ability of owners to fulfill the financial obligations to be repaid through assessments, advance the funds to owners on such terms as are agreed between the lenders and the owners for the installation or modification of qualified projects, and service the debt secured by the assessments, directly or through a servicer, by collecting payments from the owners pursuant to financing documents executed between the lenders and the owners. Galveston County will maintain and continue the assessments for the benefit of such lenders and will enforce the assessment lien for the benefit of a lender in the event of a default by an owner. Galveston County will not, at this time, provide financing of any sort for the Galveston County PACE program.

7. Authorized Representative. The Commissioners Court will designate qualified organization to act as Authorized Representatives with authority to enter into written contracts with the record owners of real property in Galveston County to impose assessments pursuant to the PACE Act to repay the financing of qualified projects on the owners' property, to enter into written contracts with the parties that provide third-party

financing for such projects to service the debts through assessments, and to file written notice of each contractual assessment in the real property records of the County, all on behalf of Galveston County. Third-party Authorized Representatives will comply with the County's administrative standards and certify to the County that the County's underwriting requirements and Technical Standards are satisfied in each PACE project. The Authorized Representatives may make technical and conforming updates to the form documents as necessary so long as all authorized representatives agree in advance, the County agrees to the changes in advance, and the changes are consistent with the resolution to establish the PACE program and the statute. The County Judge or his designee will be the liaison with the Authorized Representatives.

8. Enforcement. The County will enforce the collection of past due assessments and may contract with a qualified law firm to assist in collection efforts.

9. Report. The final report on the - PACE program, prepared in accordance with Section 399.009 of the Texas Local Government Code is attached and incorporated into this resolution. The County will post the resolution and report on the County website.

10. Amendment of Program. The Commissioners Court may amend the County PACE Program by resolution. However, another public hearing is required before the Program may be amended to provide for County financing of qualified improvements through assessments.

Adopted this 14 day of January 2019.

Honorable Mark Henry, County Judge

Darrell Apffel
Commissioner, Precinct 1

Joe Giusti
Commissioner, Precinct 2

Stephen Holmes
Commissioner, Precinct 3

Ken Clark
Commissioner, Precinct 4

**REPORT REQUIRED BY TEXAS LOCAL GOVERNMENT CODE SECTION 399.009**

**FOR PROPOSED GALVESTON COUNTY**

**PROPERTY ASSESSED CLEAN ENERGY (PACE) PROGRAM**

This Report is adopted by the Galveston County Commissioners Court for the Galveston County Property Assessed Clean Energy (PACE) Program (**the "Program"**) in accordance with the requirements of the Property Assessed Clean Energy Act (**the "PACE Act"**) as set forth in Texas Local Government Code Chapter 399.

Galveston County and its constituents benefit when older existing buildings are modified with new technology and equipment that increases energy efficiency and reduces water consumption. As described in this Report, Galveston County is establishing the commercial PACE Program to encourage private sector investment in energy efficiency and water conservation. The PACE Program will be offered to property owners on a strictly voluntary basis and will not require the use of any public funds or resources.

Authorized under the PACE Act enacted in 2013, the PACE program is an innovative financing program that enables private sector owners of commercial, industrial, and multi-family residential properties with five or more dwelling units to obtain low-cost, long-term loans to pay for water conservation, energy-efficiency improvements, and renewable energy retrofits. PACE loans provide up to 100% financing of all project costs, with little or no up-front out-of-pocket cost to the owner. The County has chosen, in part, to follow the administrative principles, program processes, and model documents of the uniform Texas "PACE in a Box" model program.[1]

Loans made under the Galveston PACE Program by independent lenders are secured by assessments on the property that are voluntarily imposed by local government at the request of the owner. Assessments may be amortized over the projected life of the improvements. The annual utility cost savings derived from improvements financed with PACE loans are expected to equal or exceed the amount of the annual assessment payments. In turn, these improvements can generate positive cash flow upon installation because the debt service will be less than the savings.

PACE assessments are tied to the property and follow title from one owner to the next. Each owner is responsible only for payment of the assessments accruing during its period of ownership. When the property is sold, the payment obligation for the remaining balance of the assessment is transferred automatically to the next owner. As a result, the program will help property owners overcome market barriers that often discourage investment in energy efficiency and water conservation improvements.

---

[1] https://www.keepingpaceintexas.org/pace-in-a-box

### 1. Eligible Properties

The Galveston County PACE program is a strictly voluntary program. All private sector owners of Eligible Properties located within the County's PACE region may participate in PACE financing. The entire territory of the County is designated as the region in which the Program is available. ***"Eligible Properties"*** include commercial, industrial, and multi-family residential properties with five or more dwelling units. Government, residential[2], and undeveloped property and property undergoing development at the time of the assessment are not Eligible Properties.

### 2. Qualified Improvements

PACE financing may be used to pay for Qualified Improvements to Eligible Properties. ***"Qualified Improvements"*** are permanent improvements intended to decrease water or energy consumption or demand, including devices on the customer's side of the meter that use energy technology to generate electricity, provide thermal energy, or regulate temperature. Under the PACE Act, products or devices that are not permanently fixed to real property are not Qualified Improvements.

The following upgrades may constitute Qualified Improvements:

- High efficiency heating, ventilating and air conditioning ("HVAC") systems
- High efficiency chillers, boilers, and furnaces
- High efficiency water heating systems
- Energy management systems and controls
- Distributed generation systems
- High efficiency lighting system upgrades
- Building enclosure and envelope improvements
- Water conservation and wastewater recovery and reuse systems
- Combustion and burner upgrades
- Heat recovery and steam traps
- Water management systems and controls (indoor and outdoor)
- High efficiency irrigation equipment

### 3. Benefits of PACE to Property Owners

The PACE program will enable owners of Eligible Properties to overcome traditional barriers to capital investments in energy efficiency and water conservation improvements, such as slow returns on investment, split incentives between landlords and tenants, and uncertainty of recouping the investment.

By financing Qualified Improvements through the program, property owners may achieve utility cost savings that exceed the amount of the assessment and reduce their exposure to utility price volatility. As a result, the value of the property will be enhanced. The owner will only be

---

[2] This encompasses single family residential and any multi-family properties with fewer than five units.

obligated to pay the assessment installments that accrue during its period of ownership. Property owners may also qualify for various rebate, tax credit, and incentive programs offered by utility providers and state or federal governmental authorities to encourage investments in energy efficiency and water conservation.

4. **Benefits of PACE to Galveston County**

The PACE Program benefits the entire County by improving our existing buildings, increasing property values, encouraging economic development, and saving energy and water, all without requiring any public funds.

Among other things, projects financed through PACE will:

- Enable property owners and occupants to save substantial amounts in utility costs,
- Reduce demand on the electricity grid,
- Mitigate greenhouse gas emissions associated with energy generation,
- Enhance the value and efficiency of existing buildings,
- Boost the local economy by creating new job opportunities and new business opportunities for contractors, engineers, commercial lenders, professionals, and equipment vendors and manufacturers;
- Increase business retention and expansion region by enabling cost effective energy and water saving updates to existing property,
- Improve productivity through optimized energy usage, and
- Support the State's water conservation plan and better enable the County to meet its water conservation goals.

Finally, through the reduction in energy consumption as a result of the PACE Program, there will be a decreased demand for power, resulting in lower emissions from power plants.

The PACE program requires minimal support from the County. It is designed to be self-sustaining and is administered by qualified third-party administrators. Furthermore, because the PACE program is not tax supported, it achieves all of the listed benefits without imposing a burden on the County's general fund.

Under the PACE Act, the establishment and operation of the program are governmental functions.[3] The 84th Texas Legislature added a provision to the PACE Act that explicitly shields from liability a local government and its employees, members of a governing body and any third party who enter into a contract with a local government to provide administrative services for a PACE program.[4] The 85th session of the Texas Legislature clarified that elected officials are afforded the same protections stablished by the 84th session of the legislature.[5]

---

[3] TX Local Gov't Code §399.003(b)

[4] TX. Local Gov't Code §399.019. In the 85th legislature, HB 2654 clarified that the personal immunity provisions apply to all elected officials performing rights and duties under chapter 399 of the Local Government Code.

[5] Acts 2017, 85th Leg., R.S., Ch. 864 (H.B. 2654), Sec. 1, eff. September 1, 2017.

### 5. The Benefits of PACE to Lenders

PACE financing is attractive to lenders because it creates very secure investments. Like a property tax lien, the assessment lien securing the PACE financing has priority over other liens on the property. Therefore, the risk of loss from non-payment is low compared to most other types of loans. PACE assessments provide lenders with an attractive new product to assist existing and new customers in addressing an almost universal pent-up demand for needed but postponed equipment modernization. In order to protect the holders of existing mortgage loans on the property, the PACE Act requires their written consent to the PACE assessment as a condition to obtaining PACE financing.

### 6. The Benefits of PACE to Contractors, Engineers, and Manufacturers

The PACE Program provides an attractive source of financing for water and energy saving retrofits and upgrades, thereby encouraging property owners to make substantial investments in existing commercial and industrial buildings. As a result, PACE will unlock business opportunities for contractors, engineers, and manufacturers throughout the commercial and industrial sectors.

### 7. Administration of the PACE Program

The PACE Act authorizes the County to enter into a contract with a third party to provide administrative services for the PACE program and act as the representative of the County in executing the contracts with property owners and lenders (the ***"Authorized Representative"***). Galveston County has chosen to delegate administration of the PACE program to qualified third-party organizations that can administer the program at no cost to the County.

Authorized Representatives serve as an extension of the local government staff to provide oversight of the Program to ensure best practices and consumer protections at the lowest possible cost to the property owner in a transparent and ethical manner and to provide public education and outreach. Authorized representatives must agree to the County's administrative, underwriting and technical standards.

The Galveston County PACE Program is offered by the County and administered by Authorized Representatives of the County. Because the program is created by the County as a benefit to constituents and because the County imposes, maintains and enforces assessments on behalf of the property owners, constituents have a reasonable expectation that the program will be administered ethically and transparently. To that end, Authorized Representatives are expected to adhere to the highest ethical standards on behalf of the County, including:

a. Financial Transparency and Prohibition of Self-Dealing. The Authorized Representative (including its officers, directors, partners, employees, affiliates and

other similarly related parties, family member, or any company that the Authorized Representative owns or has a financial interest in) may not:

1. have an ownership or financial interest in any Project or any person or company involved in the project, the real property, or its owner;
2. review, approve or participate in funding any project in which it has or may have a direct or indirect interest or may derive a potential financial benefit (apart from authorized application and administration fees); or
3. receive or accept any financial benefit from any organization involved in any PACE project within the jurisdiction of the local government (other than. application and administration fees or other appropriate travel, event sponsorships, or permitted behavior under the Ethics Commission's A Guide to Ethics Law for State Officers and Employees[6]).

b. Revenue Disclosure. The authorized representative must publicly disclose the sources of all revenue exceeding $5,000 derived by it on an annual basis

c. Fee Approval and Disclosure. All fees charged or received in conjunction with administration or a PACE project under the Galveston County PACE program by the Authorized Representative (including its officers, directors, partners, employees, affiliates and other similarly related parties, family member, or any company that the Authorized Representative owns or has a financial interest in) must be approved by the local government consistent with the PACE Act[7], publicly disclosed, and reviewed annually by the local government.

d. Marketplace Distortion. The Authorized Representative (including its officers, directors, partners, employees, affiliates and other similarly related parties) shall not:

1. Provide or offer to provide any commercial services of any nature for or in connection with PACE projects located within the jurisdiction of the local government; or
2. Require property owners to obtain services from specific, favored vendors other than objective minimum standards for quality assurance that apply to all parties;

e. Compliance with Local Employee Conflicts of Interest and Disclosure Policies. The Authorized Representative Must at all times:

1. comply with the local government's employee conflicts of interest and disclosure policies; and

---

6 https://www.ethics.state.tx.us/guides/Go-e.pdf

7 TX Local Gov't Code §399.008(e)

2. comply with all of the conflicts of interest and disclosure requirements applicable to local government employees under Texas Association of Counties' 2017 Short Answers to Common Questions prepared by Association Legal Department.[8]

f. Stakeholder Inclusion. The Authorized Representative will endeavor provide education, outreach and training to all potential stakeholders including underserved communities and small businesses and describe these efforts annually to the County.

Authorized Representatives will be funded by administrative fees paid by the property owners, charitable grants, or other authorized sources of revenue. Authorized Representatives will not receive compensation or reimbursement from the County.

Periodic updates to the standard form documents (described in Section 9) will be necessary as the program evolves, incorporating best practices and standardizing the PACE documents across various PACE programs. The Authorized Representatives will be tasked with maintaining the form documents and making technical and conforming updates as necessary so long as all authorized representatives and the County approve of the changes to the form documents in advance and the changes are consistent with the resolution to establish the PACE program and the Texas PACE Act.

**8. Eligible Lenders**

The PACE Act does not set criteria for financial institutions or investors to be PACE lenders. The County will follow best practices of other PACE programs and the Texas "PACE in a Box" model program by requiring that lenders be:

- Any federally insured depository institution such as a bank, savings bank, savings and loan association and federal or state credit union;
- Any insurance company authorized to conduct business in one or more states;
- Any registered investment company, registered business development company, or a Small Business Investment Company;
- Any publicly traded entity;
- Any private entity that:
  - Has a minimum net worth of $5 million; and
  - Has at least three years' experience in business or industrial lending or commercial real estate lending (including multifamily lending), or has a lending officer that has at least three years' experience in business or industrial lending or commercial real estate lending;
  - Can provide independent certification as to availability of funds; and

[8] https://www.county.org/member-services/legal-resources/publications/Documents/Disclosure%20of%20Certain%20Business%20Relationships.pdf

- o Has the ability to carry out, either directly or through a servicer, the bookkeeping and customer service work necessary to manage the assessment accounts.

Any financially stable entity with the ability to carry out, either directly or through a servicer, the obligations of the lender under the PACE Lender Contract may participate in the Program. The property owner, not the County or the Authorized Representative, selects the lender and authorized representatives may not limit a property owner's choice of qualified lender.

The Authorized Representative will not guarantee or imply that funding will automatically be provided from a third-party lender, imply or create any endorsement of, or responsibility for, any lender; or create any type of express or implied favoritism for any eligible lender.

### 9. Components of the PACE Program

As required under Section 399.009 of the PACE Act, the following components describe the PACE Program:

a. Map of Region. A map of the boundaries of the region included in the program is attached to this Report as Exhibit 1. The region encompasses the entire territory within the County limits.

b. Form Contract with Owner. A form contract between County and the record owner of Eligible Property is attached as Exhibit 2. It specifies the terms of the assessment under the PACE Program and the financing to be provided by an Eligible Lender of the property owner's choosing.

c. Form Contract with Lender. A form contract between County and an Eligible Lender chosen by a property owner is attached to this Report as Exhibit 3. It specifies the terms of financing and servicing of the debt through assessments.

d. Form Notice of Contractual Assessment Lien. A form Notice of Assessment Lien Pursuant to Property Assessed Clean Energy Act to be filed with the County Clerk for each Qualified Project is attached to this Report as Exhibit 4.

e. Qualified Improvements. The following types of projects are qualified improvements that may be subject to contractual assessments under the PACE program:

> Projects that (a) involve the installation or modification of a permanent improvement fixed to privately owned commercial, industrial or residential real property with five (5) or more dwelling units;[9] and (b) are intended to decrease energy or water consumption or demand by installing a product, device, or

[9] TX. Local Gov't Code §399.002(5).

> interacting group of products or devices on the customer's side of the meter that uses energy technology to generate electricity, provide thermal energy, or regulate temperature. [10]

A sample list of potential Qualified Improvements appears in Section 2 above.

The PACE program may not be used to finance improvements to undeveloped lots or lots undergoing development at the time of the assessment, or for the purchase or installation of products or devices not permanently fixed to real property.[11]

k. Plans for Insuring Sufficient Capital.[12] Independent qualified lenders will make advances to finance Qualified Improvements. Financing documents executed between owners and lenders will specify the terms of the financing. The qualified lenders will ensure that property owners demonstrate the financial ability to fulfill the financial obligations to be repaid through contractual assessments. Authorized Representatives may list qualified lenders on their websites to help property owners identify capital providers. Such web pages must state that the list is not exclusive and the property owner may use any qualified lender.

l. No Use of Bonds or Public Funds. Galveston County does not intend to issue bonds or use any other public monies to fund PACE projects. Property owners will obtain all financing from the Eligible Lenders they choose.

m. Limit on Length of Financing. The PACE Act prohibits the assessment payment period from exceeding the useful life of the Qualified Improvement that is the basis for the assessment.[13] As part of the application process, the property owners will submit an independent third-party review prepared by a licensed engineer showing the water or energy baseline conditions and the projected water or energy savings pursuant to the Technical Standards Manual of the PACE in a Box model program.[14]

n. Application Process. The Authorized Representative will accept applications from property owners seeking to finance Qualified Improvements under the program. Each application must be accompanied by the required application fee and must include:

(1) A description of the specific Qualified Improvements to be installed or modified,

---

10 TX. Local Gov't Code §399.002(3).

11 TX. Local Gov't Code §399.004.

12 The Texas PACE Authority's website (www.texaspaceauthority.org) offers a non-exhaustive list of interested and qualified lenders to assist property owners in funding PACE projects in Texas.

13 Chapter 399 section 399.009(a)(8)

14 https://www.keepingpaceintexas.org/library/document-library

(2) A description of the specific real property to which the Qualified Improvements will be permanently fixed, and
(3) The total amount of financing, including any transaction costs, to be repaid through assessments.

Based on this information, the Authorized Representative may issue a preliminary letter indicating that, subject to verification of all requirements at closing, the proposed project appears to meet program requirements. Based on this preliminary letter, the property owner may initiate an independent third-party review of the project and submit the project to Eligible Lenders for approval of financing.

The property owner is expected to provide the following documentation to the Authorized Representative prior to closing of the PACE financing:

(1) A Report conducted by a qualified, independent third-party reviewer, showing water or energy baseline conditions and the projected water or energy savings, or the amount of renewable energy generated attributable to the project;
(2) Such financial information about the owner and the property as the lender chosen by the owner deems necessary to determine that the owner has demonstrated the financial ability to fulfill the financial obligations to be paid through assessments; and
(3) All other information required by the Authorized Representative pursuant to the resolutions, orders, and ordinances of Galveston County.

o. Financial Eligibility Requirements. The Authorized Representative will determine whether the owner, the property and the improvements are eligible for financing under the Program. The Eligible Lender chosen by the owner has the responsibility to determine whether the owner has demonstrated the financial ability to repay the financial obligations to be collected through contractual assessments. The demonstration of financial ability must be based on appropriate underwriting factors, including the following:

(1) verification that the person requesting to participate in the program is the legal record owner of the benefitted property,
(2) the applicant is current on mortgage and property tax payments,
(3) the applicant is not insolvent or in bankruptcy proceedings,
(4) the title of the benefitted property is not in dispute; and
(5) there is an appropriate ratio of the amount of the assessment to the assessed value of the property. Galveston County has determined that a ratio of 20% of loan to assessed value of the property is appropriate but acknowledges that in some circumstances a variance of this ratio may be appropriate. The Authorized Representative will consider appropriate factors in a variance request, including:

(a) The existing debt to assessed value of the property prior to closing the PACE financing,
(b). The estimated fair market value of the property and how the value was determined (e.g., market appraisal, desktop appraisal, insurance valuation, etc.); and
(c). The estimated post-renovation fair market value of the property (including an explanation on how this value was determined)

Galveston County has determined that to be eligible for PACE financing, the projected savings derived from the Qualified Improvement should be greater than the total cost of the PACE project and financing over the life of the assessment, i.e., the saving-to-investment ratio (SIR) should be greater than one, SIR>1. A lender or an owner may request a waiver in writing for a project with an SIR < 1. With the approval of the County, the Authorized Representative may grant a variance request after considering appropriate factors, including:

(a). Whether there are other environmental benefits such as air or water quality or resiliency benefits that are not captured in the SIR analysis;
(b) Whether the proposed Qualified Improvements generate marketable environmental credits that can be monetized;
(c). The SIR over the useful life of the equipment, rather than the term of the assessment;
(d). The impact of a variance request on any affected third parties; and
(e) Any other information the owner and lender wish to submit regarding the impact of the Qualified Improvements on the community.

p. Mortgage Holder Notice and Consent. As a condition to the execution of a contract imposing an assessment under the Program, the holder of any mortgage lien on the property must be given at least 30 days' notice of the owner's intention to participate in the Program and the owner must obtain the written consent of all mortgage holders.[15]

q. Imposition of Assessment. The Authorized Representative may enter into a written contract with the owner of a Qualified Property to impose an assessment on the owner's property to repay the financing of Qualified Improvements, only after:

---

[15] TX. Local Gov't Code §399.010.

(1) The property owner delivers to the Authorized Representative written consent of all mortgage lien holders;
(2) The Authorized Representative's determination that the owner and the property are eligible to participate in the program, that the proposed improvements are reasonably likely to decrease energy or water consumption or demand, and that the period of the requested assessment does not exceed the useful life of the Qualified Improvements; and
(3) The Eligible Lender notifies the Authorized Representative that the owner has demonstrated the financial ability to fulfill the financial obligations to be repaid through contractual assessments.

The Authorized Representative will file a Notice of Contractual Assessment Lien Pursuant to Property Assessed Clean Energy Act in substantially the form in Exhibit 4 in the Official Public Records of the County where the Eligible Property is located, as notice to the public of the assessment from the date of filing.

r. Collection of Assessments. The written contract between the Authorized Representative and the property owner and the Notice of Contractual Assessment Lien will incorporate the terms of the financing documents executed between the property owner and the lender to repay the financing secured by the assessment. The lender will advance financing to the owner, and the terms for repayment will be such terms as agreed between the lender and the owner. Under the form lender contract attached as Exhibit 3, the lender or a designated servicer will service the debt secured by the assessment.[16]

With funds from the lender, the property owner will purchase directly the equipment and materials for the Qualified Improvement and contract directly, including through lease, power purchase agreement, or other service contract, for the installation or modification of the Qualified Improvements. Alternatively, the lender may advance progress payments to the property owner as the Qualified Improvements are installed.

The lender will collect the owner's installments to repay the debt and remit to the Authorized Representative any administrative fees due. The lender will have the right to assign or transfer the right to receive the installments of the debt secured by the assessment or to require the local government to enforce the lien securing the assessment in the event of a default, provided all of the following conditions are met:

[16] The servicer will be responsible for maintaining payment records, account balances, and reporting to the Authorized Representative as required.

(1) The assignment or transfer is made to an Eligible Lender, as defined above;
(2) The property owner and the Authorized Representative are notified in writing of the assignment or transfer and the address to which payment of the future installments should be mailed at least 30 days before the next installment is due according to the schedule for repayment of the debt; and
(3) The assignee or transferee executes an explicit written assumption according to the financing documents of all of the lender's obligations under the lender contract related to the receipt of the installments or the enforcement of the assessment lien.

s. Verification Review. After a Qualified Improvement is completed, the Authorized Representative will require the property owner to provide verification by a qualified independent third-party reviewer that the Qualified Improvement was properly completed and is operating as intended.[17] The verification report conclusively establishes that the improvement is a Qualified Improvement and the project is qualified under the PACE program.[18]

t. Marketing and Education Services. The Authorized Representative will provide service provider training workshops for contractors, engineers, property managers and other stakeholders, provide outreach and education for all stakeholders including presentations, conference booths and individual meetings, and provide written and electronic materials such as case studies, flyers, and webinars. Galveston County may choose to collaboratively promote energy and water conservation and economic development to facilitate marketing, outreach and education services for the PACE program.

u. Quality Assurance and Antifraud Measures. The Authorized Representative will institute quality assurance and antifraud measures for the Program. The Authorized Representative will review each PACE application for completeness and supporting documents through independent review and verification procedures. Measures will be put in place to provide safeguards, including a review of the energy and water savings baseline and certification of compliance with the technical standards manual from an independent third-party reviewer (ITPR), who must be a registered professional engineer. This review will include a site visit, report, and a letter from the ITPR certifying that he or she has no financial interest in the project. After the construction of the project is complete, an ITPR will conduct a final site inspection and determine whether the project was completed and is operating properly.

17 TX Local Gov't Code §399.011.
18 TX Local Government Code §399.011(a-1)

v. Delinquency. Under the terms of the form lender contract attached as Exhibit 3, if a property owner fails to pay an agreed installment when due, the lender agrees to take at least the following steps to collect the delinquent installment:

(1) Mail to the owner a written notice of delinquency and demand for payment by both certified mail (return receipt requested) and first-class mail, and
(2) Mail to the owner and the holder of any mortgage lien on the property a second notice of delinquency and demand for payment by both certified mail (return receipt requested) and first-class mail, at least 30 days after the date of the first notice if the delinquency is continuing.

If the owner fails to cure the delinquency within 30 days after mailing the second notice of delinquency, the lender may notify the Authorized Representative of the owner's default. Pursuant to Texas Local Government Code Section 399.014(c), the Authorized Representative will initiate steps on behalf of the County to enforce the assessment lien in the same manner as a property tax lien against real property may be enforced, to the extent the enforcement is consistent with Section 50, Article XVI, of the Texas Constitution. Delinquent installments will incur penalties and interest in the same manner and at the same rate as delinquent property taxes, according to Texas Local Government Code Section 399.014(d), and such statutory penalties and interest will be due to the County to offset the cost of collection.

If the County files suit to enforce collection of a delinquent installment, it may also recover costs and expenses, including attorney's fees, in the same manner and at the same rate as in suit to collect a delinquent property tax. If a delinquent installment of an assessment is collected after the filing of a suit, the County will remit to the lender the net amount of the delinquent installments and contractual interest collected and remit to the Authorized Representative the amount of any administrative fees collected but will retain any statutory penalties, interest, and attorney's fees collected.

# EXHIBIT 1
# MAP OF GALVESTON COUNTY PACE REGION



## EXHIBIT 2

## FORM OWNER CONTRACT

THIS PROPERTY ASSESSED CLEAN ENERGY ("PACE") OWNER CONTRACT ("**Owner Contract**") is made as of the ________ day of _________, ______, by and between the County of Gavleston, Texas ("**Local Government**"), and ____________________________ ("**Property Owner**").

RECITALS

A. The Property Assessed Clean Energy Act ("**PACE Act**"), Texas Local Government Code Chapter 399, authorizes the governing body of a local government to establish a program and designate a region within the local government's jurisdiction within which an authorized representative of the local government may enter into written contracts with the record owners of commercial, industrial, and large multifamily residential (5 or more dwelling units) real property to impose assessments on the property to finance the cost of permanent improvements fixed to the property intended to decrease water or energy consumption or demand.

B. Local Government has established a program under the PACE Act pursuant to a resolution dated _________________, adopted by the Commissioners Court (the "**PACE Program**"), and has designated ________________________________ ("**Authorized Representative**") as the representative authorized to enter into the Assessment, Owner Contract and Lender Contract described herein, and has designated the entire territory within the County of Galveston jurisdiction as a region ("Region") within which the Authorized Representative and the record owners of such real property may enter into written contracts to impose assessments to repay the financing by owners of qualified improvements on the owner's property pursuant to the PACE Program.

C. Property Owner is the legal and record owner of the qualified "real property," as defined in Section 399.002 of the PACE Act, within the Region located at ___________________, ___________, Texas, _____-____ (the "**Property**").

D. Pursuant to Application number _______________, Property Owner has applied to Local Government to participate in the PACE Program by installing or modifying on the Property certain permanent improvements which are intended to decrease water or energy consumption or demand, and which are or will be fixed to the Property as "qualified improvements", as defined in Section 399.002 of the PACE Act (the "**Qualified Improvements**"). The installation or modification of such Qualified Improvements on the Property will be a "qualified project" as defined in Section 399.002 of the PACE Act (the "**Project**"). Property Owner has requested that Local Government enter into this Owner Contract pursuant to the PACE Act and the PACE Program and has requested Local Government to impose an assessment (the "**Assessment**") on the Property as set forth in the Notice Of Contractual Assessment Lien Pursuant To Property Assessed Clean Energy Act to be filed in the in the Official Public Records of Galveston County, Texas (the "**Notice of Contractual Assessment Lien**"), a copy of which is attached hereto as Exhibit A and made a part hereof, to

repay the financing of such Qualified Improvements. The Property, Qualified Improvements and Assessment are more fully described in the Notice of Contractual Assessment Lien.

E. The financing of such Qualified Improvements will be provided to Property Owner by ______________________________ ("**Lender**"), a qualified lender selected by Property Owner, pursuant to a written contract executed by Lender and Local Government as required by Section 399.006(c) of the PACE Act and by the PACE Program (the "**Lender Contract**"). The financing will include only those costs and fees for which an assessment may be imposed under the PACE Act. Local Government has agreed to maintain and continue the Assessment for the benefit of Lender until such financing is repaid in full and to release the Assessment upon notice from Lender of such payment, or foreclose the lien securing the Assessment for the benefit of Lender upon notice from Lender of a default by Property Owner.

F. As required by Section 399.010 of the PACE Act, Property Owner notified the holder(s) of any mortgage liens on the Property at least thirty (30) days prior to the date of this Owner Contract of Property Owner's intention to participate in the PACE Program. The written consent of each mortgage holder to the Assessment was obtained prior to the date of this Owner Contract and is attached hereto as Exhibit B and made a part hereof.

AGREEMENT

The parties agree as follows:

1. Imposition of Assessment. In consideration for the financing advanced or to be advanced to Property Owner by Lender for the Project under the PACE Program pursuant to the Lender Contract, Property Owner hereby requests and agrees to the imposition by Local Government of the Assessment in the amount of $________________, as set forth in the Notice of Contractual Assessment Lien, including all interest, fees, penalties, costs, and other sums due under and/or authorized by the PACE Act, PACE Program and the financing documents between Property Owner and Lender (the "**Financing Documents**") which are described or listed on Exhibit C attached hereto and made a part hereof by reference. Property Owner promises and agrees to pay such amount and interest to Local Government, in care of or as directed by Lender, in satisfaction of the Assessment imposed pursuant to the Owner Contract and the PACE Act. Accordingly, Local Government hereby imposes the Assessment on the Property to secure the payment of such amount, in accordance with the requirements of the PACE Program and the provisions of the PACE Act.

2. Maintenance and Enforcement of Assessment. In consideration for Lender's agreement to advance financing to Property Owner for the Project pursuant to the Financing Documents, Local Government agrees to maintain and continue the Assessment on the Property for the benefit of Lender until the Assessment, including all interest, fees, penalties, costs, and other sums due under and/or authorized by the PACE Act, PACE Program and the Financing Documents are paid in full, and to release the Assessment upon notice from Lender of such payment. Local Government agrees to undertake reasonable efforts to enforce the Assessment against the Property for the benefit of Lender in the event of a default by Property Owner. Local Government agrees to send an annual notice of assessment to the Property Owner each year there is a PACE lien balance.

3. Installments. The Assessment, including the amount financed and contractual interest, is due and payable in installments as set forth in the Notice of Contractual Assessment Lien and the Financing Documents ("**Installments**"). The Assessment shall include: (1) an application fee paid by Property Owner to Authorized Representative at loan closing, and (2) a recurring administration fee paid by Property Owner to the Authorized Representative. The recurring administration fee amount shall be collected by Lender and paid to the Authorized Representative within thirty (30) days of receipt by Lender, unless otherwise agreed to in writing by the Program Administrator. The amounts due to the Authorized Representative are identified in Exhibit C hereto. As required by Section 399.009(a) (8) of the PACE Act, the period during which such Installments are payable does not exceed the useful life of the Project. When the Assessment together with any prepayment premium, and/or default penalties and interest, if any, has been paid in full, Local Government's rights under this Owner Contract will cease and terminate. Upon notice from Lender that all amounts owing have been paid in full, Local Government will execute a release of the Assessment and this Owner Contract. Thereafter, the Authorized Representative will record the release.

4. Assignment of Right to Receive Installments. Lender will have the right to assign or transfer the right to receive the Installments of the financing secured by the Assessment, provided all of the following conditions are met:

(a) The assignment or transfer is made to a qualified lender as defined in the Lender Contract;

(b) Property Owner and Authorized Representative are notified in writing of the assignment or transfer and the address to which payment of the future Installments should be mailed at least 30 days before the next Installment is due according to the payment schedule included in the Notice of Contractual Assessment Lien and the Financing Documents; and

(c) The assignee or transferee, by operation of the Financing Documents or otherwise, written evidence of which shall be provided to Authorized Representative, assumes Lender's obligations under this Lender Contract.

Upon written notice to Property Owner and Authorized Representative of an assignment or transfer of the right to receive the Installments that meets all of these conditions, the assignor shall be released of all of the obligations of the Lender under such Lender Contract accruing after the date of the assignment assumed by and transferred to such assignee or transferee and all of such obligations shall be assumed by and transferred to the assignee. Any attempt to assign or transfer the right to receive the Installments that does not meet all of these conditions is void.

5. Lien Priority and Enforcement. Pursuant to Section 399.014 of the PACE Act,

(a) Delinquent Installments of the Assessment will incur interest and penalties in the same manner and in the same amount as delinquent property taxes, viz., a delinquent Installment incurs a penalty of 6% of the amount of the Installment for the first calendar month it is delinquent plus 1% for each additional month or portion of a month the Installment remains unpaid prior to July 1 of the year in which it becomes

delinquent. However, an Installment delinquent on July 1 incurs a total penalty of 12% of the amount of the delinquent Installment without regard to the number of months it has been delinquent. A delinquent Installment will also accrue interest at the rate of 1% for each month or portion of a month that the Installment remains unpaid. Statutory penalties and statutory interest payable under this paragraph will be retained by Local Government to compensate it for the cost of enforcing the Assessment. Additional interest at any default rate imposed by Lender pursuant to the Financing Documents, along with any other fees and charges that become due pursuant to the Financing Documents may be assessed by Lender and retained by Lender.

(b) The Assessment, together with any penalties and interest thereon,

(1) is a first and prior lien against the Property from the date on which the Notice of Contractual Assessment Lien is filed in the Official Public Records of Galveston County as provided by Section 399.014 of the PACE Act, until the financing secured by the Assessment and any penalties and interest are paid; and

(2) such lien has the same priority status as a lien for any other ad valorem tax, pursuant to Section 399.014(a)(2) of the PACE Act.

(c) The lien created by the Assessment runs with the land, and according to Section 399.014(b) of the PACE Act, any portion of the Assessment that has not yet become due is not eliminated by foreclosure of: (i) a property tax lien, or (ii) the lien for any past due portion of the Assessment. In the event of a sale or transfer of the Property by Property Owner, the obligation for the Assessment and the Property Owner's obligations under the Financing Documents will be transferred to the succeeding owner without recourse on Local Government or the Authorized Representative.

(d) In the event of a default by Property Owner in payment of the Installments called for by the Financing Documents, the lien created by the Assessment will be enforced by Local Government in the same manner according to Texas Tax Code Secs. 33.41 to 34.23 that a property tax lien against real property may be enforced by a local government, to the extent the enforcement is consistent with Section 50, Article XVI, Texas Constitution.

(e) In a suit to collect a delinquent Installment of the Assessment, Local Government will be entitled to recover costs and expenses, including attorney's fees in the amount of 15% of the total amount of the delinquent Installment, penalties, and interest due, in the same manner according to Texas Tax Code Sec. 33.48 as in a suit to collect a delinquent property tax. Lender shall be entitled to any additional sums due to it under the Financing Documents in connection with a suit to collect a delinquent Installment of the Assessment.

(f) After written notice of the Assessment is recorded in the real property records of the county in which the Property is located as provided under Section 399.013 of the PACE Act, the lien created by the Assessment may not be contested on the basis

that the improvement is not a "qualified improvement" or the project is not a "qualified project", as such terms are defined in Section 399.002 of the PACE Act.

6. Written Contract Required by PACE Act. This Owner Contract constitutes a written contract for the Assessment between the Property Owner and Local Government as required by Section 399.005 of the PACE Act. The Notice of Contractual Assessment Lien will be recorded in the Official Public Records of Galveston County as notice of the contractual Assessment, in accordance with the requirements of Section 399.013 of the PACE Act.

7. Qualified Improvements. Property Owner agrees that all improvements purchased, constructed and/or installed through financing obtained pursuant to this Owner Contract shall be permanently affixed to the Property and will transfer with the Property to the transferee in the event of and sale or assignment of the Property.

8. Water or Energy Savings. For so long as the Assessment encumbers the Property, Property Owner agrees on or before January 31st of each year, to report to Authorized Representative the water or energy savings realized through the Project in accordance with the reporting requirements established by the Local Government.

9. Construction and Definitions. This Owner Contract is to be construed in accordance with and with reference to the PACE Program and PACE Act. Terms used herein, and not otherwise defined herein, shall have the meanings ascribed to them in: (1) the PACE Program, and/or (2) the PACE Act.

10. Binding Effect. This Owner Contract inures to the benefit of Local Government and is binding upon Property Owner, its heirs, successors, and assigns.

11. Notices. All notices and other communications required or permitted by this Owner Contract shall be in writing and mailed by certified mail, return receipt requested, addressed to the other party at its address shown below the signature of such party or at such other address as such party may from time to time designate in writing to the other party, and shall be effective from the date of receipt.

12. Governing Law. This Owner Contract shall in all respects be governed by and construed in accordance with the laws of the State of Texas.

13. Entire Agreement. This Owner Contract constitutes the entire agreement between Local Government and Property Owner with respect to the subject matter hereof and may not be amended or altered in any manner except by a document in writing executed by both parties.

14. Further Assurances. Property Owner further covenants and agrees to do, execute and deliver, or cause to be done, executed, and delivered all such further acts for implementing the intention of this Owner Contract as may be reasonably necessary or required.

15. Captions. Paragraph and section titles are for convenience of reference only and shall not be of any legal effect.

16. Interest. Interest and penalties in the event of default, as provided above, are explicitly authorized by Section 399.014(d) of the PACE Act. However, in no event will the total amount of interest on the Assessment, including statutory interest payable to Local Government and contractual interest payable to Lender under the Financing Documents, exceed the maximum amount or rate of nonusurious interest that may be contracted for, charged, or collected under Texas law (the "usury limit"). If the total amount of interest payable to Local Government and Lender exceeds the usury limit, the interest payable to Local Government will be reduced and any interest in excess of the usury limit will be credited to the amount payable to Local Government or refunded. This provision overrides any conflicting provisions in this Owner Contract.

17. Counterparts. This Owner Contract may be executed in any number of counterparts, each counterpart may be delivered originally or by electronic transmission, all of which when taken together shall constitute one agreement binding on the parties, notwithstanding that all parties are not signatories to the same counterpart.

18. Costs. No provisions of this Owner Contract will require Local Government to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder.

19. Construction Terms. If the Lender Contract includes requirements related to construction of the Project and disbursement of Financing, such requirements are set forth in Exhibit D attached hereto and incorporated herein by reference. Such requirements may include, among other things, (1) the disbursement schedule and (2) any holdback amount to be funded following verification of final project completion.

**PROPERTY OWNER:**

______________________________

By:____________________________

Name: ______________________

Title: ______________________

Address: ______________________

______________________

**ACKNOWLEDGEMENT**

STATE OF TEXAS §

COUNTY OF ________ §

This PACE Owner Contract pursuant to Property Assessed Clean Energy Act was acknowledged before me on ______________, ________ by ____________________________, ____________________________, on behalf of ________________.

______________________________

______________________________(print name)

NOTARY PUBLIC, STATE OF TEXAS

**LOCAL GOVERNMENT:**

COUNTY OF GALVESTON, TEXAS

By:______________________________
AUTHORIZED REPRESENTATIVE
Pursuant to Tex. Local Gov't Code §399.006(b)

Name: ________________________

Title: ________________________

Address: ________________________

________________________

**ACKNOWLEDGEMENT**

STATE OF TEXAS §

COUNTY OF ________ §

This PACE Owner Contract pursuant to Property Assessed Clean Energy Act was acknowledged before me on _____________, ________ by ____________________________, ____________________________, on behalf of ________________, Texas.

______________________________________________

______________________________(print name)

NOTARY PUBLIC, STATE OF TEXAS

# EXHIBIT A

## NOTICE OF CONTRACTUAL ASSESSMENT LIEN PURSUANT TO PROPERTY ASSESSED CLEAN ENERGY ACT

**EXHIBIT B**

**MORTGAGE HOLDER(S) CONSENT**

# EXHIBIT C

## FINANCING DOCUMENTS

Assessment Payment Schedule

Assessment Total:
Payment Frequency:

| Payment Date | Total Payment | Principal Paid | Interest Paid | Administration Fee | Remaining Balance |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Financing Documents

| Document Title | Parties | Date Executed |
|---|---|---|
| | | |

EXHIBIT D

CONSTRUCTION TERMS

[if applicable]

| Date | Draw down Amount | Purpose |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

## EXHIBIT 3
## FORM LENDER CONTRACT

THIS PROPERTY ASSESSED CLEAN ENERGY ("PACE") LENDER CONTRACT (the "**Lender Contract**") is made as of the _________ day of ___________, ________, by and between the County of Galveston, Texas ("**Local Government**") and ____________________________ ("**Lender**").

RECITALS

A. The Property Assessed Clean Energy Act ("**PACE Act**"), Texas Local Government Code Chapter 399, authorizes the governing body of a local government to establish a program and designate a region within the local government's jurisdiction within which an authorized representative of the local government may enter into written contracts with the record owners of commercial, industrial, agricultural, and large multifamily residential (5 or more dwelling units) real property to impose assessments on the property to finance the cost of permanent improvements fixed to the property intended to decrease water or energy consumption or demand.

B. Local Government has established a program under the PACE Act pursuant to a resolution dated ______________, adopted by the Commissioners Court (the "**PACE Program**"), and has designated ________________________________ ("**Authorized Representative**") as the representative authorized to enter into the Assessment, Owner Contract and Lender Contract described herein, and has designated the entire territory within the County of Galveston, Texas jurisdiction as a region ("**Region**") within which the Authorized Representative and the record owners of such real property may enter into written contracts to impose assessments to repay the financing by owners of qualified improvements on the owner's property pursuant to the PACE Program.

C. Pursuant to Application number _______________, ______________________ ("**Property Owner**") has applied to Local Government to participate in the PACE Program with respect to certain real property located at ____________________, __________, Texas, ______ (the "**Property**") by installing or modifying on the Property certain permanent improvements which are intended to decrease water or energy consumption or demand, and which are or will be fixed to the Property as "qualified improvements", as defined in Section 399.002 of the PACE Act (the "**Qualified Improvements**"). The installation or modification of such Qualified Improvements on the Property will be a "qualified project" as defined in Section 399.002 of the PACE Act (the "**Project**").

D. Property Owner and Local Government have entered into a written contract as required by Section 399.005 of the PACE Act, a copy of which is attached hereto as Exhibit A and made a part hereof (the "**Owner Contract**"), in which Property Owner has requested that Local Government impose an assessment (the "**Assessment**") on the Property as set forth in the Notice Of Contractual Assessment Lien Pursuant To Property Assessed Clean Energy Act to be filed in the in the Official Public Records of Galveston County, Texas (the "**Notice of Contractual Assessment Lien**"), a copy of which is attached to the Owner Contract as Exhibit

A, to repay the financing of such Qualified Improvements. The Property, Qualified Improvements and Assessment are more fully described in the Notice of Contractual Assessment Lien.

E. Financing for the Project (the "**Financing**") will be provided to Property Owner by Lender in accordance with financing documents which are described or listed on Exhibit B attached hereto and made a part hereof (the "**Financing Documents**"). Such Financing includes only those costs and fees for which an assessment may be imposed under the PACE Act. This Lender Contract is entered into between Local Government and Lender as required by Section 399.006(c) of the PACE Act to provide for repayment of the Financing secured by the Assessment.

F. As required by Section 399.010 of the PACE Act, Property Owner notified the holder(s) of any mortgage liens on the Property at least thirty (30) days prior to the date of the Owner Contract of Property Owner's intention to participate in the PACE Program. The written consent of each mortgage lien holder to the Assessment was obtained prior to the date of the Owner Contract, as shown by the copy of such consent(s) attached as Exhibit B to the Owner Contract.

## AGREEMENT

The parties agree as follows:

1. Maintenance and Enforcement of Assessment. Lender agrees to provide the Financing for the Project in the total amount of $______________, according to the terms set out in the Financing Documents attached hereto as Exhibit B. In consideration for the Financing provided or to be provided by Lender for the Project, and subject to the terms and conditions of this Lender Contract, Local Government agrees to maintain and continue the Assessment for the benefit of Lender until the Financing, all contractual interest, any prepayment premium, additional penalties and interest imposed by the Lender under the Financing Documents according to the Financing Documents, and any statutory penalties, interest, attorney's fees, or costs accrued in the event of default are paid in full. Local Government will not release the Assessment until which time Lender notifies Local Government that all amounts owing have been paid in full. Local Government shall not sell, assign or transfer the Assessment or the assessment lien against the Property to any third party without the prior written consent of the Lender. Local Government agrees to enforce the assessment lien against the Property for the benefit of Lender in the event of a default by Property Owner in accordance with the provisions set forth in paragraph 6. Local Government shall have no obligation to repurchase the assessment and no liability to Lender should there be a default or an event of default in the payment thereof or should there be any other loss or expense suffered by Lender or under any other circumstances.

2. Installments. The Assessment, including the amount financed and contractual interest, is due and payable to Lender in installments as set forth in the Notice of Contractual Assessment Lien and Financing Documents ("**Installments**"). The Assessment shall include: (1) an application fee paid by Property Owner to Authorized Representative at loan closing, and (2) a recurring administration fee paid by Property Owner to the Authorized Representative. The

recurring administration fee amount shall be collected by Lender and paid to the Authorized Representative within thirty (30) days of receipt by Lender, unless otherwise agreed to in writing by the Program Administrator. The amounts due to the Authorized Representative are identified in Exhibit B hereto. As required by Section 399.009(a)(8) of the PACE Act, the period during which such Installments are payable does not exceed the useful life of the Project. Notwithstanding the foregoing, in event of default by Property Owner resulting in an Installments payment delinquency, Lender will, upon notice to Program Administrator, stay any amounts due to Program Administrator until such default has been cured and payments are received from Property Owner. Lender agrees that any stay in payments due to Program Administrator shall not reduce the total payments due to Program Administrator under the Financing Documents. When the Assessment together with any prepayment premium, and/or default penalties and interest, if any, has been paid in full, Local Government's rights under this Lender Contract will cease and terminate. Upon notice from Lender that all amounts owing have been paid in full, Local Government will execute a release of the Assessment and this Lender Contract. Thereafter, the Authorized Representative will record the release.

3. Assignment of Right to Receive Installments. Lender will have the right to assign or transfer the right to receive the Installments of the Assessment, provided all of the following conditions are met:

(a) The assignment or transfer is made to a qualified lender, which may be one of the following:

(1) Any federally insured depository institution such as a bank, savings bank, savings and loan association and federal or state credit union;

(2) Any insurance company authorized to conduct business in one or more states;

(3) Any registered investment company, registered business development company, or a Small Business Administration small business investment company;

(4) Any publicly traded entity; or

(5) Any private entity that:

(i) Has a minimum net worth of $5 million;

(ii) Has at least three years' experience in business or industrial lending or commercial real estate lending (including multifamily lending), or has a lending officer that has at least three years' experience in business or industrial lending or commercial real estate lending;

(iii) Can provide independent certification as to availability of funds; and

(iv) Has the ability to carry out, either directly or through a servicer, the bookkeeping and customer service work necessary to manage the assessment accounts

(6) A financially stable entity with the ability to carry out, either directly or through a servicer, the bookkeeping and customer service work necessary to manage the assessment accounts.

(b) Property Owner and Authorized Representative are notified in writing of the assignment or transfer and the address to which payment of the future Installments should be mailed at least 30 days before the next Installment is due according to the payment schedule included in the Financing Documents; and

(c) The assignee or transferee, by operation of the Financing Documents or otherwise, written evidence of which shall be provided to Authorized Representative, assumes Lender's obligations under this Lender Contract.

Upon written notice to Property Owner and Authorized Representative of an assignment or transfer of the right to receive the Installments that meets all of these conditions, the assignor shall be released of all of the obligations of the Lender under this Lender Contract accruing after the date of the assignment and all of such obligations shall be assumed by and transferred to the assignee. Any attempt to assign or transfer the right to receive the Installments of the Assessment that does not meet all of these conditions is void.

4. Financing Responsibility. Lender assumes full responsibility for determining the financial ability of the Property Owner to repay the Financing and for advancing the funds as set forth in the Financing Documents and performing Lender's obligations and responsibilities thereunder.

5. Lien Priority and Enforcement. As provided in the Owner Contract and Section 399.014 of the PACE Act:

(a) Delinquent Installments of the Assessment incur interest and penalties in the same manner and in the same amount as delinquent property taxes, viz., a delinquent Installment incurs a penalty of 6% of the amount of the Installment for the first calendar month it is delinquent plus 1% for each additional month or portion of a month the Installment remains unpaid prior to July 1 of the year in which it becomes delinquent. However, an Installment delinquent on July 1 incurs a total penalty of 12% of the amount of the delinquent Installment without regard to the number of months it has been delinquent. A delinquent Installment also accrues interest at the rate of 1% for each month or portion of a month the Installment remains unpaid. Statutory penalties and statutory interest payable under this paragraph will be retained by Local Government to compensate it for the cost of enforcing the Assessment. Additional interest at any default rate imposed by Lender pursuant to the Financing Documents, along with any other fees

and charges that become due pursuant to the Financing Documents may be assessed by Lender and retained by Lender.

(b) The Assessment, together with any penalties and interest thereon,

(1) is a first and prior lien against the Property from the date on which the Notice of Contractual Assessment Lien is filed in the Official Public Records of Galveston County, Texas, as provided by Section 399.014 of the PACE Act, until the Assessment and any penalties and interest are paid; and

(2) such lien has the same priority status as a lien for any other ad valorem tax, pursuant to Section 399.014(a)(2) of the PACE Act.

(c) The lien created by the Assessment runs with the land, and according to Section 399.014(b) of the PACE Act, any portion of the Assessment that has not yet become due is not eliminated by foreclosure of: (i) a property tax lien, or (ii) the lien for any past due portion of the Assessment. In the event of a sale or transfer of the Property by Property Owner, the obligation for the Assessment and the Property Owner's obligations under the Financing Documents will be transferred to the succeeding owner without recourse on Local Government or the Authorized Representative.

(d) In the event of a default by Property Owner in payment of the Installments called for by the Financing Documents, the lien created by the Assessment will be enforced by Local Government in the same manner according to Texas Tax Code Secs. 33.41 to 34.23 that a property tax lien against real property may be enforced by a local government, to the extent the enforcement is consistent with Section 50, Article XVI, Texas Constitution.

(e) In a suit to collect a delinquent Installment of the Assessment, Local Government will be entitled to recover costs and expenses, including attorney's fees in the amount of 15% of the total amount of the delinquent Installment, penalties, and interest due, in the same manner according to Texas Tax Code Sec. 33.48 as in a suit to collect a delinquent property tax. Lender shall be entitled to any additional sums due to it under the Financing Documents in connection with a suit to collect a delinquent Installment of the Assessment.

(f) After written notice of the Assessment is recorded in the real property records of the county in which the Property is located as provided under Section 399.013 of the PACE Act, the lien created by the Assessment may not be contested on the basis that the improvement is not a "qualified improvement" or the project is not a "qualified project", as such terms are defined in Section 399.002 of the PACE Act.

6. <u>Servicing and Enforcement of Assessment</u>.

(a) <u>Servicing</u>. The Assessment payments will be billed, collected, received, and disbursed in accordance with the procedures set out in the Financing Documents. Lender will be responsible for all servicing duties other than those specifically undertaken by Local Government in this Lender Contract. Local Government agrees to

send an annual notice of assessment to the Property Owner each year there is a PACE lien balance.

(b) Remittances. Each of the parties covenants and agrees to promptly remit to the other party any payments incorrectly received by such party with respect to the Assessment after the execution of this Lender Contract.

(c) Default and Enforcement. In the event of a default in payment of any installment of the Assessment as specified in the Financing Documents, Lender agrees to take at least the following steps to collect the delinquent Installment:

(1) Mail a written notice of delinquency and demand for payment to the Property Owner by both certified mail, return receipt requested, and first class mail; and

(2) Mail a second notice of delinquency to the Property Owner by both certified mail, return receipt requested, and first class mail at least 30 days after the date of the first notice if the delinquency is continuing.

If the Property Owner fails to cure the delinquency within 30 days after the mailing of the second notice of delinquency, the Lender or its designated servicer may notify the Authorized Representative who will certify to the Local Government in writing of a default by the Property Owner, and upon receipt of such certification and after doing its own due diligence, Local Government will enforce the assessment lien for the benefit of Lender pursuant to Tex. Local Gov't Code Sec. 399.014(c), in the same manner as a property tax lien against real property may be enforced, to the extent the enforcement is consistent with Section 50, Article XVI, Texas Constitution.

(d) Final Payment and Release. When the Assessment has been satisfied and paid in full, together with all interest and prepayment premiums, if any, provided under the Financing Documents and all costs, fees, penalties, and interest applicable under the PACE Act and payable to Lender or Local Government, Local Government's rights under the Owner Contract will cease and terminate. Upon notice from Lender that all amounts owing have been paid in full, Local Government will execute a release of the Assessment and the Owner Contract. Thereafter, the Authorized Representative will record the Release.

(e) Limitations on Local Government's Actions. Without the prior written consent of Lender, Local Government will not enter into any amendment or modification of or deviation from the Owner Contract. Local Government will not institute any legal action with respect to the Owner Contract, the Assessment, or the assessment lien without the prior written request of Lender.

(f) Limitations of Local Government's Obligations. Local Government undertakes to perform only such duties as are specifically set forth in this Lender Contract, and no implied duties on the part of Local Government are to be read into this Lender Contract. Local Government will not be deemed to have a fiduciary or other

similar relationship with Lender. Local Government may request written instructions for action from Lender and refrain from taking action until it receives satisfactory written instructions. Local Government will have no liability to any person for following such instructions, regardless of whether they are to act or refrain from acting.

(g) Costs. No provisions of this Lender Contract will require Local Government to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder.

7. Lender's Warranties and Representations. With respect to this Lender Contract, Lender hereby warrants and represents that on the date on which Lender executes this Lender Contract:

(a) Lender is a qualified lender under the PACE Program, as defined in paragraph 3(a) above, and is fully qualified under the PACE Program to enter into this Lender Contract and the Financing Documents;

(b) Lender has independently and without reliance upon Local Government conducted its own credit evaluation, reviewed such information as it has deemed adequate and appropriate, and made its own analysis of the Owner Contract, the Project, and Property Owner's financial ability to perform the financial obligations set out in the Financing Documents; and

(c) Lender has not relied upon any investigation or analysis conducted by, advice or communication from, or any warranty or representation by Local Government or any agent or employee of Local Government, express or implied, concerning the financial condition of the Property Owner or the tax or economic benefits of an investment in the Assessment.

8. Written Contract Required by the PACE Act. This Lender Contract constitutes a written contract between Local Government and Lender, as required under Section 399.006 (c) of the PACE Act.

9. Construction and Definitions. This Lender Contract is to be construed in accordance with and with reference to the PACE Program and PACE Act. Terms used herein, and not otherwise defined herein, shall have the meanings ascribed to them in: (1) the Notice of Contractual Assessment Lien, (2) the Owner Contract, (3) the PACE Program, and/or (4) the PACE Act.

10. Binding Effect. This Lender Contract is binding upon and shall inure to the benefit of the parties hereto and their respective heirs, representatives, successors, and assigns.

11. Notices. All notices and other communications required or permitted hereunder shall be in writing and mailed by certified mail, return receipt requested, addressed to the other party at the address stated below the signature of such party or at such other address as such party may from time to time designate in writing to the other party, and shall be effective from the date of receipt.

12. Governing Law. This Lender Contract shall in all respects be governed by and construed in accordance with the laws of the State of Texas.

13. Entire Agreement. This Lender Contract constitutes the entire agreement between the parties with respect to the subject matter hereof and shall not be amended or altered in any manner except by a document in writing executed by both parties.

14. Captions. Paragraph and section titles are for convenience of reference only and shall not be of any legal effect.

15. Counterparts. This Lender Contract may be executed in any number of counterparts, each counterpart may be delivered originally or by electronic transmission, all of which when taken together shall constitute one agreement binding on the parties, notwithstanding that all parties are not signatories to the same counterpart.

16. Interest. Interest and penalties in the event of default, as provided above, are explicitly authorized by Section 399.014(d) of the PACE Act. However, in no event will the total amount of interest on the Assessment, including statutory interest payable to Local Government and contractual interest payable to Lender under the Financing Documents, exceed the maximum amount or rate of nonusurious interest that may be contracted for, charged, or collected under Texas law (the "usury limit"). If the total amount of interest payable to Local Government and Lender exceeds the usury limit, interest payable to Local Government will be reduced and any interest in excess of the usury limit will be credited to the amount payable to Local Government or refunded. This provision overrides any conflicting provisions in this Lender Contract.

17. Certification. Local Government certifies that the PACE Program has been duly adopted and is in full force and effect on the date of this Lender Contract. Property Owner has represented to Lender and Local Government that the Project is a "qualified project" as defined in the PACE Program and Section 399.002 of the PACE Act. The Assessment has been imposed on the Property as a lien in accordance with the PACE Owner Contract and the PACE Act. Local Government has not assigned or transferred any interest in the Assessment or the PACE Owner Contract.

18. Construction Terms. If this Lender Contract includes requirements related to construction of the Project and disbursement of Financing, such requirements are set forth in Exhibit C attached hereto and incorporated herein by reference. Such requirements may include, among other things, (1) the disbursement schedule and (2) any holdback amount to be funded following verification of final project completion.

**LENDER:**

______________________________

By:____________________________

Name: ______________________

Title: ______________________

Address: ______________________

**ACKNOWLEDGEMENT**

STATE OF TEXAS §

COUNTY OF _______ §

This PACE Lender Contract pursuant to Property Assessed Clean Energy Act was acknowledged before me on ____________, ________ by ________________________, _________________________, on behalf of ______________.

______________________________

______________________________(print name)

NOTARY PUBLIC, STATE OF TEXAS

**LOCAL GOVERNMENT:**

COUNTY OF GALVESTON, TEXAS

By:______________________________
AUTHORIZED REPRESENTATIVE
Pursuant to Tex. Local Gov't Code §399.006(b)

Name: ______________________________

Title: ______________________________

Address: ______________________________

**ACKNOWLEDGEMENT**

STATE OF TEXAS §

COUNTY OF _______ §

This PACE Lender Contract pursuant to Property Assessed Clean Energy Act was acknowledged before me on ____________, _______ by __________________________, __________________________, on behalf of ______________, Texas.

________________________________________

______________________________(print name)

NOTARY PUBLIC, STATE OF TEXAS

# EXHIBIT A

# OWNER CONTRACT

# EXHIBIT B

## FINANCING DOCUMENTS

Assessment Payment Schedule

Assessment Total:
Payment Frequency:

| Payment Date | Total Payment | Principal Paid | Interest Paid | Administration Fee | Remaining Balance |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Financing Documents

| Document Title | Parties | Date Executed |
|---|---|---|
| | | |

# EXHIBIT C

## CONSTRUCTION TERMS

[if applicable]

| Date | Draw down Amount | Purpose |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

# EXHIBIT 4

## NOTICE OF CONTRACTUAL ASSESSMENT LIEN PURSUANT TO PROPERTY ASSESSED CLEAN ENERGY ACT

STATE OF TEXAS §
§
COUNTY OF GALVESTON §

## RECITALS

A. The Property Assessed Clean Energy Act ("**PACE Act**"), Texas Local Government Code Chapter 399, authorizes the governing body of a local government to establish a program and designate a region within the local government's jurisdiction within which an authorized representative of the local government may enter into written contracts with the record owners of commercial, industrial, agricultural, and large multifamily residential (5 or more dwelling units) real property to impose assessments on the property to finance the cost of permanent improvements fixed to the property intended to decrease water or energy consumption or demand. Unless otherwise expressly provided herein, all terms used herein have the same meanings ascribed to them in the PACE Act.

B. Galveston County, Texas ("**Local Government**") has established a program under the PACE Act pursuant to a resolution dated ______________, adopted by the Commissioners Court (the "**PACE Program**"), and has designated ________________ ("**Authorized Representative**") as the representative authorized to enter into and enforce the Assessment, Owner Contract and Lender Contract described herein, and has designated the entire territory within the county of Galveston jurisdiction as a region ("**Region**") within which the Authorized Representative and the record owners of such real property may enter into written contracts to impose assessments to repay the financing by owners of qualified improvements on the owner's property pursuant to the PACE Program.

C. ______________________ ("**Property Owner**") is the legal and record owner of the qualified "real property," as defined in Section 399.002 of the PACE Act, within the Region located at ______________, ______________, Texas, ________ and more fully described in Exhibit A attached hereto and made a part hereof (the "**Property**").

D. Property Owner has applied to Local Government to participate in the PACE Program by installing or modifying on the Property certain permanent improvements described in Exhibit B attached hereto and made a part hereof, which are intended to decrease water or energy consumption or demand, and which are or will be fixed to the Property as "qualified improvements", as defined in Section 399.002 of the PACE Act (the "**Qualified Improvements**"). The installation or modification of such Qualified Improvements on the Property will be a "qualified project" as defined in Section 399.002 of the PACE Act (the **Qualified Project**"). Property Owner has entered into a written contract (the "**Owner Contract**") with Local Government pursuant to the PACE Act and the PACE Program and has

requested Local Government to impose an assessment on the Property to repay the financing of such Qualified Improvements.

E. The financing of such Qualified Improvements will be provided to Property Owner by ______________________ ("**Lender**"), a qualified lender selected by Property Owner, pursuant to a written contract executed by Lender and Local Government as required by Section 399.006(c) of the PACE Act and by the PACE Program (the "**Lender Contract**"). Lender will be responsible for all servicing duties other than those specifically undertaken by Local Government in the Lender Contract.

THEREFORE, Local Government hereby gives notice to the public pursuant to Section 399.013 of the PACE Act that it has imposed an assessment on the Property in the amount of $__________________, as set forth on Exhibit C attached hereto, which together with all interest, fees, penalties, costs and other sums due under and/or authorized by the PACE Act, PACE Program and the financing documents between Property Owner and Lender (the "**Financing Documents**") is herein referred to as the "**Assessment**".

Pursuant to Section 399.014 of the PACE Act,

1. The Assessment, including interest and any penalties, costs, or fees accrued thereon,

   (i) is a first and prior lien on the Property from the date that this Notice of Contractual Assessment Lien is recorded in the Official Public Records of Galveston, Texas, until such Assessment, interest, penalties, costs, and fees are paid in full; and

   (ii) such lien has the same priority status as a lien for any other ad valorem tax, pursuant to Section 399.014(a)(2) of the PACE Act.

2. The lien created by the Assessment runs with the land, and according to Section 399.014(b) of the PACE Act, any portion of the Assessment that has not yet become due is not eliminated by foreclosure of: (i) a property tax lien, or (ii) the lien for any past due portion of the Assessment. In the event of a sale or transfer of the Property by Property Owner, the obligation for the Assessment and the Property Owner's obligations under the Financing Documents will be transferred to the succeeding owner without recourse on Local Government or the Authorized Representative.

3. After this Notice of Contractual Assessment Lien is recorded in the real property records of the county in which the Property is located as provided under Section 399.013 of the PACE Act, the lien created by the Assessment may not be contested on the basis that the improvement is not a Qualified Improvement or the project is not a Qualified Project.

EXECUTED on ________________, ______.

LOCAL GOVERNMENT:
GALVESTON COUNTY, TEXAS

By:

Name: ________________________________

Title: ________________________________

AUTHORIZED REPRESENTATIVE
Pursuant to Tex. Local Gov't Code §399.006(b)

**ACKNOWLEDGEMENT**

STATE OF TEXAS §

COUNTY OF ________ §

This Notice of Contractual Assessment Lien pursuant to Property Assessed Clean Energy Act was acknowledged before me on ______________, ________ by ____________________________, ____________________________, on behalf of ________________, Texas.

____________________________________

______________________________ (print name)

NOTARY PUBLIC, STATE OF TEXAS

# EXHIBIT A

## PROPERTY DESCRIPTION

# EXHIBIT B

## QUALIFIED IMPROVEMENTS

# EXHIBIT C

## ASSESSMENT

Assessment Payment Schedule

Assessment Total:
Payment Frequency:
Interest Rate:

| Payment Date | Total Payment | Principal Paid | Interest Paid | Administration Fee | Remaining Balance |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

INDEXING INSTRUCTION:

Grantor: ______________________________, Property Owner
Grantees: ______________________________, Local Government
______________________________, Lender

After recording, return to- ______________________________
______________________________
______________________________
______________________________

# EXHIBIT "E"

TEXAS ★ PACE
AUTHORITY

P.O. Box 200368
Austin TX 78720-0368

April 18, 2019

Mr. Dwight D. Sullivan, County Clerk
Galveston County, Texas
P.O. Box 17253
Galveston, Texas 77552-7253

Attn: Ms. Brandy Chapman, Deputy Chief

Dear Mr. Sullivan:

Please find attached a fully executed copy of the professional services agreement between Galveston County, Texas and the Texas Property Assessed Clean Energy Authority. We are honored to have this opportunity to serve Galveston County. Please let me know if you have any questions.

Sincerely,

Charlene Heydinger
President

Cc: Mr. Dane Carlson

**PROFESSIONAL SERVICES AGREEMENT**
**BY AND BETWEEN THE COUNTY OF GALVESTON, TEXAS AND**
**TEXAS PROPERTY ASSESSED CLEAN ENERGY AUTHORITY**

**THIS AGREEMENT** is made and entered by and between the **County of Galveston, Texas**, hereinafter referred to as "**Local Government**", and **TEXAS PROPERTY ASSESSED CLEAN ENERGY (PACE) AUTHORITY (dba Texas PACE Authority)**, a Texas non-profit business association, hereinafter referred to as "**Services Provider**" to be effective from and after the date as provided herein.

**W I T N E S S E T H:**

**WHEREAS**, the County Commission of **Local Government** desires to engage the services of a qualified consultant to administer a Texas Property Assessed Clean Energy program for **Local Government** pursuant to the Property Assessed Clean Energy Act ("**PACE Act**"), Texas Local Government Code Chapter 399, and serve as Authorized Representative pursuant to Tex. Local Gov't Code §399.006(b), hereinafter referred to as the "**Program**"; and

**WHEREAS**, **Services Provider** desires to render such services for **Local Government** upon the terms and conditions provided herein –

**NOW, THEREFORE,** for and in consideration of the covenants contained herein, and for the mutual benefits to be obtained hereby, the parties hereto agree as follows:

## I. ENGAGEMENT

**Local Government** hereby agrees to retain **Services Provider** to serve as administrator of **Local Government's Program** and **Services Provider** agrees to perform such services in accordance with the terms and conditions of this Agreement.

## II. SCOPE OF SERVICES

The parties agree that **Services Provider** shall perform such services as are further described in **Exhibit "A"** hereto (collectively "**Scope of Services**"). The parties understand and agree that deviations or modifications in the **Scope of Services** may be authorized from time to time by **Local Government**, but said authorization must be made in writing.

## III. TERM OF AGREEMENT

The initial term of this Agreement shall commence upon the complete execution of the Agreement by **Local Government** and **Services Provider**. Notwithstanding the termination of this Agreement, **Services Provider** shall be permitted to continue

administration of any third-party agreements under the **Program** commenced prior to termination of this Agreement, and to recover any compensation due **Services Provider** for services performed in accordance with Section IV of this Agreement.

## IV. COMPENSATION AND EXPENSES

**Services Provider** shall be paid for performance of the **Scope of Services** set forth in Exhibit "A", in accordance with the compensation schedule set forth in Exhibit "B" hereto. **Services Provider** is entitled to payment in accordance with Exhibit "B"; however, **Local Government** shall have no obligation to pay **Services Provider** for performance of the **Scope of Services**. All payments to **Services Provider** shall be made by participants in the **Program** in accordance with the PACE Act

## V. INSURANCE

**Services Provider** agrees to meet all insurance requirements, and to require all consultants who perform work for **Services Provider** to meet all insurance requirements, as set forth in **Exhibit "C"** to this Agreement.

## VI. INDEMNIFICATION

**SERVICES PROVIDER AGREES TO INDEMNIFY AND HOLD LOCAL GOVERMENT AND ITS RESPECTIVE OFFICERS, AGENTS AND EMPLOYEES, HARMLESS AGAINST ANY AND ALL CLAIMS, LAWSUITS, JUDGMENTS, FINES, PENALTIES, COSTS AND EXPENSES FOR PERSONAL INJURY (INCLUDING DEATH), PROPERTY DAMAGE OR OTHER HARM OR VIOLATIONS FOR WHICH RECOVERY OF DAMAGES, FINES, OR PENALTIES IS SOUGHT FROM LOCAL GOVERNMENT ARISING OUT OF OR OCCASIONED BY SERVICES PROVIDER 'S BREACH OF ANY OF THE TERMS OR PROVISIONS OF THIS AGREEMENT, VIOLATIONS OF LAW BY SERVICES PROVIDER, OR BY ANY NEGLIGENT, GROSSLY NEGLIGENT, INTENTIONAL, OR STRICTLY LIABLE ACT OR OMISSION OF THE SERVICES PROVIDER, ITS OFFICERS, AGENTS, EMPLOYEES, INVITEES, SUBCONTRACTORS, OR SUB-SUBCONTRACTORS AND THEIR RESPECTIVE OFFICERS, AGENTS, OR REPRESENTATIVES, OR ANY OTHER PERSONS OR ENTITIES FOR WHICH THE SERVICES PROVIDER IS LEGALLY RESPONSIBLE IN THE PERFORMANCE OF THIS AGREEMENT. THE INDEMNITY PROVIDED FOR IN THIS PARAGRAPH SHALL NOT APPLY TO ANY LIABILITY TO THE EXTENT RESULTING FROM THE NEGLIGENCE OF LOCAL GOVERNMENT, AND ITS OFFICERS, AGENTS, EMPLOYEES OR SEPARATE CONTRACTORS. LOCAL GOVERNMENT DOES NOT WAIVE ANY GOVERNMENTAL IMMUNITY OR OTHER DEFENSES AVAILABLE TO IT UNDER TEXAS OR FEDERAL LAW. THE PROVISIONS OF THIS PARAGRAPH ARE SOLELY FOR THE BENEFIT OF THE PARTIES HERETO AND ARE NOT INTENDED TO CREATE OR GRANT ANY RIGHTS, CONTRACTUAL OR OTHERWISE, TO ANY OTHER PERSON OR ENTITY.**

## VII. INDEPENDENT CONTRACTOR

**Services Provider** covenants and agrees that it is an independent contractor and not an officer, agent, servant or employee of **Local Government**; that it shall have exclusive control of and exclusive right to control the details of the work performed hereunder and all persons performing same, and shall be responsible for the acts and omissions of its officers, agents, employees, contractors, subcontractors and consultants; that the doctrine of respondeat superior shall not apply as between **Local Government** and **Services Provider**, its officers, agents, employees, contractors, subcontractors and consultants, and nothing herein shall be construed as creating a partnership or joint enterprise between **Local Government** and **Services Provider**.

## VIII. ASSIGNMENT AND SUBLETTING

**Services Provider** agrees that this Agreement shall not be assigned without the prior written consent of **Local Government**, except to an Affiliate of **Services Provider**. Affiliate shall mean (1) any corporation or other entity controlling, controlled by, or under common control with (directly or indirectly) **Services Provider**, including, without limitation, any parent corporation controlling **Services Provider** or any subsidiary that **Services Provider** controls; (2) the surviving corporation resulting from the merger or consolidation of **Services Provider**; or (3) any person or entity which acquires all of the assets of **Services Provider** as a going concern. **Services Provider** shall be permitted to enter into subcontracts for performance of portions of the **Scope of Services**; however, **Services Provider** shall not subcontract the entirety of the **Scope of Services** to a single subcontractor without **Local Government's** consent. **Services Provider** further agrees that the assignment or subletting of any portion or feature of the work or materials required in the performance of this Agreement shall not relieve the **Services Provider** from its full obligations to **Local Government** as provided by this Agreement.

## IX. AUDITS AND RECORDS

**Services Provider** agrees that **Local Government** or its duly authorized representatives shall, until the expiration of three (3) years after termination under this Agreement, have access to and the right to examine and photocopy any and all books, documents, papers and records of **Services Provider** which are directly pertinent to the services to be performed under this Agreement for the purposes of making audits, examinations, excerpts, and transcriptions. **Services Provider** agrees that **Local Government** shall have access during normal working hours to all necessary Services Provider's facilities and shall be provided adequate and appropriate work space in order to conduct audits in compliance with the provisions of this section. **Local Government** shall give **Services Provider** reasonable advance notice of intended audits.

## X. CONTRACT TERMINATION

The parties agree that **Local Government** shall have the right to terminate this Agreement with cause upon thirty (30) days written notice to **Services Provider**. In the event of such termination, **Services Provider** shall deliver to **Local Government** all finished or unfinished documents, data, studies, surveys, drawings, maps, models, reports, photographs or other items prepared by **Services Provider** in connection with this Agreement. In the event of termination by **Local Government**, **Services Provider** shall be compensated in accordance with Section III of this Agreement with respect to any third party agreements under administration by **Services Provider** at the time of termination.

## XI. COMPLETE AGREEMENT

This Agreement, including the Exhibits lettered "A" through "C", constitute the entire agreement by and between the parties regarding the subject matter hereof and supersedes all prior or contemporaneous written or oral understandings. This Agreement may only be amended, supplemented, modified or canceled by a duly executed written instrument.

## XII. AMENDMENTS (Added)

Amendments to this agreement may be made at any time upon agreement by **Local Government** and **Services Provider**.

## XIII. MAILING OF NOTICES

Unless instructed otherwise in writing, **Services Provider** agrees that all notices or communications to **Local Government** permitted or required under this Agreement shall be addressed to **Local Government** at the following address:

County/City, Texas
Attn:__________
______________
______________

**Local Government** agrees that all notices or communications to **Services Provider** permitted or required under this Agreement shall be addressed to **Services Provider** at the following address:

Texas Property Assessed Clean Energy Authority
Attn: Charlene Heydinger
PO Box 200368
Austin TX 78720-0368

All notices or communications required to be given in writing by one party or the other shall be considered as having been given to the addressee on the date such notice or communication is posted by the sending party.

## XIV. AUTHORITY TO SIGN

The undersigned officers and/or agents of the parties hereto are the properly authorized officials and have the necessary authority to execute this Agreement on behalf of the parties hereto.

## XV. MISCELLANEOUS

A. This is a contract for the purchase of personal or professional services and is therefore exempt from any competitive bidding requirements of **Local Government.**

B. Paragraph Headings:

The paragraph headings contained herein are for convenience only and are not intended to define or limit the scope of any provision in this Agreement.

C. Agreement Interpretation:

This is a negotiated Agreement, should any part be in dispute, the parties agree that the terms of the Agreement shall not be construed more favorably for either party.

D. Venue/Governing Law:

The parties agree that the laws of the State of Texas shall govern this Agreement, and that it is performable in Galveston County Texas. Exclusive venue shall lie in Galveston County, Texas.

E. Successors and Assigns:

**Local Government** and **Services Provider** and their partners, successors, subcontractors, executors, legal representatives, and administrators are hereby bound to the terms and conditions of this Agreement.

F. Severability:

In the event a term, condition, or provision of this Agreement is determined to be void, unenforceable, or unlawful by a court of competent jurisdiction, then that term, condition, or provision, shall be deleted and the remainder of the Agreement shall remain in full force and effect.

G. Effective Date:

This Agreement shall be effective from and after the date of execution by the last signatory hereto as evidenced below.

**SIGNED** on the date indicated below.

**TEXAS PROPERTY ASSESSED CLEAN ENERGY AUTHORITY**

DATE: 4/17/19

BY: [signature]
Name: Charlene Heydinger
Title: president

## ACKNOWLEDGMENTS

**STATE OF TEXAS** §
§
**COUNTY OF** Travis §

This instrument was acknowledged before me on the 17th day of April, 2019 by Charlene Heydinger, *(Authorized representative)* President *(Title)* of **TEXAS PROPERTY ASSESSED CLEAN ENERGY AUTHORITY**, on behalf of said entity.

ANDREW R BARLAAM
Notary Public
STATE OF TEXAS
My Comm. Exp. 10-04-22
Notary ID # 13174940-1

[signature]
Notary Public, State of Texas

**COUNTY/CITY OF GALVESTON, TEXAS**

DATE: March 25, 2019

BY: [signature]
Name:
Mark Henry
Title:
County Judge

**APPROVED AS TO FORM:**

______________________________
______________, ________
Attorney

**STATE OF TEXAS** §
§
**COUNTY OF** Galveston §

This instrument was acknowledged before me on the 25th day of March, 2019 by Mark Henry, (Authorized Representative) County Judge (Title) of Galveston County, on behalf of said County.

DIANNA GARZA-MARTINEZ
Notary Public, State of Texas
Comm. Expires 08-09-2021
Notary ID 129519190

[signature]
Notary Public, State of Texas

## Exhibit "A"
## Scope of Services

The **Services Provider** will perform the following services in the administration of the **Program**:

Community Outreach

Maintain a website and database;

Respond to inquiries from property owners, vendors, contractors, consultants, and the general public;

Publish the Technical Standards Manual on the **Program** website;

List interested, qualified lenders on the **Program** website or link to another neutral non-profit directory of lenders to enable property owners to identify potential sources of private third-party financing;

Arrange for training of contractors and independent third-party reviewers on how to apply for PACE financing and comply with the PACE-in-a-Box Technical Standards Manual; and

Establish quality assurance measures.

Maintain uniform documents. Periodic updates to the standard form documents will be necessary as the program evolves, incorporating best practices and standardizing the PACE documents across various PACE programs. The Authorized Representative will be tasked with maintaining the form documents and making technical and conforming updates as necessary so long as the changes are consistent with the resolution to establish the PACE program and the Texas PACE Act.

Application and Approval Process

Publish a Project Application Form based on PACE-in-a-Box model application form on the **Program** website;

Review submitted Application forms for administrative completeness and notify the applicants of any missing information;

Maintain the confidentiality of confidential owner information;

Maintain the PACE application process, including:

- Draft and distribute the PACE application, as well as accept and review the property owner's completed application;
- If the project meets eligibility requirements, provide written indication that the project meets PACE standards at this stage (subject to verification of all requirements at closing).

- Inform the property owner of his or her responsibilities in the process, including hiring a third-party reviewer, obtaining a lender, determining final project scope and completing and submitting a closing verification package.
- Conduct a Pre-Closing Verification, which will confirm the statutorily required eligibility requirements of the owner including that the property owner:
    - Is the legal property owner of the benefited property;
    - Is current on mortgage and tax payments;
    - Is not insolvent or the subject of bankruptcy proceedings;
    - Holds a title to the property to be subject to a PACE assessment that is not in dispute; and
    - Has consent of any pre-existing mortgagee to the proposed PACE assessment through a written contract.

Require independent third-party verification of expected energy or water savings resulting from a project (provided by engineer or consultant retained by applicant), according to the PACE-in-a-Box Technical Standards Manual. This review will include a:

- Site visit,
- Report stating the savings (energy, demand, and/or water) and expected project life are reasonable and in compliance with PACE in a Box program guidelines; and
- Letter from the ITPR certifying that he/she has no financial interest in the project and is an independent reviewer.

Require independent third-party verification, according to the PACE-in-a-Box Technical Services Manual, that the period of an assessment does not exceed the expected life of the improvements or thoroughly review waiver application and justification (provided by engineer or consultant retained by applicant);

Require lender to confirm in writing its determination, based on underwriting factors established by the lender, that the owner has demonstrated the financial ability to repay the financial obligations to be repaid through assessment.

Require the owner to notify the holder of any mortgage lien on the property of the owner's intention to participate in the **Program** and obtain the lienholder's written consent prior to the imposition of the PACE assessment;

Review and finalize the terms of every Owner Contract and Lender Contract prior to execution; The Contract must contain:

- Amount of the assessment;
- The legal description of the property;
- The name of the property owner; and
- A reference to the statutory assessment lien provided under the PACE Act.

Collect and retain owner application fees as compensation for administrative services;

Perform closing verification reviews and schedule assessment transaction closings when all requirements are met. Such closing verification must include:

- The report conducted by a qualified independent third-party reviewer of water or energy baseline conditions and the projected water or energy savings attributable to the project;
- Such financial information about the owner and the property as the lender chosen by the owner deems necessary to determine that the owner has demonstrated the financial ability to fulfill the financial obligations to be paid through assessments; and
- All other information required by the **Services Provider**.

Coordinate and take part in assessment transaction closings.

Execute contracts under the **Program** as authorized on behalf of **Local Government**.

Arrange for recordation of a Notice of Contractual Assessment Lien for each approved project in the Official Public Records of the county where the project is located; The Notice must contain:

- Amount of the assessment;
- The legal description of the property;
- The name of the property owner; and
- A reference to the statutory assessment lien provided under the PACE Act.

Require independent post-closing third-party verification (by engineer or consultant retained by Applicant) that each project was properly completed and is operating as intended; and

Collect and retain administration fees collected by lenders from owners that receive PACE financing.

Management and Reporting

Manage communications with lenders regarding assessment servicing, payment, and default;

Upon notification by a lender of an owner's default in payment of an assessment and the lender's compliance with the requirements of the Lender Contract on collection after default, notify the **Local Government** to enforce the assessment lien in accordance with law and the agreements between the parties;

Receive and store owner reports on energy and water savings;

Maintain the form contracts and make technical and conforming updates as necessary so long as the changes are consistent with the resolution to establish the PACE program and the statute.

At the request of property owners, prepare annual notices of assessment to be issued by **Local Government** to the owners, stating the total amount of the payments due on

each assessment in the coming calendar year according to the owner contract and the financing documents;

Determine the amounts of the application and administration fees to be paid by owners;

Produce annual report on Texas PACE financing usage and the resulting energy and water savings enabled through PACE Assessments.

**Exhibit "B"**

Compensation and Fees

**Service Provider** shall determine the amounts of the uniform application and administration fees to be paid by property Owners participating in the **Program**. Such fees will not exceed the fees below:

- An application fee of the greater of:
  - $2,500.00; or
  - 1% of the total project cost of the first $5 million plus 0.5% of the marginal amount above $5 million,

  to be paid as follows:
    - $500.00 per project at the time of application submittal;
    - the balance of the full remaining application fee at closing; and
- A recurring administration fee of 0.10% of the outstanding principal balance, which amount shall be collected by lender and paid to the **Services Provider** as provided in the Owner Contract and the financing documents. This fee can also be capitalized and paid at closing. If paid under a negotiated regular schedule to the lender by the property owner, the lender shall pay this fee to **Services Provider** at the time of each payment by the property owner in accordance with the financing documents.

- No amounts shall be due by **Local Government** to **Services Provider**.

**Exhibit "C"**
Insurance Requirements

| COVERAGE | LIMIT OF LIABILITY |
|---|---|
| Employer's Liability | $500,000 per occurrence |
| General Liability | Bodily Injury and Property Damage, Combined Limits of $500,000 each Occurrence, and $1,000,000 aggregate |

**Amendment No. 1**
**To Memorandum of Understanding (MOU)**
**Between the Texas PACE Authority (TPA)**
**And HOUSTON ADVANCED RESEARCH CENTER (HARC)**

This Amendment, effective March 31, 2019, is made and entered into by the Texas PACE Authority (TPA) and HOUSTON ADVANCED RESEARCH CENTER (HARC), being the same parties to the original Memorandum of Understanding dated April 24, 2017.

The parties hereto have agreed, and by execution hereof are bound, to the performances and mutual obligations expressed in the original Contract as modified by this Amendment No. 1.

**Commitment:**

The total annual commitment is hereby increased, as of April 2019, from $30,000 to $36,000, payable in monthly installments of $3,000 in consideration for Marina Badoian-Kriticos' activities on behalf of TPA.

Time Frame:

The MOU is hereby extended for an additional year. The new expiration date for this MOU is March 31, 2020.

All other provisions of the original Agreement shall remain unchanged.

| TPA | HARC |
|---|---|
| By: Charlene Heydinger | By: ______ |
| Name: Charlene Heydinger | Name: ______ |
| Title: president | Title: ______ |
| Date: 4/16/19 | Date: ______ |